**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KEN PAXTON, in his official capacity as** | ) | |
| **Attorney General of Texas,** | ) | |
| **DAVID SCHNITZ,** | ) | |
| **TRACY MARTIN, and** | ) | |
| **FLOICE ALLEN,** | ) | |
|     *Plaintiffs,* | ) | Civil Action No. 4:22-cv-00143-P |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MARVIN RICHARDSON, in his official** | ) | |
| **Capacity as Acting Director, Bureau of** | ) | |
| **Alcohol, Tobacco, Firearms and Explosives,** | ) | |
|     *Defendant.* | ) | |

## DEFENDANT'S MOTION TO DISMISS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

EMILY B. NESTLER (D.C. Bar # 973886)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 616-0167
Email: emily.b.nestler@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................... 3

     A.    National Firearms Act ........................................................................... 3

     B.    Gun Control Act...................................................................................... 5

     C.    Texas House Bill 957 ............................................................................. 6

     D.    Individual Plaintiffs' Stated Intention to Make Suppressors for Personal
          Use ......................................................................................................... 7

     E.    Plaintiffs' Complaint ............................................................................. 8

III.  LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ...................................................................................................... 9

     A.    This Court Lacks Jurisdiction Because the Anti-Injunction Act Bars
          Plaintiffs' Claims ................................................................................... 9

    1.    Plaintiffs' Primary Purpose Is to Restrain the Assessment and Collection of a Tax.
         11

    2.    The Only Exceptions to the AIA are Narrow and Do Not Apply......................... 14

    3.    The AIA's Jurisdictional Bar Applies to the State................................................ 15

     B.    Texas Lacks Standing Because It Has Alleged No Cognizable Injury................ 18

V.   Count II Should Be Dismissed Because the Facts Alleged in Plaintiffs' Complaint
     Do Not State a Claim under the Commerce Clause or the Necessary and Proper
     Clause.................................................................................................................. 23

VI.  CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Alexander v. "Am. United" Inc.,*
    416 U.S. 752, 759 (1974)........................................................................... 10, 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982)................................................................................... 20, 22

*Ambraco, Inc. v. Bossclip B.V.,*
    570 F.3d 233 (5th Cir. 2009) .......................................................................... 9

*Arizona v. Biden,*
    ---F.4th---, 2022 WL 1090176 (6th Cir. Apr. 12, 2022) ................................ 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................... 8, 25

*Bell Atlantic Corp., v. Twombly,*
    550 U.S. 544 (2007)...................................................................................... 8, 25

*Bennett v. Spear,*
    520 U.S. 154 (1997)........................................................................................... 6

*Benton v. United States,*
    960 F.2d 19 (5th Cir. 1998) ............................................................................. 8

*Bezet v. United States,*
    276 F. Supp. 3d 576 (E.D. La. 2017)....................................................... *passim*

*Bob Jones Univ. v. Simon,*
    416 U.S. 725 (1974)................................................................................... *passim*

*CIC Servs. LLC v. Internal Revenue Serv.,*
    141 S. Ct. 1582 (2021)..................................................................................... 12

*Confederated Tribes and Bands of Yakama Indian Nation v. Alcohol &
Tobacco Tax & Trade Bureau,*
    843 F.3d 810 (9th Cir. 2016) .................................................................... 16, 17

*Duggan v. Dep't of the Air Force*,
   617 Fed. Appx. 321 (5th Cir. 2015).......................................................... 25

*Enochs v. Williams Packing & Navigation Co.*,
   370 U.S. 1 (1962)....................................................................... 9, 10, 14

*Flast v. Cohen*,
   392 U.S. 83 (1968)................................................................................... 21

*Florida v. Mellon*,
   273 U.S. 12 (1927)................................................................................... 20

*Garcia v. San*,
   *Antonio Met. Transit Auth.*, 469 U.S. 528 (1985)................................. 16

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
   536 F.3d 439 (2008)................................................................................... 9

*Helvering v. Davis*,
   301 U.S. 619 (1937)................................................................................. 20

*Kinsella v. United States ex rel. Singleton*,
   361 U.S. 234, 247 (1960)........................................................................ 24

*Kemlon Prod. & Dev. Co. v. United States*,
   638 F.2d 1315 (5th Cir. 1981) ................................................. 10, 13, 14

*Linn v. Chivatero*,
   714 F.2d 1278 (5th Cir. 1983) ........................................................*passim*

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................. 18

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)............................................................................. 2, 22

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923)............................................................................. 2, 19

*McCulloch v. Maryland*,
   421 U.S. 316 (1819)................................................................................. 24

*Nat'l Fed. Of Indep. Bus. v. Sebelius*,
   567 U.S. 519, 536 (2012)................................................................... 24, 25

*New Jersey v. Sargent*,
    269 U.S. 328 (1926) ........................................................................................ 19, 22

*New York v. Mnuchin*,
    408 F. Supp. 3d 399 (S.D.N.Y. 2019) ...................................................................... 17

*Ohio v. Helvering*,
    292 U.S. 360 (1934) ...................................................................................................16

*Sims v. United States*,
    359 U.S. 108 (1959) ............................................................................................... 16

*Sonzinksy v. United States*,
    300 U.S. 506 (1937) ............................................................................................. *passim*

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ............................................................................................... 16

*South Carolina v. Regan*,
    465 U.S. 367 (1984) ....................................................................................... 16, 17, 18

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 ...................................................................................................... 18

*Texas v. Becerra*,
    Case No. 5:21-cv-300-H, 2-21 WL 6198109 (N.D. Tex. Dec. 31, 2021) .............................. 20

*Texas v. ICC*,
    258 U.S. 158 (1922) ............................................................................................... 19

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ..................................................................................... 20

*Tex. Emps.' Ins. Ass'n v. Jackson*,
    862 F.2d 491 (1988) ................................................................................................ 9

*Thompson/Center Arms Co. v. Baker*,
    686 F. Supp. 38 (D.N.H. 1988) ................................................................................. 14

*Total Plan Servs., Inc. v. Tex.as Retailers Ass'n, Inc.*,
    925 F.2d 142 (5th Cir. 1991) ...................................................................................... 9

*United States v. Al-Azhari*,
    2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ................................................................. 15

*United States v. Ardoin*,
    19 F.3d 177 (5th Cir. 1994) ............................................................................. 13, 24

*United States v. Clintwood Elkhorn Mining C*o.,
    553 U.S. 1 (2008) .................................................................................................... 10

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ........................................................................... 15

*United States v. Dema*,
    544 F.2d 1373 (7th Cir. 1976) .............................................................................. 10

*United States v. Gresham*,
    118 F.3d 258 (5th Cir. 1997) ................................................................................ 13

*United States v. Hasson*,
    2019 WL 4573424 (D. Md. Sept. 20, 2019); *aff'd*, 26 F.4th 610 (4th Cir. 2022) ................... 15

*United States v. Ross*,
    458 F.2d 1144 (5th Cir. 1972) .............................................................................. 13

*United States v. West Virginia*,
    295 U.S. 463 (1935) ............................................................................................... 22

*Virginia ex rel. Cuccinelli v. Sebelius*,
    656 F.3d 253 (2011) ......................................................................................... 20, 21

