**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KEN PAXTON, in his official capacity as** | § | |
| **Attorney General of Texas,** | § | |
| **DAVID SCHNITZ,** | § | |
| **TRACY MARTIN, and** | § | |
| **FLOICE ALLEN,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | **Civil Action No. 4:22-cv-00143-P** |
| | § | |
| **GARY M. RESTAINO, in his official** | § | |
| **Capacity as Acting Director, Bureau of** | § | |
| **Alcohol, Tobacco, Firearms and Explosives,** | § | |
| *Defendant.* | § | |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

---

# TABLE OF CONTENTS

Procedural History ................................................................................................................ 1

Response ................................................................................................................................ 3

I.   The AIA does not depritee the Court of jurisdiction. ................................................... 3

   A.   The *Enochs* exception to the AIA applies. ............................................................ 4

     1.    Enforcement of the challenged provisions causes irreparable injury ............................ 5

     2.    As currently pled, the Government has no chance of ultmately prevailing. ................... 7

   B.   The AIA does not apply to Count I or Count III. ............................................... 16

II.  Texas has standing, but whether Texas does or does not have standing does not matter
    because the other Plaintiffs have standing. ............................................................... 20

   A.   The other Plaintiffs have standing, do the Court need not determine whether Texas has
     standing. ............................................................................................................... 20

   B.   Texas has standing. ............................................................................................. 20

Conclusion ........................................................................................................................... 22

Certificate of Service ........................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982)......................................................................................... 20

*Bezet v. United States*,
    276 F. Supp.3d 576 (E.D. La. 2017) ..............................................13, 14, 19

*Bob Jones Univ. v. Simon*,
    416 U.S. 725 (1974) ....................................................................................... 11

*CIC Services, LLC v. Internal Revenue Serv.*,
    141 S. Ct.1582 (2021) ............................................................................. *passim*

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) .....................................................................5, 6

*Den Norske Stats Oljeselkap As v. HeerMac Vof*,
    241 F.3d 420 (5th Cir. 2001) ........................................................................3

*District of Colombia v. Heller*,
    554 U.S. 570 (2008) ......................................................................................... 8

*Edenfield v. Fane*,
    507 U.S. 761 (1993) .....................................................................................9, 10

*Enochs v. Williams Packing & Nav. Co.*,
    370 U.S. 1 (1962) ..................................................................................... *passim*

*Ezell v. City of Chi.*,
    651 F.3d 684 (7th Cir. 2011) ....................................................................... 15

*J & B Entm't, Inc. v. City of Jackson, Miss.*,
    152 F.2d 362 (5th Cir. 1998)........................................................................ 9

*Jackson v. City of S.F.*,
    746 F.3d 953 (9th Cir. 2014) ...................................................................... 15

*Kemlon Products & Dev. Co. v. United States*,
    638 F.2d 1315 (5th Cir. 1981) ..................................................................5, 7

*Mance v. Sessions*,
    896 F.3d 699, reh'g en banc denied. 896 F.3d 390 (5th Cir. 2018) ............................................ 8

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923).......................................................................................21

*McAllen Grace Brethren Church v. Salazar*,
    764 F.3d 465 (5th Cir. 2014) ...................................................................... 20

*Mimmeapolis Star & Tribune v. Minnesota Comm'r of Revenue*,
    460 U.S. 575 (1983) .................................................................................8, 15

*Murdock v. Com. of Pennsylvania*,
    319 U.S. 105 (1943) .......................................................................................7

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ....................................................................................... 4

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Exposives*,
    700 F.3d. 185 (5th Cir. 2012) ...............................................................8, 9, 10

*N. Y. State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ................................................................................. 15
*Sonzinsky v. United States*,
    3oo U.S. 506 (1937) ................................................................................. 12, 19
*Thompson/Center Arms Cp. v. Baker*,
    686 F. Supp. 38 (D.N.H. 1988) ..................................................................17, 18, 19

## Statutes

26 U.S.C. § 5845(a)(7) ......................................................................................14
26 U.S.C. § 7421 ..................................................................................... *passim*

## Rules

Tex. R. Fed. P. 25(d) .........................................................................................1

## Other

Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second*
    *Amendnent*, 46 CUMB. L. REV. 35 (2016) ...............................................................14

TO THE HONORABLE MARK T. PITMAN, U.S. DISTRICT JUDGE:

Plaintiffs, Ken Paxton, in his official capacity as Attorney General of Texas, David Schnitz, Tracy Martin, and Floice Allen, file this Brief in Support of their Response to Defendant's Motion to Dismiss, and will respectfully show the Court as follows:

## PROCEDURAL HISTORY

Plaintiffs sue Defendant Restaino,[1] the Acting Director of the Bureau of Alcohol, Tobacco, Firearms, an Explosives ("BATFE") in his official capacity. BATFE is responsible for enforcing those parts of the National Firearms Act of 1934, as amended ("NFA"), that apply to Texans who make firearm suppressors (or silencers) for personal use in Texas, including the requirements that they apply for and receive permission to make a firearm suppressor for personal use in Texas, pay a $200 tax on making firearm suppressors for personal use in Texas, and register and place a serial number on firearm suppressors made in Texas for personal use in Texas. Those requirements violate the Second Amendment. Plaintiffs seek injunctive relief against enforcement of those requirements.