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................... 18

*Wyoming ex rel. Crank v. United States*,
    539 F.3d 1236 (10th Cir. 2008) ........................................................................... 21

## **Statutes**

18 U.S.C. § 921 *et seq*.......................................................................................... 3, 5

18 U.S.C. § 922 ........................................................................................................ 5

18 U.S.C. § 923 ........................................................................................................ 5

26 U.S.C. § 5801 ...................................................................................................... 1

26 U.S.C. § 5821 ............................................................................................... 11, 24

26 U.S.C. § 5822 ........................................................................................... 4, 12, 24

26 U.S.C. § 5841 ....................................................................................................... 4

26 U.S.C. § 5842 ....................................................................................................... 5

26 U.S.C. § 5845 .................................................................................................... 4, 5

26 U.S.C. § 6511 ....................................................................................................... 5

26 U.S.C. § 7421 ............................................................................................... 2, 9, 16

26 U.S.C. § 7422 ....................................................................................................... 5

28 U.S.C. § 2201 ....................................................................................................... 9

18 U.S.C. §§ 921 *et seq.* .......................................................................................... 5

26 U.S.C. §§ 5821 ............................................................................................... 11, 24

26 U.S.C. §§ 5822 ..................................................................................................... 12

26 U.S.C. §§ 5833 ..................................................................................................... 12

26 U.S.C. §§ 5841 ..................................................................................................... 13

26 U.S.C. §§ 5842 ..................................................................................................... 4

Tex. Gov't Code § 2.052 ................................................................................. 2, 6, 7, 20

Tex. Gov't Code § 2.054 ............................................................................................. 7

## **Rules**

Federal Rule of Civil Procedure 12 ......................................................................... 8, 24

## **Regulations**

26 C.F.R. § 301.6402-2 .............................................................................................. 5

27 C.F.R. § 479.62 ..................................................................................................... 4

27 C.F.R. § 479.64 ................................................................................................. 4, 12

27 C.F.R. § 479.65 ................................................................................................. 4, 12

27 C.F.R. § 479.102 ............................................................................................... 4, 5

27 C.F.R. § 479.172 .................................................................................................. 5, 14

27 C.F.R. §§ 479.71 ................................................................................................ 12, 13

## **Other Authorities**

NFA Handbook, Chap. 6, §§ 6.1 – 6.2,
  www.atf.gov/firearms/docs/guide/atf-national-firearms-act-
    handbook-atf-p-53208/download.............................................................................. 4

S. Rep. No. 1866,
  89th Cong., 2d Sess. 1 (1966) ................................................................................... 5

Texas House Bill 957 ................................................................................................... 2, 6

## I.    INTRODUCTION

The National Firearms Act of 1934, 26 U.S.C. § 5801 *et seq*. (the "NFA") is a tax statute located in the United States Internal Revenue Code. The NFA requires any person who intends to make a firearm suppressor for personal use to pay a $200 tax, accompanied by an application to the federal government. The statute also imposes registration and marking requirements in order to aid in the assessment, collection, and enforcement of the tax.

Plaintiffs are three individuals, who have expressed their intention to make firearm suppressors for personal use in Texas (the "Individual Plaintiffs"), and the State of Texas. Plaintiffs seek to enjoin the enforcement of the NFA and its implementing regulations. Plaintiffs assert two causes of action: (1) federal laws regulating the making of a firearm suppressor should be enjoined because they "violate[] the Second Amendment," ECF No. 1 ("Compl.") ¶¶ 92-115 (Count I); and (2) the Court should "grant a declaratory judgment that neither the Commerce Clause nor the Necessary and Proper Clause authorize federal regulation of the making of a firearm suppressor for personal use in Texas," Compl. ¶¶ 116-27 (Count II). Plaintiffs' claims should be dismissed for several reasons:

First, the Anti-Injunction Act (the "AIA") bars Plaintiffs' claims. The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax was assessed." 26 U.S.C. § 7421. Because the purpose of Plaintiffs' suit is to enjoin assessment and collection of the NFA's tax, this case falls squarely within the AIA's jurisdictional bar. It is well settled that the AIA bars judicial interference with the NFA's tax, *see Sonzinksy v. United States*, 300 U.S. 506, 511-13 (1937), including as to any activities aimed at collection and enforcement of that tax. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 741 (1974). Thus, the Court lacks subject matter jurisdiction over this lawsuit.

Second, Texas should be dismissed from this case for the additional reason that the State lacks Article III standing. Texas has not alleged any direct and concrete injury, nor is it in any immediate danger of such injury. Indeed, the only laws challenged here are the NFA's tax and its implementing provisions, which impose no obligations on the State at all.

Nor may Texas rely on its recent enactment of Texas House Bill 957 as a basis to invoke standing here. HB 957 purports to exempt suppressors made for personal use in Texas from federal firearms laws, but only with respect to laws that are based on "the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052 (as amended on Sept. 21, 2021). To the extent Texas may argue that HB 957 somehow confers standing based on the state's "sovereign interest" in its statute, any such argument would fail as a matter of law. As a threshold matter, because this case challenges only laws that were promulgated based on Congress's taxing power—not laws that are based on its  authority to regulate interstate commerce—HB 957 is not implicated.

In any event, a state cannot manufacture its own standing to challenge federal law by the simple expedient of passing a statute purporting to nullify federal law. Otherwise, a state could import almost any political or policy dispute into federal court by enacting its side of the argument into state law. Alternatively, to the extent Texas claims standing to protect its citizens, it is equally clear that a state cannot, acting as "*parens patriae*, . . . institute judicial proceedings to protect citizens of the United States from operation of [federal statutes]," because "it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect to their relations with the federal government." *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923); *see also Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (*Mellon* "prohibits" "allowing a State 'to protect her citizens from the operation of federal statutes").

2

Finally, even if Plaintiffs could surmount these jurisdictional barriers, Count II of their Complaint still should be dismissed because Plaintiffs fail to allege any facts upon which a claim for relief under the Commerce Clause or the Necessary and Proper Clause can be granted. The complaint seeks declaratory and injunctive relief only from federal statutes and regulations that tax and regulate the making of firearm suppressors in Texas for personal use in Texas. Those claims arise wholly out of the NFA, a taxing statute. Compl. ¶¶ 117-19. Congress's power to impose taxes is not limited by the reach of the Commerce Clause. Although a separate statute, the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* (the "GCA"), contains additional licensing and marking requirements for *other* firearms activities (those that engage commerce)—*e.g.*, importing, manufacturing, or dealing in firearms—Plaintiffs concede that the GCA does not regulate the making of firearm suppressors for personal use. *Id.* ¶ 118. Thus, the GCA is not implicated, and Count II fails as a matter of law.

Accordingly, Defendant's Motion to Dismiss should be granted.