Plaintiffs are not challenging other parts of the NFA or the Gun Control Act of 1968 ("GCA"). For instance, Plaintiffs are not challenging regulations of rifles or handguns not regulated by the NFA, and are not challenging regulation of weapons regulated by the NFA other than suppressors. Plaintiffs are also not challenging commercial regulations, such as regulations of

---

[1] Plaintiffs originally sued Marvin Richardson, who was the Acting Director of BATFE at the time. Gary M. Restaino is now the Acting Director, and Plaintiffs have substituted him as the Defendant in his official capacity under Fed. R. Civ. P. 25(d) in this Response and in Plaintiffs' Amended Petition.

transferring weapons in or manufacturing weapons for interstate commerce, or licensing regulations.

In lieu of an answer, BATFE filed a motion to dismiss under Rule 12(b)(1). Defendant's Motion to Dismiss at 8–9. BATFE argues:

1. The Anti-Injunction Act (26 U.S.C. § 7421) ("AIA") bars Plaintiffs' claims. Defendants' Motion to Dismiss at 9–18.

2. Plaintiff the State of Texas (but not Plaintiffs Schnitz, Martin, and Allen) lacks standing to pursue both Counts. *Id*. at 18–23.

In their original Complaint, Plaintiffs also argued that the challenged laws could not be justified as exercises of power under the Commerce Clause or Necessary and Proper Clause. BATFE also moved to dismiss that claim. After considering BATFE's response, Plaintiffs have dropped that claim in their Amended Complaint (filed contemporaneously with this Response) as it appears not to be at issue in the present dispute between the parties.

Additionally, after considering BATFE's AIA arguments, Plaintiffs have split their NFA claim into three separate counts. In Count I, they challenge the requirement that Texans must apply for and receive permission to make a firearm suppressor for personal use in Texas. In Count II, they challenge the requirement that Texans pay a $200 tax on making firearm suppressors for personal use in Texas. In Count III, they challenge the requirement that Texans register and place a serial number on firearm suppressors made in Texas for personal use in Texas.

Finally, Plaintiffs also amended their lawsuit to add the following new allegation: Shortly after Plaintiffs filed this suit, BATFE denied 850 applications to make firearm suppressors, and demanded additional information not required to be submitted by any statute, rule, or application

form from thousands of persons with applications to make suppressors pending on pain of denial of the applications. This request for additional information arguably requires applicants to incriminate themselves by disclosing the possession of parts intended to be assembled into a firearm suppressor. Under BATFE's interpretation of the NFA, such parts are themselves firearms suppressors for which an individual application and tax would be required.

In the understanding that BATFE may wish to file a new motion to dismiss against Plaintiffs' Amended Complaint, Plaintiffs hereby respond to BATFE's motion to dismiss.

## RESPONSE

The Court should deny BATFE's motion to dismiss because (I)(A) under the current pleadings, the Court has jurisdiction over all three Counts under the *Enochs* exception; (I)(B) BATFE's AIA defense does not apply to Count I or Count III because those counts do not challenge the assessment or collection of taxes; and (II) Texas has standing, but the Court need not decide that issue because the other Plaintiffs have standing.

In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Nevertheless, courts must accept all factual allegations in the plaintiff's complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

## I.   The AIA does not deprive the Court of jurisdiction.

BATFE argues that the Anti-Injunction Act deprives the Court of jurisdiction. The AIA reads, "[With inapplicable exceptions,] no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person

against whom such tax was assessed." 26 U.S.C. § 7421. The AIA "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes. Because of the Anti–Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012).

The Court should not grant BATFE's motion to dismiss for two reasons. First, the challenged provisions cause irreparable harm, and BATFE has not overcome Plaintiffs' allegation that the challenged provisions cannot survive intermediate scrutiny, so the exception to the AIA recognized in *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962), applies. Second, the AIA simply does not apply to Count I or Count III under *CIC Services, LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582 (2021).

**A. The *Enochs* exception to the AIA applies.**

Despite the seemingly clear language of the AIA, courts recognize an exception. "[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the [Anti-Intinction] Act is inapplicable and the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in the guise of a tax." *Enochs*, 370 U.S. at 7 (internal citation and quotation omitted). "*Enochs* establishes two prongs, both of which must be satisfied, before an injunction may issue pursuant to [the AIA]. The first prong is that normal equity jurisdiction must obtain, i. e., irreparable injury and inadequacy of legal remedy. The second independent criterion is that it must be clear that under 'no circumstances' could the government ultimately prevail. Only if the government does not have 'a chance of ultimately prevailing' and only if under the 'most liberal view of the law and the facts' the United States

cannot win, may a district court issue an injunction." *Kemlon Products & Dev. Co. v. United States*, 638 F.2d 1315, 1321 (5th Cir. 1981), modified, 646 F.2d 223 (5th Cir. 1981).