## II.     FACTUAL BACKGROUND

### A.     National Firearms Act

As Plaintiffs recognize, the NFA "is a tax statute, located in the United States Code at Title 26 ('Internal Revenue Code'), Subtitle E ('Alcohol, Tobacco, and Certain Other Excise Taxes')." Compl. ¶ 41. As relevant here, the NFA charges a $200 tax on any person who "shall make a firearm," and imposes associated regulations in conjunction with that tax. Specifically, the NFA provides:

> No person shall make a firearm unless he has (a) filed with the [Attorney General] a written application, in duplicate, to make and register the firearm on the form prescribed . . .; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made . . .; (d) identified himself in the application . . . if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the

> [Attorney General] to make and register the firearm and the application for
> shows such approval.

26 U.S.C. § 5822.[1] "Applications [to make firearms] shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." *Id*.; 27 C.F.R. § 479.65. If the application is disapproved, the applicant's original form and their $200 tax payment will be returned to the applicant. 27 C.F.R. § 479.64.

The NFA also requires that the Attorney General "maintain a central registry of all firearms in the United States which are not in the possession of or under the control of the United States" in the National Firearms Registration and Transfer Record (NFRTR). 26 U.S.C. § 5841(a). "Each manufacturer, importer, and maker shall register each firearm he manufactures, imports or makes." *Id*. § 5841(b). Registration must occur before the firearm is made. *See id*. § 5841(c). Approval of the application to make and register the firearm, which is submitted alongside the $200 tax, "shall effectuate registration of the firearm to the applicant," 27 C.F.R. § 479.62, and "[u]pon receipt of the approved application, the maker is authorized to make the firearm described therein," 27 C.F.R. § 479.64. Any firearm made pursuant to these requirements must be marked with a serial number and the name of the maker in a manner that cannot "be readily removed, obliterated, or altered." 26 U.S.C. § 5842(a); 27 C.F.R. § 479.102.

For purposes of the NFA, the term "firearm" includes, *inter alia*, "any silencer," 26 U.S.C. § 5845(a); and the term "silencer" is further defined as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or

---

[1] Applications to make an NFA firearm must be made on an ATF Form 1, and be accompanied by the applicable tax payment, fingerprints and photograph of the maker, and law enforcement certification. *See* NFA Handbook, Chap. 6, §§ 6.1 – 6.2, at pp. 35-36; www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook-atf-p-53208/download.

redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24).[2] The term "make" means "manufacturing (other than by one qualified to engage in such business under this chapter),[3] putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i).

In the event the maker of a firearm wishes to challenge the assessment of the NFA's tax against him, the Internal Revenue Code provides an administrative process to address that claim. The maker can file a claim for refund or credit with the Attorney General after submitting an application and paying the applicable tax within the applicable limitations period. *See* 26 U.S.C. § 6511; 26 C.F.R. 301.6402-2; 27 C.F.R. 479.172. Only after those administrative remedies are exhausted can the maker then challenge the result in United States District Court, if necessary. *See* 26 U.S.C. § 7422 (civil actions for refund).

B.    Gun Control Act

The Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921 *et seq.* (the "GCA")*,* was enacted pursuant to Congress' power to regulate interstate commerce. S. Rep. No. 1866, 89th Cong., 2d Sess. 1 (1966). The GCA contains various licensing, recordkeeping, background check, and marking requirements for persons engaged in the business of importing, manufacturing, or dealing in firearms. *See, e.g.,* 18 U.S.C. § 923(a), §923 (g)(1)(A), § 922(t), § 923(i). However,

---

[2] While the statute uses the term "silencer," Plaintiffs' Complaint uses the term "suppressor" to describe these same devices. *See* Compl. ¶¶ 23-27. For purposes of this motion, the terms silencer and suppressor are used interchangeably to refer to the relevant devices covered by 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(24).

[3] The NFA expressly distinguishes between persons who make firearms (including silencers) for personal use, as opposed to "manufacturers." The term "manufacturer" means any person who is engaged in the business of manufacturing [silencers]." 26 U.S.C. § 5845.

unlike the NFA, the GCA does not regulate the making of a firearm for personal use. *See* Compl. ¶ 118 ("The Gun Control Act of 1968 . . . does not prohibit the making of firearm suppressors for personal use.").

    C.    <u>Texas House Bill 957</u>

Texas House Bill 957 ("HB 957") was passed on May 4, 2021, and went into effect on September 1, 2021. HB 957 purports to exempt firearms suppressors made for personal use in Texas from some federal firearms laws. In particular, Section 2.052 of the Texas Government Code now provides that neither "[a] firearm suppressor that is manufactured in this state and remains in this state" nor "[a] basic material from which a firearm suppressor is manufactured in this state" is "subject to federal law or federal regulation . . . under the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052 (as amended).

HB 957 further states that "[o]n written notification to the attorney general by a United States citizen who resides in this state of the citizen's intent to manufacture a firearm suppressor to which Section 2.052 applies, the attorney general shall seek a declaratory judgment from a federal district court in this state that Section 2.052 is consistent with the United States constitution." *Id.*[4]

---

[4] Before HB 957 went into effect, ATF issued an "Open Letter to All Texas Federal Firearms Licensees" dated July 26, 2021, advising them that regardless of HB 957, all federal firearms laws and regulations continued to apply. *See* Compl., Ex. 4. The Open Letter further explained that "[t]his letter does not impose any new obligations. It merely confirms the continuing applicability of existing federal obligations." *Id.* at 1. Plaintiffs have not brought any claims purporting to challenge the Open Letter itself, nor could they do so in light of the fact that the Open Letter imposes no legal obligations. *See generally Bennett v. Spear*, 520 U.S. 154, 178 (1997) (holding that a federal agency action is only final, and thus subject to legal challenge, if it is "one by which rights or obligations have been determined, or from which legal consequences will flow"). Here, ATF's Open Letter simply restated the existing obligations under longstanding federal firearms laws. Even if ATF had not issued the letter, Texans would still have been required to comply with those federal firearms laws. Any legal consequences to Plaintiffs thus flow from the applicable federal firearms laws and their implementing regulations, not from ATF's letter.

D.     Individual Plaintiffs' Stated Intention to Make Suppressors for Personal Use

Individual Plaintiffs each claim that they "intend[] to manufacture a firearm suppressor to which section 2.052 of the Texas Government Code applies and ha[ve] notified the attorney general of that fact in writing." Compl. ¶¶ 13-15 (citing Ex. 1). Specifically, on February 23, 2022, Individual Plaintiffs, collectively and through their shared attorney, sent a letter to Texas Attorney General Paxton, stating that "Mr. Schnitz, Mr. Martin, and Mr. Allen each intend to personally manufacture a firearm suppressor for their own personal use" and that "[t]he firearm suppressors will be manufactured in their homes from basic materials." Compl., Ex. 1 at 1. Plaintiffs' letter further asserts that "Mr. Schnitz, Mr. Martin, and Mr. Allen intend to own the firearm suppressors in perpetuity, to never transport them outside the boundaries of the State of Texas, and to never transfer them to another person." *Id.* Based on those stated intentions and Tex. Government Code § 2.054, the Individual Plaintiffs "request[ed] that [Attorney General Paxton] seek a declaratory judgment from a federal district Court in this state that Section 2.052 is consistent with the United States Constitution." *Id.*

The Individual Plaintiffs' claims consist solely of allegations that they should not be subject to the tax and related requirements imposed by the NFA and its implementing regulations. *See* Compl. ¶¶ 41-78. Nowhere in the Individual Plaintiffs' letter to Attorney General Paxton, nor in their Complaint, do they assert any intention to engage in any activity other than the making of a firearm suppressor for personal use. *See* Compl. ¶¶ 13-15. Nor does the Complaint allege that the GCA restricts or controls Plaintiffs in any way. On the contrary, Plaintiffs state that "the Gun Control Act does not prohibit the making of standard firearms and firearm suppressors for personal use." Compl. ¶ 39-40.[5]

---

[5]As detailed *infra* in Part IV.B, the State does not assert any independent factual allegations beyond what is laid out in connection with the Individual Plaintiffs' claims.