The regulatory scheme established by the challenged provisions satisfies both prongs.

**1. Enforcement of the challenged provisions causes irreparable injury.**

For most taxes, the taxpayer pays a tax when the taxpayer performs a taxable activity, such as purchasing a product subject to an excise tax, or when taxes are due, such as when the taxpayer pays the income tax on April 15 and submits paperwork showing the amount due. In these cases, if the tax was illegally or even unconstitutionally collected, the taxpayer is not irreparably harmed because the taxpayer can sue for a refund and get his or her money back, with interest. That makes the taxpayer whole under the law of irreparable injury, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981), so the taxpayer has an adequate remedy at law for illegal or unconstitutional tax collection, and accordingly is not entitled to prepayment injunctive relief under the AIA.

This case is very different. For applicants who receive BATFE's approval to make a firearm suppressor, they have lost their Second Amendment rights during the time it takes BATFE to approve. That time is lost forever. Plaintiffs allege that BATFE currently takes two to four weeks to decide whether to approve an application to make a firearm suppressor. Plaintiffs further allege that BATFE is currently intentionally delaying evaluations for thousands of applicants on the grounds that it needs more information that it has not statutory authority to request. Plaintiffs' Amended Complaint at ¶¶ 68–73. Moreover, BATFE is requesting information that would require applicants to disclosed possession of parts intended to be assembled into a firearm suppressor, thus arguably incriminating themselves in the process. BATFE does not challenge those allegations,

and the Court must accept those allegations as true for the purpose of deciding Defendant's Motion to Dismiss.

Thus, even if BATFE eventually approves a Texan's application, the Texan has suffered irreparable harm in the form of time lost that cannot be repaired by paying the $200 back with interest. In the First Amendment context, requiring a would-be speaker to submit $200 along with an application for permission to speak, and waiting two to four weeks for permission, or longer if the evaluating agency demands more information than it is allowed to demand, cannot be repaired by giving the $200 back with interest because the applicant was not allowed to speak for two to four weeks—or for however long the agency keeps demanding additional information before deciding. That is a harm that cannot be repaired with money. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Deerfield Med. Ctr.*, 661 F.2d at 338. So too for delays in exercising Second Amendment rights.

Additionally, approved applicants must place a serial number on their firearm suppressor and register it with BATFE. Those harms also cannot be repaired by returning the $200 with interest.

Disapproved applicants even more obviously suffer an irreparable injury. They are not allowed to make a firearm suppressor, and get their $200 back and never pay any tax. There is no way to repair their injury by giving their money back (they already have that) or with any other amount of money.

BATFE incorrectly characterizes the first prong of the *Enochs* test as whether Plaintiffs have no alternative means of litigating their claim, and notes that they can "file a claim for refund *after* submitting an application and paying the applicable tax within the applicable limitation period, and thereafter challenge the result in District Court, if necessary." Defendant's Motion to Dismiss at

14. But the actual first prong of *Enochs* is whether "equity jurisdiction otherwise exists." *Enochs* 370 U.S. at 7. As elaborated by the Fifth Circuit, "The first prong is that normal equity jurisdiction must obtain, i. e., irreparable injury and inadequacy of legal remedy." *Kemlon Products & Dev. Co. v. United States*, 638 F.2d at 1321. The question is not whether an alternative means to litigate claims exists. Even if it was, the refund procedure is not available to unsuccessful applicants or to applicants in eternal limbo while BATFE demands more information. And even for successful applicants, the refund procedure is not available to return lost time or to undo serial number and registration requirements.

Thus, the challenged provisions cause irreparable injury.

**2. As currently pled, the Government has no chance of ultimately prevailing.**

The second *Enochs* prong is satisfied because the challenged provisions violate the Second Amendment. For Counts I and III, BATFE has not met its burden to justify the statute under either intermediate scrutiny or strict scrutiny at this early phase of the litigation.

For Count II, the same is true, and in addition it is a *per se* violation to tax the exercise of a constitutional right. *Murdock v. Com. of Pennsylvania*, 319 U.S. 105, 113 (1943). As the Supreme Court said in the First Amendment context:

> A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency. When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general applicability are weakened, and the threat of burdensome taxes becomes acute. That threat can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government.

7

*Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585 (1983) (citation

omitted). The NFA singles out Texans who exercise their Second Amendment rights. It is not a

general tax that happens to also apply to the exercise of Second Amendment rights:

> A tax that burdens rights protected by the First Amendment cannot stand unless the burden
> is necessary to achieve an overriding governmental interest. Any tax that the press must
> pay, of course, imposes some "burden." But, as we have observed, this Court has long
> upheld economic regulation of the press. The cases approving such economic regulation,
> however, emphasized the general applicability of the challenged regulation to all
> businesses, [and] suggest[ed] that a regulation that singled out the press might place a
> heavier burden of justification on the State, and we now conclude that the special problems
> created by differential treatment do indeed impose such a burden.