E.    Plaintiffs' Complaint

On February 24, 2022, Plaintiffs filed this lawsuit, asserting two causes of action. Count I is a Second Amendment challenge to the NFA. Specifically, Plaintiffs ask the Court to "enjoin federal law as applied to taxing and regulating firearm suppressors made in Texas for personal use in Texas because that law violates the Second Amendment." Compl. ¶¶ 92-115.

Count II seeks a declaratory judgment that "neither the Commerce Clause nor the Necessary and Proper Clause authorize federal regulation of the making of a firearm suppressor for personal use in Texas." Compl. ¶¶ 116-27. In this Count, Plaintiffs acknowledge that their claim does not implicate the Gun Control Act of 1968, which "is a commerce regulation," because the GCA "does not prohibit the making of firearm suppressors for personal use." Compl. ¶ 118. And Plaintiffs also concede that the NFA "is a taxing statute, not a regulation of interstate commerce." *Id.* ¶ 117. Plaintiffs then attempt to thread this needle by arguing that "*[e]ven if* the federal government regulated the making of firearm suppressors under its power to regulate interstate commerce, that *would be* unconstitutional as applied to firearm suppressors made in Texas for personal use in Texas." *id.* ¶ 119 (emphasis added).

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1998). Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper

attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008)).

## IV.   ARGUMENT

### A.   <u>This Court Lacks Jurisdiction Because the Anti-Injunction Act Bars Plaintiffs' Claims</u>

The Anti-Injunction Act ("AIA") provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax is assessed." 26 U.S.C. § 7421. In other words, the AIA "withdraw[s] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Linn v. Chivatero*, 714 F.2d 1278, 1281 (5th Cir. 1983) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5 (1962)).[6] These jurisdictional limitations apply even where, as here, plaintiffs raise a constitutional challenge:

> The "decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim . . . is of no consequence" to whether the prohibition against tax injunctions applies. This is so even though the Anti-Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme—the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted.

---

[6] Plaintiffs seek both injunctive and declaratory relief. Under the Declaratory Judgment Act, a court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes*." 28 U.S.C. § 2201 (emphasis added). It is well settled that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." *Bob Jones Univ. v. Simon*, 416 U.S. 725 n.7 (1974). Thus, if plaintiffs' claims are barred by the Anti-Injunction Act, they are also barred by the Declaratory Judgment Act. *Id.*; *see also Total Plan Servs., Inc. v. Tex. Retailers Ass'n, Inc.*, 925 F.2d 142, 145 n.1 (5th Cir. 1991) ("[T]he principles which underlie [the AIA] *prevent declaratory as well as injunctive relief*) (emphasis in original) (quoting *Tex. Emps.' Ins. Ass'n v. Jackson*, 862 F.2d 491, 508 (5th Cir. 1988)).

*United States v. Clintwood Elkhorn Mining C*o., 553 U.S. 1, 10 (2008) (quoting *Alexander v. "Am.*

*United" Inc.*, 416 U.S. 752, 759 (1974)); *see also Linn*, 714 F.2d at 1282 (Plaintiff's "decision to

cast his lawsuit in constitutional terms does not mean that the Anti-Injunction Act is inapplicable").

　　The AIA protects the "Government's need to assess and collect taxes as expeditiously as

possible with a minimum of preenforcement judicial interference 'and to require that the legal right

to the disputed sum be determined in a suit for refund.'" *Bob Jones Univ.*, 416 U.S. at 736-37

(quoting *Enochs v. Silliams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). Thus, the AIA is

not limited to suits aimed at the specific act of assessment or collection, but rather bars any

injunction that "would necessarily preclude" the collection of taxes. *Bob Jones Univ.*, 416 U.S. at

731-32 (holding AIA barred suit brought prior to any tax assessment in order to enjoin revocation

of an IRS letter ruling of tax exempt status); *see also Kemlon Prod. & Dev. Co. v. United States*,

638 F.2d 1315, 1320 (5th Cir. 1981) (AIA's "ban against judicial interference is applicable not

only to the assessment or collection itself, but is equally applicable to activities which are intended

to or may culminate in the assessment or collection of taxes.") (quoting *United States v. Dema*,

544 F.2d 1373, 1376 (7th Cir. 1976)). To determine whether a plaintiff's claims are barred by the

AIA, courts assess whether the "primary purpose" of the lawsuit is to seek relief that would

"restrain the collection of taxes or the collection of information that would aid in the assessment

of taxes." *Linn*, 714 F.2d at 1282 (quoting *Bob Jones*, 416 U.S. at 738).

　　This case falls squarely within the jurisdictional bar of the AIA. As detailed below: (1) the

AIA bars Plaintiffs' claims because they seek relief that would necessarily preclude the federal

government from assessing or collecting a tax under the NFA; (2) the AIA's narrow exceptions do

not apply here; and (3) the AIA's jurisdictional bar applies to Texas, as well as to the Individual

Plaintiffs. Accordingly, this case should be dismissed.

### 1.   *Plaintiffs' Primary Purpose Is to Restrain the Assessment and Collection of a Tax.*

This case should be dismissed because its "primary purpose" is to seek relief that would "restrain the collection of taxes or the collection of information that would aid in the assessment of taxes." *Linn*, 714 F.2d at 1282 (quoting *Bob Jones*, 416 U.S. at 738). Plaintiffs challenge the constitutionality of the NFA, which they concede "is a tax statute, located in the United States Code at Title 26 ('Internal Revenue Code'), Subtitle E ('Alcohol, Tobacco, and Certain Other Excise Taxes')." Compl. ¶ 41; *see also Sozinsky v. United States*, 300 U.S. 506, 511-13 (1937); *Bezet v. United States*, 276 F. Supp. 3d 576, 617 (E.D. La. 2017).  Specifically, Plaintiffs challenge the provisions of the NFA that require payment of a $200 tax on the making of a firearm suppressor and the application and registration requirements that aid in collection and enforcement of that tax.