*Minneapolis Star & Tribune Co.*, 460 U.S. at 582–83.

Even if the $200 tax is not *per se* prohibited, the tax and the other challenged provisions do not

survive *District of Colombia v. Heller*, 554 U.S. 570 (2008) when applied to Texans making firearm

suppressors for personal use in Texas. "[T]he enshrinement of constitutional rights necessarily

takes certain policy choices off the table." *Heller*, 554 U.S. at 636. Post-*Heller*, the Fifth Circuit

applies either intermediate scrutiny or strict scrutiny to regulations that implicate the Second

Amendment:

> A regulation that threatens a right at the core of the Second Amendment—for example, the
> right of a law-abiding, responsible adult to possess and use a handgun to defend his or her
> home and family—triggers strict scrutiny. A less severe regulation—a regulation that does
> not encroach on the core of the Second Amendment—requires a less demanding means-
> ends showing. This more lenient level of scrutiny could be called "intermediate" scrutiny,
> but regardless of the label, this level requires the government to demonstrate a "reasonable
> fit" between the challenged regulation and an "important" government objective.

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 195

(5th Cir. 2012) ("*NRA v. BATFE*") (citations omitted); reaffirmed in *Mance v. Sessions*, 896 F.3d

699, 704 (5th Cir. 2018) ("We will also assume, without deciding, that the strict, rather than

intermediate, standard of scrutiny is applicable [to a regulation implicating the Second

Amendment].”), reh’g en banc denied, 896 F.3d 390 (5th Cir. 2018). Post-*Heller*, courts may not review firearms regulations under a rational-basis standard of review. *NRA v. BATFE*, 700 F.3d at 195-96.

It is not necessary at this early stage to decide whether the tax and other impositions on Texans who make firearm suppressors for personal use in Texas should be reviewed under strict scrutiny or intermediate scrutiny. In its motion to dismiss, BATFE does not attempt to overcome its burden to show that the challenge provisions survive the easier intermediate-scrutiny standard, so it loses either way. It argues as if it is unaware of *Heller*, the case where the Supreme Court determined that the right to keep and bear arms is a fundamental, individual right. *Heller* is not cited in its motion. It also seems unaware that, post-*Heller*, courts have reviewed regulations which implicate the Second Amendment under intermediate scrutiny or strict scrutiny. Neither type of scrutiny is mentioned in its motion.

Under an intermediate scrutiny standard of review, the government bears the burden of justifying (i.e., both the burden of production and persuasion) the challenged statute. *J & B Entm’t, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 370 (5th Cir. 1998). Courts ask whether the State’s interests in proscribing a regulation are substantial, whether the challenged regulation advances these interests in a direct and material way, and whether the extent of the restriction on the exercise of a constitutional right is in reasonable proportion to the interests served. *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). In undertaking the first inquiry under intermediate scrutiny, courts must identify with care the interests the State itself asserts. Unlike rational-basis review, the intermediate-scrutiny standard does not permit courts to supplant the precise interests put forward

by the State with other suppositions. And courts must judge whether the stated interests are the actual interests served by the restriction. *Edenfield*, 507 U.S. at 768.

BATFE does not assert *any* interests that are supposedly furthered by the challenged tax or other impositions, let alone demonstrate that any such interests are *substantial*. BATFE has not even invoked "public safety" to justify the challenged provisions. Even if it did, Plaintiffs deny that there is any public-safety justification to tax and regulate firearm suppressors, and submitted evidence of the lack of public-safety rationale in the form of the opinion of the second in command of BATFE in the Obama Administration. Plaintiffs' Amended Complaint at ¶¶ 4, 29, Exhibit 2. The Court must accept as true Plaintiff's allegation that there is no public-safety justification for the taxation and regulation of suppressors unless and until BATFE demonstrates otherwise. Under *NRA v. BATFE*, BATFE must overcome Plaintiff's allegations in order to save the tax and the other statutory impositions, but has not (yet) tried to do so.

Nor does BATFE assert that the tax and other impositions advance whatever interests they supposedly advance in a direct and material way, or that the extent of the restrictions on the exercise of a constitutional right is in reasonable proportion to the supposed interests served. Therefore, BATFE has not met its burden under the intermediate-scrutiny test (let alone the strict scrutiny test) to show that the challenged provisions are constitutional. It may attempt to do so later, after discovery and full briefing (and perhaps at trial), but it has not done so at this time. For now, BATFE has not met its burden to show that there are circumstances under which it might ultimately prevail.

That means that Plaintiffs prevail on the second prong of the *Enochs* test at this motion to dismiss stage. BATFE has not (yet) shown that there are circumstances under which it might

10

ultimately prevail. "[T]he question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit. Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained. Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed." *Encohs*, 370 U.S. at 7. A court may issue an injunction against collection of a tax despite the Anti-Injunction Act if "it be established that the [Government's] action is plainly without a legal basis.*" Bob Jones Univ. v. Simon*, 416 U.S. 725, 745 (1974).