As a threshold matter, there can be no question that the AIA applies to the $200 tax imposed by the NFA. It is well settled that the AIA applies to excise taxes, *see Bob Jones*, 416 U.S. at 741, and that the levies imposed by the NFA are excise taxes. *See* 26 U.S.C. § 5821(a) ("There shall be levied, collected, and paid upon the making of a [firearm suppressor] *a tax* at the rate of $200 for each firearm made.") (emphasis added); *see also Sonzinksy*, 300 U.S. at 511-13; *Bob Jones*, 416 U.S. at 741 n.12 (citing as authority *Sozinsky*'s determination that the NFA's levy is a tax). In light of this binding precedent, Plaintiff's Complaint does not—and cannot—challenge the NFA on the basis that it does not impose any tax at all.[7] Instead, Plaintiffs contend that "among the purposes

---

[7] Specifically, Plaintiffs have not alleged—nor could they credibly do so—that the regulatory impact of the NFA's levy somehow obviates its classification as a tax. In *Sonzinsky*, the Supreme Court considered whether the NFA's $200 tax on dealers in firearms was a constitutional exercise of Congress's taxing powers. The criminal defendant argued that the NFA's levy was not a true tax, "but a penalty imposed for the purpose of suppressing traffic in certain noxious type of firearms." 300 U.S. at 512. The Supreme Court held that "[e]very tax is in some measure regulatory . . . [b]ut a tax is not any the less a tax because it has a regulatory effect." *Id.* at 555-56. The Court further held that, since the measure operates as a tax, it is within Congress's taxing power and courts should not "speculate as to the motives which moved Congress to impose it." *Id.* The

of this lawsuit is to enjoin enforcement of statutes and regulations that impose duties other than paying a tax" and that the AIA "does not apply to those challenges." Compl. ¶ 21. Plaintiffs are wrong as a matter of fact and law.

Every statute or regulation challenged in the Complaint either is part of the NFA or implements the NFA. As laid out in Plaintiffs' Complaint, the statutory and regulatory scheme they challenge includes the following requirements: (1) any person who intends to make a firearm suppressor must file a written application to the Attorney General, accompanied by a $200 tax payment, and must obtain the Attorney General's approval, Compl. ¶¶ 49, 52-64, 74 (citing 26 U.S.C. §§ 5822, 5833; 27 C.F.R. §§ 479.64-479.65); and (2) approval of the maker's application effectuates registration of the firearm suppressor that they will make, which must be identified with a serial number that cannot be readily removed or altered, Compl. ¶¶ 66-68, 70-72 (citing 26 U.S.C. §§ 5841, 5842; 27 C.F.R. §§ 479.71, 479.102).

These challenged requirements clearly serve to aid in the assessment, collection, or enforcement of the NFA's tax on the making of firearm suppressors. First, requiring application and approval to make a firearm, in conjunction with submitting the requisite tax payment, is merely the regulatory mechanism to identify those who are required to pay the tax in the first place. *See generally Bezet v. United States*, 276 F. Supp. 3d 576 (E.D. La. 2017). Second, the NFA's registration and marking requirements serve to aid the Department in its ability to enforce the applicable tax—a fact that both the Supreme Court and the Fifth Circuit have recognized. In *Sonzinky v. United States*, the Supreme Court upheld the NFA's registration provisions as a

---

Supreme Court has consistently reiterated this principle. *See CIC Servs. LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1593 (2021) ("This Court has long since 'abandoned the view that brightline distinctions exist between regulatory and revenue-raising taxes.'") (quoting *Bob Jones*, 416 U.S. at 741 n.12).

constitutional exercise of Congress's taxing power, on the basis that those registration requirements are "obviously supportable as in aid of a revenue purpose." 300 U.S. at 556. Likewise, the Fifth Circuit has repeatedly upheld Congress's ability to enforce a tax through the promulgation of firearm registration requirements. *See, e.g.*, *United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997) (holding that a requirement to register pipe bombs was "not a mere pretext for police power, but is 'part of the web of regulation aiding enforcement of the tax provision'"); *United States v. Ardoin*, 19 F.3d 177, 188 (5th Cir. 1994) (holding that requirements to register weapons can be constitutionally premised on Congress's taxing power); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972) (upholding penalty on possession of unregistered weapons under Congress's taxing power because "[s]uch a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax").

Thus, notwithstanding Plaintiffs' assertions to the contrary, Compl. ¶ 21, every statute and regulation they seek to enjoin serves the assessment and collection of a tax.[8]  Because the primary purpose of this case is to seek relief that would unlawfully restrain the collection of a tax, Plaintiffs' claims are barred by the AIA. *See Kemlon Prod. & Dev. Co.*, 638 F.2d at 1320; *Linn*, 714 F.2d at 1282; *Bob Jones*, 416 U.S. at 738.

---

[8] By contrast, cases in which the AIA was found not to apply are clearly distinguishable because they involved challenges other than to the propriety of a tax. For example, in *Linn v. Chivatero*, the plaintiff challenged only the unlawful retention of his personal records, 714 F.2d at 1284, and not the propriety of any tax that might be assessed against him. Without any challenge to a tax that may be assessed, there could be no refund suit in which Linn would be able to otherwise raise his Fourth Amendment claims. *Id.* Moreover, "Linn's fourth amendment claim [was] not that the IRS should be enjoined from obtaining information to which it is lawfully entitled, but rather that it should obtain that information in accordance with the tax law, i.e., through a summons enforcement proceeding." *Id.* Similarly, in *CIC Servs., LLC v. IRS*, the Court held that the suit fell "outside the Anti-injunction Act because the injunction it requests does not run against a tax at all." 141 S. Ct. 1582, 1593 (2021). Here, unlike in *Linn* and *CIC*, Plaintiffs seek to enjoin a tax *and* seek to block access to the information necessary for assessment of that tax.

2.       *The Only Exceptions to the AIA are Narrow and Do Not Apply*

Courts have recognized only two judicially-created exceptions to the AIA: (1) where Plaintiffs have no alternative means of litigating their claim; and (2) where under "no circumstances" could the federal government prevail. *See Kemlon Prod. & Dev. Co. v. United States*, 638 F.2d 1315, 1323 (5th Cir. 1981); *Bob Jones University*, 416 U.S. at 748-49; *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. at 7. Neither exception applies under the circumstances here.

First, Plaintiffs do not—and could not—allege that they lack alternative means to litigate their claims. Rather, Plaintiffs can employ the appropriate administrative procedure, which is to file a claim for refund *after* submitting an application and paying the applicable tax within the applicable limitations period, and thereafter to challenge the result in United States District Court, if necessary. *See* 26 U.S.C. §§ 6511, 7422; 26 C.F.R. 301.6402-2; 27 C.F.R. 479.172; *see also Thompson/Center Arms Co. v. Baker*, 686 F. Supp. 38 (D.N.H. 1988) (dismissing challenge to NFA's taxing provisions for firearms makers based on the AIA, and explaining appropriate alternative process for the challenge).

Second, there is no basis to conclude that the United States would be unable, under any circumstances, to ultimately prevail in this suit. *See* Compl. ¶ 20 (stating in a conclusory fashion that the AIA does not apply for this reason). In applying this narrow exception, the Court must give the United States the benefit of the "most liberal view of the law and the facts." *Kemlon Prod.*, 638 F.2d at 1315 (citing *Enoch*, 370 U.S. at 7). In other words, Plaintiffs' Second Amendment and Commerce Clause claims need only be "sufficiently debatable to foreclose any notion that 'under no circumstances could the [United States] ultimately prevail." *Bob Jones*, 416 U.S. at 748-49.