BATFE asserts that "there is no basis to conclude that the United States would be unable, under any circumstances, to ultimately prevail in this suit." Defendant's Motion to Dismiss at 14. But (at least) intermediate scrutiny applies to the challenged provisions, and Plaintiffs allege that the challenged provisions do not survive intermediate scrutiny and that they advance no public-safety or other interests. BATFE therefore ultimately has the burden to show that the challenged provisions survive intermediate scrutiny. BATFE may attempt to do so later (although Plaintiffs contend that BATFE will not be able to), but it has not done so now. In fact, BATFE urges the Court not to "delve deeply into the merits of Plaintiffs' claims, because this case is jurisdictionally barred," and asserts that "were this case to proceed to the merits," BATFE would likely prevail. Defendant's Motion to Dismiss at 15 n.9. But BATFE ultimately has the burden to prove that the challenged provisions survive intermediate scrutiny (at least). It has not done so. For now, the second *Enochs* prong is satisfied, and the AIA does not apply.

Rather than address post-*Heller* standards for reviewing regulations which impinge Second Amendment rights, BATFE makes other arguments instead. None are availing.

First, BATFE claims, "[T]his case falls squarely within the AIA's jurisdictional bar. It is well settled that the AIA bars judicial interference with the NFA's tax, *see Sonzinsky v. United States*, 300 U.S. 506, 511–13 (1937), including as to any activities aimed at collection and enforcement of the tax." Defendant's Motion to Dismiss at 1. This is wrong for four reasons:

1. The issue in *Sonzinsky* was whether the NFA's $200 annual license tax on dealers in firearms was a constitutional exercise of the legislative power of Congress. *Sonzinsky* at 511. It was not about the tax on making a firearm suppressor for personal use in Texas, which was not taxed in 1937 and was not taxed until 1968.[2]

2. The case had nothing to do with the AIA. It was a prosecution for failure to pay the tax. *Id.*

3. As a pre-*Heller* opinion, *Sonzinsky* did not consider whether the tax might violate the Second Amendment, does not even mention that amendment or the right to keep and bear arms, and does not review the tax under intermediate or strict scrutiny.

4. The AIA no longer applies to "activities aimed at collection and enforcement of the tax." See Part I.B. *Sonzinsky* is inapposite.

Second, BATFE notes that the AIA applies even to constitutional challenges. Defendant's motion to dismiss at 9-10. But Plaintiffs are not arguing that the AIA does not apply to

---

[2] A copy of the original version of the National Firearms Act (48 Stat. 1236 (1934)) is in the Appendix. It contains no prohibition on making firearms governed by the NFA (including firearm suppressors). The tax on making firearms (including firearm suppressors) was added in 1968 as Title II to Public Law 90-618 (82 Stat. 1213 (1968)), a copy of which is also in the Appendix. The making tax (26 U.S.C. §§ 5821–22) is on page 1228–29. Title I of Public Law 90-618 was the Gun Control Act of 1968, 18 U.S.C. §§ 921–28. Title II was 1968 amendments to the NFA.

constitutional challenges. Plaintiffs make the much narrower argument that the *Enochs* exception to the AIA's jurisdictional bar applies.

Third, BATFE argues that a district court has already ruled that the challenged provisions are constitutional, citing *Bezet v. United States*, 276 F. Supp.3d 576 (E.D. La. 2017). In that case, "Plaintiff, proceeding pro se, contends that he wants to perform a series of modifications to a semiautomatic pistol he lawfully possesses in order to convert the weapon into a fully automatic, silenced rifle [i.e. a machinegun]. However, Plaintiff avers that he is prevented from doing so by certain provisions of [the NFA].... With regard to the NFA, Plaintiff contends the following provisions are also unconstitutional: (1) [transfer of weapons regulated by the NFA, which is not at issue in this case]; (2) 26 U.S.C. § 5821, which taxes the making of such weapons; and (3) 26 U.S.C. § 5812, which establishes the registration and application requirements for transfers of such weapons." *Bezet*, 276 F. Supp.3d at 579.

*Bezet* does not apply to the present case. In *Bezet*, the district court applied Fifth Circuit precedent that the machine gun the plaintiff wanted to make was a "dangerous and unusual" firearm and not "in common use," and so possession of machineguns did not receive Second Amendment protection, at step one of its framework. *Bezet*, 276 F. Supp.3d at 602. The *Bezet* court did not consider firearms suppressors, which the Fifth Circuit have never been found to be "dangerous and unusual" or not "in common use," and are in fact not dangerous at all and are in fact in common use. Indeed, Plaintiffs have alleged in their Amended Complaint that suppressors are legal in 42 states, in common use by law enforcement, the military, and civilians, and actually make firearms safer, not more dangerous. Plaintiff's Amended Complaint at ¶¶ 29–31. As for taxing and regulating machineguns under the NFA, the *Bezet* court applied intermediate scrutiny

at step-two. *Bezet* at 610–11. Citing Congressional findings from 1934, it then found a "reasonable fit" between the regulations and an "important" government objective—namely, the effort to "control the violence wrought by 'gangsters, racketeers, and professional criminals,'" "organized crime," and "the roaming groups of predatory criminals." *Bezet* at 611. "Based on the foregoing, the Court finds that important government objectives support Congress's decision to impose taxation and registration requirements on the making of a firearm pursuant to 26 U.S.C. § 5821 and § 5822." *Id.*

The *Bezet* court's approach is incorrect. Congressional findings from 1934 do not control this case. Instead, the challenged provisions must survive intermediate scrutiny. And the intermediate scrutiny analysis is very different in this case (firearm suppressors—which are not dangerous, are in common, lawful use, and are very rarely used in crimes—than it is for "dangerous and unusual" machineguns which are not "in common use," which were at issue in *Bezet*.