14

Plaintiffs fail to meet the high threshold of establishing that there are no circumstances in which the United States could prevail.[9]

With respect to Plaintiffs' Second Amendment Claim, at least one court in this Circuit has already rejected a similar Second Amendment challenge to the NFA's requirements on making a firearm. *Bezet v. United States*, 276 F. Supp.3d 576, 609-12 (E.D. La. 2017) (dismissing Second Amendment claims against the NFA's tax and associated requirements). Moreover, no court has ever held that a firearm suppressor is an "arm" within the meaning of the Second Amendment. In fact, every court to consider the issue has found that suppressors do *not* qualify as "bearable arms." *See, e.g., United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *United States v. Al-Azhari*, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, 2019 WL 4573424, at *4-5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022).

Finally, as detailed below, Plaintiffs have failed to plead any facts that state a claim under the Commerce Clause or the Necessary and Proper Clause—much less facts that could render it impossible for Defendant to prevail on those claims. *See infra* in Part V; *see also Bezet*, 276 F. Supp.3d at 617-619 (holding that the NFA's tax and registration requirements on the making of a firearm do not violate the Commerce Clause or the Necessary and Proper Clause).

### 3. The AIA's Jurisdictional Bar Applies to the State

To the extent Texas suggests that the AIA's jurisdictional bar does not apply to the State, *see* Compl. ¶ 20 (contending the AIA "does not bar this case" because "Texas sovereign interests are harmed"), that is incorrect. By its terms, the AIA bars suits brought by "*any person, whether or not such person is the person against whom such tax was assessed.*" 26 U.S.C. § 7421(a)

---

[9] The Court need not, and should not, delve deeply into the merits of Plaintiff's claims, because this case is jurisdictionally barred. However, were this case to proceed on the merits, Defendant's positions would be more than just debatable. Rather, Defendant would be likely to prevail.

(emphasis added). In the context of and for the purposes of the Internal Revenue Code, the Supreme Court has long held that "person" necessarily includes States. *Sims v. United States*, 359 U.S. 108 (1959); *Ohio v. Helvering*, 292 U.S. 360, 370 (1934) (holding that a state was "embraced within the meaning of the word 'person' where the word 'person' was defined as 'meaning and including a partnership, association, company, or corporation, as well as a natural person'"), *overruled on other grounds by Garcia v. San Antonio Met. Transit Auth.*, 469 U.S. 528 (1985).[10] Further, the Supreme Court has held that the AIA applies even when a third party seeks to challenge only the regulatory impact of a tax, because "a suit to enjoin the assessment or collection of *anyone's* taxes triggers the literal terms of § 7421(a)." *Alexander*, 416 U.S. at 760 (emphasis added); *id.* ("Section 7421(a) does not bar merely a taxpayer's attempt to enjoin the collection of his own taxes."). Here, the State seeks relief that would have the effect of restraining the assessment and collection of the NFA's tax. *See* Prayer for Relief, Compl. at 27-28. Because the State's claims directly "triggers the literal terms of § 7421(a)," the AIA bars those claims. *See Alexander*, 416 U.S. at 760.

This is not a case like *South Carolina v. Regan*, 465 U.S. 367 (1984), in which the state asserted its own independent interest in enjoining the law at hand. In *Regan*, the Supreme Court permitted a state to challenge the revocation of a tax exemption for state-issued bonds "on its own

---

[10] With respect to the Internal Revenue Code—including the AIA—Congress intended the word "person" to be construed broadly. As the Supreme Court has recognized, the AIA's inclusion of the phrase "by any person, whether or not such person is the person against whom such tax was assessed" was simply meant to reaffirm that the AIA applied to taxpayers and nontaxpayers alike, not to limit the scope of the AIA's reach. *Bob Jones Univ.*, 416 U.S. at 731 n.6; *see also Confederated Tribes and Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810, 814 (9th Cir. 2016) (detailing this legislative history of the AIA and concluding that "[t]his history cuts against an interpretation of the [AIA] that excludes suits based merely on the identity of the plaintiff, at least where that party readily fits the ordinary definition of 'person').

16

behalf," when the tax substantially harmed the state's ability to issue bonds and the state could not rely on individual buyers to assert its claims. *Id.* at 371-72, 380-81.[11] The *Regan* Court did not hold that states are exempted from the AIA generally. Rather, the court allowed the state's claims to go forward based on the specific facts at hand—because the state had "no alternative avenue . . . to litigate claims on its own behalf." *Id.* at 381, 403.

By contrast, here Texas has not identified any concrete harm to itself, such that the State requires an injunction "on its own behalf." *See infra* Part IV.B. Rather, Texas's claims are entirely derivative of the injuries claimed by individual Texans, specifically would-be makers of firearm suppressors and, in particular, the Individual Plaintiffs. *Id.* Texas has offered no explanation as to why the rights of individual Texans cannot be addressed through the appropriate "alternative avenue"—*i.e.,* paying the tax and, if they wish, challenging its validity in a refund action thereafter. *See New York v. Mnuchin*, 408 F. Supp. 3d 399, 412 (S.D.N.Y. 2019) (applying *Regan* to allow state's claim, but explaining that the Court's analysis of *Regan* "would be different if the States sought in this action to assert the rights of their taxpayers—rights that the taxpayers could defend themselves in a refund action").

Nor must Texas "depend on the *mere possibility* of persuading" individual taxpayers to assert claims challenging the tax at issue, which was the situation in *Regan*. 465 U.S. at 381 (emphasis added). Here, the Individual Plaintiffs were obviously motivated to (i) write to the Texas attorney general and request that he seek a declaratory judgment, and (ii) file this lawsuit. Thus, the Individuals Plaintiffs appear to have every incentive to raise these claims in a refund suit if this case is dismissed for lack of jurisdiction under the AIA (as it should be). *See Confederated Tribes*

---

[11] In particular, buyers of South Carolina's bonds were unlikely to assert their own claims because they could avoid taxation simply by purchasing registered bonds, and thus would have little incentive to pay the tax, file a refund suit, and raise the state's constitutional claims. *Id.* at 381.

*& Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d at 815 (distinguishing *Regan* and finding the AIA barred the tribe from bringing claims aimed at protecting its members because, *inter alia*, the tribe's members were similarly incentivized to raise their own claims). On the other hand, if Texas's claims were allowed to go forward under these circumstances, the AIA would be rendered meaningless, since individuals would be able to evade the AIA by merely asking states to file lawsuits in their stead. *Cf. Regan*, 465 U.S. at 381 n.19 (clarifying that its holding does not allow taxpayers to "evade the [AIA] by forming organizations to litigate their tax claims").

Accordingly, the Anti-Injunction Act bars all Plaintiffs' claims to enjoin enforcement of the NFA's tax provisions and related regulatory requirements, and this case should be dismissed.