In short, *Bezet* does not support BATFE's claim that the second prong of *Enochs* does not apply to the challenged provisions.

Fourth, BATFE notes that some courts have found that firearm suppressors are not 'bearable arms." Defendant's Motion to Dismiss at 15. Yet the NFA *defines* firearm suppressors as "firearms." 26 U.S.C. § 5845(a)(7). Of course, that definition is "only for regulatory purposes. In ordinary language, a noise suppressor is not a firearm. Although silencers are defined as 'firearms,' they are not actual weapons. They cannot be fired or discharge projectiles." Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendme*nt, 46 CUMB. L. REV. 35, 36 (2016) (cleaned up).

But whether a firearm suppressor is itself a "firearm," or whether it is statutorily defined as a "firearm," is not the real issue. The real issue is that regulating firearm suppressors is regulating the right to keep and bear arms. When one keeps or bears arms with a firearm suppressor, one is exercising Second Amendment rights. Similarly, when one keeps or bears arms with a trigger, or a detachable magazine, or a scope, one is exercising Second Amendment rights. When one goes to a firing range, they are exercising Second Amendment rights, *see Ezell v. City of Chi.*, 651 F.3d 684, 704 (7th Cir. 2011), even though a firing range is not an arm. Thus, regulation of firearm suppressors (that are used while keeping and bearing arms) impinges on Second Amendment rights, just like regulation of triggers, or detachable magazines, or scopes (that are used while keeping and bearing arms) does. Similarly, neither paper nor ink are themselves "speech," but newspapers who use paper and ink to exercise their rights of freedom of speech and freedom of press cannot constitutionally be taxed on its purchases of paper and ink. except as part of a general sales tax on all goods purchased. *Minneapolis Star & Tribune Co.*, 460 U.S. at 591.

Moreover, the Supreme Court has not limited the Second Amendment to offensive weapons. Instead, the Court has noted historic definitions of "arms" to include other items such as "armour of defence." *Heller*, 554 U.S. 581. Other courts have applied *Heller's* protections to ammunition and firearms accessories, such as large-capacity magazines. *See*, *e.g.*, *Jackson v. City & Cty. of S.F.*, 746 F.3d 953, 967-68 (9th Cir. 2014); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015).

* * *

Both prongs of the *Enochs* exception apply. The AIA does not bar the Court from exercising jurisdiction over Plaintiffs' claims.

## B.  The AIA does not apply to Count I or Count III.

As detailed in Plaintiffs' Complaint, a Texan who wants to make a firearm suppressor for personal use does not simply pay a tax on that activity. Instead, the Texan must send BATFE $200 and apply for permission to make the firearm suppressor. If BATFE grants permission, it keeps the $200, registers the suppressor, and sends the Texan a tax stamp, who can then make the suppressor, so long as he or she puts a serial number on it. Plaintiffs' Amended Complaint at ¶¶ 49–73. Permission has typically been granted, or not, in two to four weeks. *Id*. at ¶ 67.

But BATFE may also (rightly or wrongly) *disapprove* the application and return the $200. This demonstrates that the AIA does not apply to the application process. The AIA only bars injunctions against the "assessment or collection" of taxes. The approval process is neither. BATFE neither assesses an amount due nor collects taxes when it approves or disapproves an application to make a firearm suppressor. The collection happens (or not) *after* BATFE evaluates the application, but the evaluation is neither tax assessment nor tax collection.

The application process is a reporting requirement, and challenging reporting requirements is not barred by the AIA. "[I]t [does] not matter that the reporting requirements would facilitate collection of taxes." *CIC Services, LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1589 (2021) (internal quotations omitted). "The [AIA's] limit on injunctions is not keyed to all activities that may improve a State's ability to assess and collect taxes. It is instead keyed to the acts of assessment and collection themselves. That means a suit directed at ordinary reporting duties can go forward, unimpeded by the Anti-Injunction Act." *Id*. (cleaned up, internal citations and quotations omitted).