B.    Texas Lacks Standing Because It Has Alleged No Cognizable Injury

Even if Texas's claims were not barred by the Anti-Injunction Act, the State would still lack standing because it fails to allege the requisite cognizable injury to meet the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, Texas must show that it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.*; *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing, including injury in fact) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The burden rests with the party invoking federal jurisdiction, here Texas, to "establish[] these elements." *Id.*

Texas does not articulate any "legally protected" state interest that is harmed, much less an injury that is "concrete and particularized." Texas pleads only—without any further explanation— that it "has standing to assert its sovereign interest in regulating the making of firearm suppressors

within Texas that will stay in Texas." Compl. ¶ 12. That is insufficient. A state's alleged harm to its abstract interest in its own sovereignty is not in itself a justiciable injury. *See Massachusetts v. Mellon*, 262 U.S. 447, 484-85 (1923); *New Jersey v. Sargent*, 269 U.S. 328, 337 (1926) (allegations that provisions of federal law "go beyond the power of Congress and impinge on that of the state . . . do not suffice as a basis for invoking an exercise of judicial power"); *Texas v. ICC*, 258 U.S. 158, 162-63 (1922) (state's claim of infringement upon state sovereignty was merely "an abstract question of legislative power," not a justiciable case or controversy). These decisions make clear that Texas's abstract assertion of "sovereign interest" does not give rise to a controversy under Article III, because Texas is asking this Court "to adjudicate, not rights of person or property, not rights of dominion over physical domain, not quasi sovereign rights actually invaded or threatened, but abstract questions of political power, of sovereignty, of government." *Mellon*, 262 U.S. at 484-85. Because Texas has failed to articulate any basis for its standing in the Complaint, its claims fail on their face and should be dismissed.

To the extent Texas may argue that it has standing pursuant to HB 957—the State's recently-enacted law purporting to exempt firearms suppressors made in Texas from federal law—that argument has no merit. HB 957 purports to nullify federal laws that regulate firearms suppressors made in Texas, but *only* with respect to laws that are based on "the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052. HB 957 is silent as to laws promulgated pursuant to *other* federal powers—including those based on Congress's taxing power. *Id.* As detailed *infra* in Part V, this case seeks declaratory and injunctive relief only from "federal statutes and regulations that *tax and regulate the making of firearm suppressors for personal use in Texas*." Compl, Part VII (prayer for relief). All of Plaintiffs claims arise out of the NFA or its implementing regulations, and the NFA "is a taxing statute, *not a*

*regulation of interstate commerce.*" Compl. ¶ 117 (emphasis added); *Id.* ¶¶ 41-42. Because the challenged laws are not based on "the authority of the United States Congress to regulate interstate commerce," the terms of HB 957 simply are not implicated here, and thus HB 957 cannot form the basis for Texas's standing to challenge laws at hand.

In any event, even if HB 957 purported to address the laws challenged here, any argument that it creates standing for Texas would still fail as a matter of law. A federal law can only inflict the requisite injury-in-fact upon a state when the challenged law interferes with the state's exercise of its sovereign "power to create and enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982). By contrast, HB 957 does not create any state program, much less a regulatory mechanism for enforcement. On the contrary, HB 957 merely provides that "firearm suppressor[s] that [are] manufactured in this state and remain[] in this state" and "basic material[s] from which a firearm suppressor is manufactured in this state" are "not subject to federal law or federal regulation, including registration, under the authority of the United States Congress to regulate interstate commerce." Compl. ¶ 87-88 (quoting Tex. Gov't Code § 2.052(b)).

Texas cannot manufacture its own standing to challenge a federal law by simply passing a statute purporting to nullify it. Under the Supremacy Clause, a state law purporting to nullify federal law "must yield." *Florida v. Mellon*, 273 U.S. 12, 17 (1927); *see also Helvering v. Davis*, 301 U.S. 619, 645 (1937) ("The issue is a closed one. It was fought out long ago."). For this reason, Courts consistently recognize that a state has standing based on "federal interference with the enforcement of state law," only when "'the state statute at issue regulate[s] behavior or provide[s] for the administration of a state program' *and does not 'simply purport [] to immunize [state] citizens from federal law.'*" *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (emphasis added) (citing *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253 (2011)); *see also Texas v.*

*Becerra*, No. 5:21-cv-300-H, 2021 WL 6198109, at *21 (N.D. Tex. Dec. 31, 2021) (emphasis added) (also citing *Cucinelli* for this same principle).[12]

The Fourth Circuit's decision in *Cuccinelli* is instructive. In that case, the State of Virginia challenged the constitutionality of the Affordable Care Act's (ACA's) individual mandate. Virginia claimed standing on its own behalf, relying upon the Virginia Health Care Freedom Act ("VHCFA"), which was passed after the ACA was signed into law. The VHCFA declared that no person could be forced to buy health insurance against his or her will, thereby purporting to override the ACA's requirement. The Fourth Circuit held that Virginia lacked standing because "the VHCFA regulates nothing and provides for the administration of no state program. Instead, it simply purports to immunize Virginia citizens from federal law. In doing so, the VHCFA reflects no exercise of 'sovereign authority to nullify federal law." *Cuccinelli*, 656 F.3d at 270. As the Fourth Circuit aptly recognized, if states could manufacture standing in the way Texas attempts to do here, a state could import almost any political or policy dispute into federal court by enacting its side of the argument into state law. *See id.* at 271 ("To permit a state to litigate whenever it enacts a statute declaring its opposition to a federal law, as Virginia has in the VHCFA, would convert the federal judiciary into a 'forum' for the vindication of a state's 'generalized grievances about the conduct of government.'") (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968)). Indeed, as the Sixth Circuit recently reiterated, "Article III of the U.S. Constitution permits federal courts to adjudicate only 'cases or controversies,'" not any political dispute that happens to arise between

---

[12] Unlike here, cases implicating a state's "power to create and enforce a legal code" involve state laws that establish rights accompanied by processes and enforcement mechanisms. *See, e.g., Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) (holding state had standing based on its established procedures to expunge misdemeanor convictions for the purposes of restoring firearms rights).

the state and federal executive branches." *Arizona v. Biden*, ---F.4th---, 2022 WL 1090176, at *2 (6th Cir. Apr. 12, 2022).[13]

Finally, to the extent Texas may argue that it has standing because certain federal gun laws impose burdens on its citizens, that argument would also fail. The law is clear that a state cannot, acting as "parens patriae, . . . institute judicial proceedings to protect citizens of the United States from the operation of [federal] statutes." *Mellon*, 262 U.S. at 485-86. Because citizens of a state "are also citizens of the United States," it is the United States, and not the state, which represents [its citizens] as parens patriae" and, thus, "it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government." *Id.* The Supreme Court has repeatedly reiterated that its decision in *Mellon* "prohibits" a state from suing federal defendants "to protect her citizens from the operation of federal statutes." *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (*Mellon* "prohibits" "allowing a State 'to protect her citizens from the operation of federal statutes") (internal quotation omitted); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982) ("A State does not have standing as *parens patriae* to bring an action against the Federal Government"). Texas thus cannot bring this suit

---

[13] Even if there were a legitimate conflict between H.B. 957 and federal law, that still could not give rise to a legitimate sovereign interest on behalf of Texas. Settled law confirms that such abstract policy disputes are not proper subjects for judicial resolution. For example, in *United States v. West Virginia*, 295 U.S. 463, 469 (1935), West Virginia licensed construction of a dam pursuant to state law, and the United States contended that a federal license was required under the Federal Water Power Act. The State contended that the federal statute exceeded Congress's power, and that the state act was therefore superior. *Id.* at 469. Although recognizing that there was a concrete dispute between the United States and the private dam builder (who sought to build without a federal license), the Supreme Court dismissed the complaint as between the United States and West Virginia, holding that it presented merely a "difference of opinion" between the state and federal governments, not a case or controversy. *Id.* at 473-74; *see also New Jersey*, 269 U.S. at 337 (holding that state lacked standing to challenge provisions of Federal Act that were allegedly contrary to the state's water policies). In sum, there is no legal basis for Texas to receive an advisory opinion as to whether its state law is valid on the ground that the federal law is not.

against the federal government on the theory that the NFA (or any other federal firearms restriction) burdens or otherwise injures Texas's citizens.