Moreover, BATFE can withhold or delay permission even to applicants for whom there is no reason to withhold permission. In fact, four days after Plaintiffs filed their Original Complaint,

16

BATFE denied permission to 850 applicants. Three days later, on March 3, it sent 3,000 pending applicants a notice that unless they sent in pictures and descriptions of all parts and components that will be used to make the suppressor, their applications will not be approved. Plaintiffs' Amended Complaint at ¶¶ 68–73. No statute, rule, or application form requires the submission of pictures or descriptions of parts. And because parts of a suppressor constitute a "suppressor" under federal law, CITE, this appears to be a trap. If a person submits pictures of the parts that he intends to use in order to build a suppressor, BATFE may take the position that the person has provided photographic proof that he or she is illegally in possession of a suppressor. Denying an application and demanding more information without statutory authority (and information that is arguably self-incriminating) is not assessing or collecting taxes. It is in fact an effort to deny applications and *not* collect taxes.

The AIA might apply if the law simply required citizens to pay a tax whenever they make a suppressor and to submit relevant information on a tax return, and imposed criminal penalties for non-payment. But the challenged provisions are very different. Deciding whether a citizen can make a firearm suppressor is not assessing or collecting taxes. And BATFE demonstrates that it is not merely assessing or collecting taxes when it denies applications unless the applicant provides information not required by any authority whatsoever. The AIA does not bar injunctive relief against such decisions.

BATFE cites *Thompson/Center Arms Cp. v. Baker*, 686 F. Supp. 38 (D.N.H. 1988) for the proposition that a challenge to the NFA's taxing provisions must be dismissed under the AIA. Defendant's Motion to Dismiss at 14. In that case, the taxpayer manufactured a one-shot pistol called a "Contender" (not regulated by the NFA) and a device called a "Contender Carbine Kit,"

which could be combined with the Contender to make a rifle (not regulated by the NFA), or

partially combined with the Contender to make a short-barrel pistol (regulated by the NFA). The

taxpayer attempted to challenge a letter ruling from ATF that the Contender Carbine Kit itself was

a firearm regulated by the NFA. If it was, then the taxpayer had to pay the $200 making tax (26

U.S.C. § 5821) every time it made a Contender Carbine Kit, and the $200 transfer tax (26 U.S.C.

§ 5811) every time it sold a Contender Carbine Kit. *Id.* at 39. The court held that the taxpayer's

lawsuit was barred by the AIA because:

> Plaintiff's own pleadings reveal that this action is essentially a tax matter. The legal
> interpretations TCA obtained from ATF only addressed the definition of a firearm under
> the NFA. Additionally, plaintiff acknowledges that ATF's legal interpretation makes it
> "commercially impossible for TCA to manufacture and market, and for consumers to
> purchase on an economically feasible basis and without undue red tape ... the Contender
> Carbine Kit." Considering that the retail price of plaintiff's Carbine Conversion Kit was
> $240 when it was marketed in 1985, it is obvious that the greatest hindrance to economic
> feasibility would be the imposition of $400 in making and transfer taxes on the sale of the
> kit. The fact that plaintiff and its customers would also be subject to registration
> requirements does not alter the essential nature of this action as an action to restrain tax
> collection…. **[J]udicial interference is applicable not only to assessment or collection,**
> **but also to activities which are intended to or may culminate in the assessment or**
> **collection of taxes.**

*Thompson/Ctr. Arms Co.*, 686 F. Supp. at 42, 43 (citations omitted, emphasis added). The Court's

analysis is obsolete and does not apply to this case for two reasons.

First, as noted, injunctions against "activities which are intended to or may culminate in the

assessment or collection of taxes" are not barred by the AIA. "[I]t [does] not matter that the

reporting requirements would facilitate collection of taxes." *CIC Services*, 141 S. Ct. at 1589

(internal quotations omitted). "The [AIA's] limit on injunctions is not keyed to all activities that

may improve a State's ability to assess and collect taxes. It is instead keyed to the acts of assessment

and collection themselves. That means a suit directed at ordinary reporting duties can go forward,

unimpeded by the Anti-Injunction Act." *Id.* (cleaned up, internal citations and quotations omitted).

Second, the *CIC Services* court also held:

In considering a suit['s] purpose, we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests.… The purpose of a measure is "the end or aim to which [it] is directed." N. Webster, An American Dictionary of the English Language (rev. ed. 1844); see Webster's Third New International Dictionary 1847 (1976). And in this context, that aim is not best assessed by probing an individual taxpayer's innermost reasons for suing. Down that path lies too much potential for circumventing the Act. Instead, this Court has looked to the face of the taxpayer's complaint. We have asked about what the Government here calls "the substance of the suit"—the claims brought and injuries alleged—to determine the suit's object. And most especially, we have looked to the "relief requested"—the thing sought to be enjoined. The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the "collection or assessment of [a] tax."

*CIC Services*, 141 S. Ct. at 1589–90. But the district court in *Thompson/Ctr. Arms Co.* attempted to figure out the taxpayer's "subjective motive" or "innermost feelings" in bringing the suit. It should have instead looked to the remedies sought, and should have determined that many of those remedies sought injunctions against things other than the collection of the tax which were not barred by the AIA. The district court's approach in *Thompson/Ctr. Arms Co.* has been subsequently corrected by the Supreme Court in *CIC Services*.