Accordingly, Texas lacks standing and should be dismissed from this case.

## V.    Count II Should Be Dismissed Because the Facts Alleged in Plaintiffs' Complaint Do Not State a Claim under the Commerce Clause or the Necessary and Proper Clause

Count II of Plaintiffs' Complaint seeks "a declaratory judgment that neither the Commerce Clause nor the Necessary and Proper Clause authorize federal regulation of the making of a firearm suppressor for personal use in Texas." Compl. ¶¶116-27. Even if Plaintiffs had standing to bring this case, Count II should be dismissed because Plaintiffs have not alleged a single fact that could give rise to a claim under the Commerce Clause or the Necessary and Proper Clause.

This case seeks declaratory and injunctive relief only from "federal statutes and regulations that tax and regulate the making of firearm suppressors in Texas for personal use in Texas." *See* Compl., Part VII (prayer for relief).  In sum, Plaintiffs complain that the NFA unlawfully prohibits making firearm suppressors for personal use without first paying a tax and getting approval, Compl., Part IV.B, E, and that any such suppressors must then be registered and marked, *id.*, Parts IV.C, D. Each of these requirements is part of the NFA or its implementing regulations, and Plaintiffs concede that the NFA "is a taxing statute, *not a regulation of interstate commerce*." Compl. ¶ 117 (emphasis added); *Id.* ¶¶ 41-42; *see also Sonzinsky*, 300 U.S. at 512-14.[14]

By definition, because all of Plaintiffs' claims arise from the NFA, which is solely an exercise of Congress's taxing power, these claims cannot form the basis of a challenge under the

---

[14] Plaintiffs also reference the GCA, but only to acknowledge it does not apply. Compl. ¶ 119 ("[The Gun Control Act of 1968 is a commerce regulation, *but does not prohibit the making of firearm suppressors for personal use.*" *Id.* (emphasis added); *see also id.* ¶ 39-40 (conceding that the GCA "lists many prohibitions, but there is no prohibition on making firearm suppressors for personal use").

Commerce Clause or the Necessary and Proper Clause. *See generally Nat'l Fed. Of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012) ("*NFIB*") (explaining that the taxing power allows Congress to enact and implement taxes on activities that it could not otherwise regulate through its commerce powers). In *Bezet v. United States*, the Eastern District of Louisiana considered this very issue. 276 F. Supp.3d at 617-19. Bezet challenged the same NFA provisions for making firearms that are at issue here (26 U.S.C. §§ 5821 and 5822), contending that they violated the Commerce Clause and the Necessary and Proper Clause. *Id.* at 617.[15] The court dismissed Plaintiffs claims pursuant to Rule 12(b)(6), concluding that "because Congress has 'properly exercise[d] its authority under an enumerated power," namely its taxing power, the plaintiff's Commerce Clause and Necessary and Proper Clause challenge "to Sections 5821 and Section 5822 fail." *Id.* at 618-19.

By conceding that their claims arise wholly out of the NFA (a taxing statute), Plaintiffs effectively admit that their allegations have nothing to do with the Commerce Clause, nor by extension the Necessary and Proper Clause. *See McCulloch v. Maryland*, 421 U.S. 316 (1819) (noting that the general authority to pass laws "necessary and proper" are determined only by virtue of the other powers enumerated under the Constitution); *United States v. Kebodeaux*, 570 U.S. 387 (2013) (recognizing that "the Necessary and Proper Clause is not a freestanding grant of congressional power").[16] Yet, Plaintiffs still ask this Court to grant them declaratory relief on the

---

[15] Bezet argued that the Commerce Clause applied because the NFA's "levy was not a true tax." *Id.* at 618. The court rejected that argument, finding it directly contrary to both Supreme Court and Fifth Circuit precedent. *Id.* at 618-19 (citing *Sonzinsky*, 300 U.S. at 512 and *Ardoin*, 19 F.3d at 180). Here, Plaintiffs do not lodge any claim that the NFA is an improper exercise of Congress's taxing authority.  Nor could they, since that point is well settled. *See id.*; *see also supra* note 7.

[16] Plaintiffs' "necessary and proper" claims are wholly derivative of their Commerce Clause claims. The Complaint discusses the Necessary and Proper Clause solely as an expansion of the Commerce Clause power. Compl. ¶¶121-26. Accordingly, any claims under the Necessary and Proper Clause necessarily must fall with Plaintiffs' Commerce Clause claims. *See generally Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 247 (1960) ("The [Necessary and Proper

basis that "*[e]ven if* the federal government regulated the making of firearm suppressors under its power to regulate interstate commerce, that *would be* unconstitutional as applied to firearm suppressors made . . . for personal use." Compl. ¶ 119 (emphasis added).[17] In other words, Plaintiffs ask the Court to imagine an alternative reality in which the Commerce Clause applies, and then to opine on how their claims would turn out in that hypothetical situation. This the Court cannot do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. 544, 570 (2007); *see also Duggan v. Dep't of the Air Force*, 617 Fed. Appx. 321, 325 (5th Cir. 2015) (explaining that under the *Twombly-Iqbal* framework mere positing of a "hypothetical, counterfactual situation" is "insufficient to satisfy the plausibility requirements at the motion to dismiss stage").

Accordingly, Count II should be dismissed because Plaintiffs have failed to state a claim for which relief can be granted.

## VI.    CONCLUSION

For the foregoing reasons, this case should be dismissed.

---

Clause] is not itself a grant of power, but a *caveat* that Congress possesses all the means necessary to carry out" other applicable "Powers vested by this Constitution."); *NFIB*, 567 U.S. at 560 (explaining that the Necessary and Proper Clause only involves "exercises of authority derivative of, and in service to, a grant of power").

[17] The remainder of Count II consists only of legal argument about the general scope of the Commerce Clause and the Necessary and Proper Clause. Compl. ¶¶ 121-26.

DATED: April 26, 2022                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

                                         LESLEY FARBY
                                         Assistant Branch Director

                                         */s/ Emily B. Nestler*
                                         EMILY B. NESTLER (D.C. Bar # 973886)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         Tel: (202) 616-0167
                                         Email: emily.b.nestler@usdoj.gov

                                         *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

On April 26, 2022, I electronically submitted the foregoing with the clerk of court for the

U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

I hereby certify that I have served all parties electronically or by another manner authorized by

Federal Rule of Civil Procedure 5(b)(2).


*/s/ Emily B. Nestler*

EMILY B. NESTLER