BATFE also cites the district court's opinion in *Bezet*, *supra*, and the Supreme Court's opinion in *Sonzinsky*, *supra*, for the propositions that the application process (challenged in Count I) aids in the assessment, collection, or enforcement of the $200 tax. Defendants Motion to Dismiss at 12–13. But under *CIC Services*, that does not matter. The AIA only applies to the collection of the tax, not to activities which might "improve a State's ability to assess and collect taxes." Similarly, Defendants cite pre-*CIC Services* (and pre-*Heller*) cases for the proposition that "the Fifth Circuit has repeatedly upheld Congress's ability to enforce a tax through promulgation

19

of firearm registration requirements." Defendant's Motion to Dismiss at 13. After *CIC Services*, the AIA does not bar injunctions against firearm suppressor registration requirements because they are not "tax obligations" or "the collection or assessment of [a] tax." *CIC Services*, 141 S. Ct. at 1590. For the same reason, the AIA does not bar injunctions against firearm suppressor serial number requirements.

* * *

Under *CIC Services*, The AIA does not apply to Count I (the requirement that Texans apply for and receive permission to make a firearm suppressor for personal use in Texas) or Count III (the requirements that Texans register and place serial numbers on firearm suppressors made in Texas for personal use in Texas.)

## II. Texas has standing, but whether Texas does or does not have standing does not matter because the other Plaintiffs have standing.

### 1. The other Plaintiffs have standing, so the Court need not determine whether Texas has standing.

BATFE does not challenge the standing of Plaintiffs Schnitz, Martin, and Allen. That means that the Court does not need to consider whether Texas also has standing. "It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).

### 2. Texas has standing.

"[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

The unconstitutional regulation of firearm suppressors adversely affects Texans' safety by delaying or prohibiting Texans' ability to use firearms for the purpose of home defense. Plaintiffs' Amended Complaint, Exhibit 1. It also adversely affects Texans' health by delaying or prohibiting their use of firearm suppressors to protect their hearing while exercising their right to hunt and to practice shooting. Plaintiffs' Amended Complaint at ¶ 30. Therefore, Texas has standing to vindicate these quasi-sovereign interests.

BATFE argues that Texas does not have standing because Texas alleges no cognizable injury. Defendant's Motion to Dismiss at 18–19. But that only applies to standing to vindicate the State's own proprietary interests. There is no authority for the proposition that Texas must establish an injury to vindicate its quasi-sovereign interests in the health and well-being of its citizens. That is also why Texas does not have to show injury before it vindicates those interests by prosecuting crime.

BATFE also notes that Texas may not simply sue the federal government on behalf of its citizens, citing *Massachusetts v. Mellon*, 262 U.S. 447 (1923). Defendant's Motion to Dismiss at 18–19. But Texas does not assert such standing. Texas is not trying to protect its citizens from the operation of federal law or the Constitution. "[T]here is a critical difference between allowing a State to protect her citizens from the operation of federal statutes (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." Massachusetts v. E.P.A., 549 U.S. 497, 520 n.17 (2007) (internal quotation marks omitted).

BATFE further argues that "Texas cannot manufacture its own standing to challenge a federal law by simply passing a statute purporting to nullify it." *Id.* at 20. But the Texas's quasi-sovereign interests in the health and safety of its citizens exist independently of the statute

21

directing the Attorney General to file this lawsuit. The statute does not manufacture a lawsuit. Instead, it sets out the State's policy in favor of the use of firearms suppressors and directs the Attorney General to vindicate Texas's independently existing quasi-sovereign interests in promoting that policy in federal court.

## CONCLUSION

Defendant requests that the Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Special Counsel to the First Assistant
Texas Bar No. 24116780

 */s/ Charles K. Eldred*
CHARLES K. ELDRED
Special Litigation Counsel
Texas Bar No. 00793681

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P. O. Box 12548
Austin, Texas 78711-2548
(512) 936-1706 • fax (512) 320-0167
charles.eldred@oag.texas.gov

**Attorneys for Ken Paxton,**
**Attorney General of Texas**

 */s/ Tony K. McDonald*
TONY K. MCDONALD
State Bar No. 24083477

GARRETT MCMILLAN
State Bar No. 24116747

THE LAW OFFICES OF TONY MCDONALD
1501 Leander Dr., Suite B2
Leander, Texas 78641
(512) 200-3608 • fax (815) 550-1292
tony@tonymcdonald.com


WARREN V. NORRED
State Bar No. 24045094

NORRED LAW, PLLC
515 E. Border Street
Arlington, Texas 76010
(817) 704-3984 • fax (817) 524-6686
warren@norredlaw.com

**Attorneys for David Schnitz,**
**Tracy Martin, and Floice Allen**

23

## CERTIFICATE OF SERVICE

We certify that a true and accurate copy of the foregoing document was filed electronically

(via CM/ECF) on May 17, 2022.

Emily B. Nestler
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
emily.b.nestler@usdoj.gov

Attorney for Defendants

*/s/ Charles K. Eldred*    */s/ Tony K. McDonald*
Charles K. Eldred      Tony K. McDonald

24