**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KEN PAXTON, in his official capacity as** | ) | |
| **Attorney General of Texas,** | ) | |
| **DAVID SCHNITZ,** | ) | |
| **TRACY MARTIN, and** | ) | |
| **FLOICE ALLEN,** | ) | |
| *Plaintiffs,* | ) | Civil Action No. 4:22-cv-00143-P |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **GARY M. RESTAINO,[1] in his official** | ) | |
| **Capacity as Acting Director, Bureau of** | ) | |
| **Alcohol, Tobacco, Firearms and Explosives,** | ) | |
| *Defendant.* | ) | |

## DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

EMILY B. NESTLER (D.C. Bar # 973886)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 616-0167
Email: emily.b.nestler@usdoj.gov

*Counsel for Defendant*

---

[1] Gary M. Restaino has been substituted for Marvin Richardson as Defendant in his official capacity pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 4

     A.    National Firearms Act .............................................................................. 4

     B.    Texas House Bill 957 .............................................................................. 6

     C.    Individual Plaintiffs' Stated Intention to Make Suppressors for Personal Use ............................................................................................................. 7

     D.    Plaintiffs' Amended Complaint ............................................................... 7

III.  LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ....................................................................................................... 8

     A.    This Court Lacks Jurisdiction Because the Anti-Injunction Act Bars Plaintiffs' Claims. ................................................................................... 8

          1.    This Case Should be Dismissed in its Entirety Because Its Object is to Enjoin the Collection or Assessment of a Tax. ................................ 10

          2.    The *Enochs* Exception to the AIA is Narrow and Does Not Apply ........ 13

              a)    There is No Basis to Conclude that the Government is Unable to Prevail Under Any Circumstances ............................... 14

              b)    Equity Jurisdiction is Not Implicated ........................................ 16

          3.    The AIA's Jurisdictional Bar Applies to the State .................................... 18

     B.    Texas Lacks Standing Because It Has Alleged No Cognizable Injury ................ 21

     C.    This Case Should Be Dismissed Because Plaintiffs Have Failed to State a Claim Under the Second Amendment .................................................. 25

V.   CONCLUSION .................................................................................................. 25

# **TABLE OF AUTHORITIES**

## <u>Cases</u>

*Alexander v. "Am.United" Inc.,*
  416 U.S. 752 (1974)......................................................................................*passim*

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
  458 U.S. 592 (1982)............................................................................................ 22, 25

*Am. Bicycle, Ass'n v. United States (In re Am., Bicycle Assoc.),*
  895 F.2d 1277 (9th Cir. 1990) ................................................................................ 21

*Arizona v. Biden,*
  31 F.4th 469 (6th Cir. 2022) ................................................................................... 24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................. 8

*Bauer v. Becerra,*
  858 F.3d 1216 (9th Cir. 2017) ................................................................................ 16

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................. 8

*Bennett v. Spear,*
  520 U.S. 154 (1997).................................................................................................. 7

*Benton v. United States,*
  960 F.2d 19 (5th Cir. 1998) ...................................................................................... 8

*Bezet v. United States,*
  276 F. Supp. 3d 576 (E.D. La. 2017)........................................................... 11, 12, 15

*Bezet v. United States,*
  714 Fed. Appx. 336 (5th Cir. 2017).................................................................. 14, 15

*Bob Jones Univ.,*
  416 U.S. 735 (1974)...................................................................................... *passim*

*CIC Servs., LLC v. IRS,*
  141 S. Ct. 1582 (2021).................................................................................. *passim*

*Confederated Tribes and Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau,*
  843 F.3d 810 (9th Cir. 2016) ............................................................................ 19, 20

*District of Columbia v. Heller,*
   554 U.S. 570, 582 (2008) .......................................................................................... 14

*Enochs v. Williams Packing & Navigation Co.*
   370 U.S. 1 (1962) ............................................................................................... *passim*

*Flast v. Cohen,*
   392 U.S. 83 (1968) .................................................................................................... 24

*Florida v. Mellon,*
   273 U.S. 12 (1927) .................................................................................................... 23

*Helvering v. Davis,*
   301 U.S. 619 (1937) .................................................................................................. 23

*Hollis v. Lynch,*
   827 F.3d 436 (5th Cir. 2016) .................................................................................... 14

*Kemlon Prod. & Dev. Co. v. United States,*
   638 F.2d 1315 (5th Cir. 1981) ......................................................................... 9, 14, 16

*Kwong v. Bloomberg,*
   723 F.3d 160 (2d Cir. 2013) ..................................................................................... 16

*Linn v. Chivatero,*
   714 F.2d 1278 (5th Cir. 1983) ........................................................................... 8, 9, 10

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................ 17, 21

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) .............................................................................................. 3, 25

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923) ........................................................................................ 3, 22, 25

*Matter of LaSalle Rolling Mills, Inc.,*
   832 F.2d 390 (7th Cir. 1987) .................................................................................... 21

*Murdock v. Commonwealth of Pennsylvania,*
   319 U.S. 105 (1943) .............................................................................................. 15, 16

*Nat'l Rifle Ass'n of Am, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
   700 F.3d 185 (5th Cir. 2012) .................................................................................... 14

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) .................................................................................................. 18

*New Jersey v. Sargent*,
  269 U.S. 328 (1926) ................................................................................................ 21, 24

*New York v. Mnuchin*,
  408 F. Supp. 3d 399 (S.D.N.Y. 2019), *aff'd* 15 F.4th 569, 579 (2d Cir. 2021) ...................... 20

*Ohio v. Helvering*,
  292 U.S. 360 (1934), *overruled on other grounds by Garcia v. San Antonio*
  *Metro. Transit Auth.*, 469 U.S. 528 (1985) .............................................................. 18

*Sims v. United States*,
  359 U.S. 108 (1959) ................................................................................................ 18, 19

*Sonzinsky v. United States*,
  300 U.S. 506 (1937) ........................................................................................ 1, 11, 12, 13

*South Carolina v. Regan*,
  465 U.S. 367 (1984) ................................................................................................ 19, 20

*Spokeo, Inc. v. Robins*,
  578 U.S. 330, 338 (2016) ...................................................................................... 21

*Texas v. Becerra*,
  No. 5:21-cv-300-H, 2021 WL 6198109 (N.D. Tex. Dec. 31, 2021) ......................................... 23

*Texas v. ICC*,
  258 U.S. 158 (1922) ................................................................................................ 22

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) .................................................................................. 23

*Thompson/Center Arms Co. v. Baker*,
  686 F. Supp. 38 (D.N.H. 1988) ............................................................................... 18

*United States v. Al-Azhari*,
  No. 8:20-cr-206-T-60AEP, 2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ............................ 15

*United States v. Am. Friends Serv. Comm.*,
  419 U.S. 7 (1974) ........................................................................................ 9, 13, 14, 17

*United States v. Ardoin*,
  19 F.3d 177 (5th Cir. 1994) .................................................................................. 13

*United States v. Bolatete*,
  977 F.3d 1022 (11th Cir. 2020) ............................................................................... 16

*United States v. Clintwood Elkhorn Mining Co.*,
  553 U.S. 1 (2008) ................................................................................................ 9

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ............................................................. 11, 15

*United States v. Gresham*,
    118 F.3d 258 (5th Cir. 1997) ......................................................................... 13

*United States v. Hasson*,
    No. GJH-19-96, 2019 WL 4573424 (D. Md. Sept. 20, 2019),
    *aff'd* 26 F.4th 610 (4th Cir. 2022) .............................................................. 15

*United States v. Ross*,
    458 F.2d 1144 (5th Cir. 1972) ....................................................................... 13

*United States v. West Virginia*,
    295 U.S. 463 (1935) ....................................................................................... 24

*Virginia ex rel. Cuccinelli v. Sebelius*,
    656 F.3d 253 (2011) ................................................................................ 23, 24

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................... 21

*Wyoming ex rel. Crank v. United States*,
    539 F.3d 1236 (10th Cir. 2008) ..................................................................... 23

## **Statutes**

18 U.S.C. § 921(a)(24) ........................................................................................... 5

26 U.S.C. § 5801 ..................................................................................................... 1

26 U.S.C. § 5821 ............................................................................................. 11, 12

26 U.S.C. § 5822 ....................................................................................... 4, 12, 18

26 U.S.C. § 5841 ................................................................................................. 4, 5

26 U.S.C. § 5842(a) ................................................................................................ 5

26 U.S.C. § 5845 ..................................................................................................... 5

26 U.S.C. § 5861(d) ............................................................................................ 5, 6

26 U.S.C. § 7421 ....................................................................................... 1, 8, 18

26 U.S.C. § 7422 ............................................................................................... 6, 18

26 U.S.C. § 6511 ............................................................................................... 6, 18

v

Tex. Gov't Code § 2.052 ................................................................................ 3, 6, 22, 23

## **Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 8

## **Regulations**

26 C.F.R. § 301.6402-2 ..................................................................................... 6, 18

27 C.F.R. § 479.102 ............................................................................................ 5

27 C.F.R. § 479.172 ......................................................................................... 6, 18

27 C.F.R. § 479.62 .............................................................................................. 5

27 C.F.R. § 479.64 ......................................................................................... 4, 5, 12

27 C.F.R. § 479.65 .............................................................................................. 4

## **Other Authorities**

Texas  House Bill 957 .................................................................................. *passim*

U.S. Dep't of Justice; NFA Handbook, ATF E-Publication 5320.8 (Revised:April 2009),
    www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook
    -atf-p-53208/download ................................................................................... 4

## I.      INTRODUCTION

The National Firearms Act of 1934, 26 U.S.C. § 5801 *et seq*. (the "NFA") is a tax statute located in the United States Internal Revenue Code. The NFA requires any person who intends to make a firearm suppressor for personal use to pay a $200 tax, accompanied by an application to the federal government. The statute also imposes registration and marking requirements in order to aid in the assessment, collection, and enforcement of the tax.

Plaintiffs are three individuals who have expressed their intention to make firearm suppressors for personal use in Texas (the "Individual Plaintiffs") and the State of Texas. Plaintiffs seek to enjoin enforcement of the NFA and its implementing regulations, based on the faulty theory that the NFA's requirements violate their Second Amendment rights. Plaintiffs' claims should be dismissed for several reasons:

*First*, the Anti-Injunction Act (the "AIA") bars all of Plaintiffs' claims. The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax was assessed." 26 U.S.C. § 7421. Because the purpose of Plaintiffs' suit is to enjoin assessment and collection of the NFA's tax obligations, this case falls squarely within the AIA's jurisdictional bar. It is well settled that the AIA is not limited to claims that target the specific act of paying a levy. Rather, the AIA extends to other obligations that serve the collection and assessment of a tax, particularly when they are part of an integrated tax scheme. *See CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1593-94 (2021). Binding precedent also makes clear that the NFA is a taxing statute and that the challenged provisions—including the NFA's application and registration requirements—are part of the statute's integrated tax scheme that is "obviously supportable as in aid of a revenue purpose." *See Sonzinsky v. United States*, 300 U.S. 506, 511-13 (1937). Thus, the AIA clearly applies, and the Court lacks subject matter jurisdiction over this lawsuit.

Plaintiffs invoke the *Enochs* exception to the AIA, but that exception is narrow and does not apply. Under *Enochs v. Williams Packing & Navigation Co.*, a pre-enforcement challenge against a tax obligation can only proceed if two conditions are *both* met: (1) under the most liberal view of the law and facts, it must be clear that "under no circumstances could the Government ultimately prevail"; and (2) equity jurisdiction must be implicated—"*i.e.,* by irreparable injury or inadequacy of legal remedy." 370 U.S. 1, 7 (1962). Plaintiffs cannot satisfy either prong of the *Enochs* test, much less both.

At step one, Defendant has a clear possibility (indeed a likelihood) of prevailing in this case. This entire lawsuit is premised on Plaintiffs' purported Second Amendment right to make firearms suppressors—but, every court to consider the issue has held that suppressors fall outside the Second Amendment guarantee because they are accessories, "not bearable arms." Moreover, even assuming *arguendo* that the Second Amendment applied to suppressors, the Fifth Circuit has already held that the NFA's requirements for the making of firearms survive intermediate scrutiny in the context of devices that do qualify as "arms."

While Plaintiffs' failure at step one of the *Enochs* test is dispositive, Plaintiffs' challenge also cannot survive step two. As noted above, because suppressors fall outside the Second Amendment guarantee, Plaintiffs cannot claim irreparable harm based on the alleged deprivation of this purported constitutional right. And, in any event, the Supreme Court has repeatedly made clear that the constitutional nature of a taxpayer's claim has no bearing under the AIA. Nor do Plaintiffs lack an adequate alternative remedy. Rather, they can fully litigate their claims by exhausting the requisite administrative channels.

*Second*, Texas should be dismissed from this case for the additional reason that the State lacks Article III standing. Texas has not alleged any direct and concrete injury, nor is it in any

immediate danger of such injury. Indeed, the NFA imposes no obligations on the State at all. Nor may Texas rely on its recent enactment of Texas House Bill 957 as a basis to invoke standing here. HB 957 purports to exempt suppressors made for personal use in Texas from federal firearms laws, but only with respect to laws that are based on "the authority of the United States Congress to regulate *interstate commerce*." Tex. Gov't Code § 2.052 (as amended on Sept. 21, 2021) (emphasis added). To the extent Texas may argue that HB 957 somehow confers standing based on the state's "sovereign interest" in its statute, that argument would fail as a matter of law. As a threshold matter, because this case challenges only laws promulgated based on Congress's taxing power—not laws based on its authority to regulate interstate commerce—HB 957 is not implicated. In any event, a state cannot manufacture its own standing to challenge federal law by the simple expedient of passing a statute purporting to nullify federal law. Otherwise, a state could import almost any political or policy dispute into federal court by enacting its side of the argument into state law.

Alternatively, to the extent Texas claims standing to protect its citizens, it is equally clear that a state cannot, acting as "*parens patriae*, . . . institute judicial proceedings to protect citizens of the United States from operation of [federal statutes]," because "it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect to their relations with the federal government." *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923); *see also Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (*Mellon* "prohibits" "allowing a State 'to protect her citizens from the operation of federal statutes'").

*Finally*, even if the Court had jurisdiction to hear this case, it should still be dismissed because Plaintiffs have failed to state a claim for relief based on the Second Amendment.

Accordingly, Defendant's Motion to Dismiss should be granted.

## II.     FACTUAL BACKGROUND

### A.     National Firearms Act

As Plaintiffs recognize, the NFA "is a tax statute, located in the United States Code at Title 26 ('Internal Revenue Code'), Subtitle E ('Alcohol, Tobacco, and Certain Other Excise Taxes')." Am. Compl. ¶ 42, ECF 11. The NFA charges a $200 tax on any person who "shall make a firearm," and imposes associated regulations in conjunction with that tax. Specifically, the NFA provides:

> No person shall make a firearm unless he has (a) filed with the [Attorney General] a written application, in duplicate, to make and register the firearm on the form prescribed . . .; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made . . .; (d) identified himself in the application . . . if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the [Attorney General] to make and register the firearm and the application for shows such approval.

26 U.S.C. § 5822.[2] "Applications [to make firearms] shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." *Id*.; 27 C.F.R. § 479.65. When the information set forth in a particular application leaves unclear whether it can be approved and taxed in accordance with this statutory requirement, ATF may need to request additional information from the applicant in order to complete the process. Am. Compl. ¶ 70. If an application is ultimately disapproved, the applicant's original form and their $200 tax payment will be returned to the applicant. 27 C.F.R. § 479.64.

The NFA also requires that the Attorney General "maintain a central registry of all firearms in the United States which are not in the possession of or under the control of the United States" in the National Firearms Registration and Transfer Record (NFRTR). 26 U.S.C. § 5841(a). "Each

---

[2] Applications to make an NFA firearm must be made on an ATF Form 1, and be accompanied by the applicable tax payment, fingerprints and photograph of the maker, and law enforcement certification. *See* NFA Handbook, Chap. 6, §§ 6.1 – 6.2, at pp. 35-36; www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook-atf-p-53208/download.

4

manufacturer, importer, and maker shall register each firearm he manufactures, imports or makes." *Id*. § 5841(b).  Registration must occur before the firearm is made.  *Id.* § 5841(c). Approval of the application to make and register the firearm, which is submitted alongside the $200 tax, "shall effectuate registration of the firearm to the applicant," 27 C.F.R. § 479.62, and "[u]pon receipt of the approved application, the maker is authorized to make the firearm described therein," 27 C.F.R. § 479.64. Any firearm made pursuant to these requirements must be marked with a serial number and the name of the maker in a manner that cannot "be readily removed, obliterated, or altered." 26 U.S.C. § 5842(a); 27 C.F.R. § 479.102.

For purposes of the NFA, the term "firearm" includes, *inter alia*, "any silencer." 26 U.S.C. § 5845(a). "Silencer" is defined to include "any device for silencing, muffling, or diminishing the report of a portable firearm," as well as "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24).[3] In other words, under the statute, the term "silencer" encompasses both fully-assembled suppressors *and* so-called suppressor "parts kits" that are sold with the intention of being used in the assembly or fabrication of a silencer. *See, e.g.*, Am. Compl. 69-70. The term "make" means "manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm," including a silencer. 26 U.S.C. § 5845(i).[4]

---

[3] While the statute uses the term "silencer," Plaintiffs' Complaint uses the term "suppressor" to describe these same devices. *See* Am. Compl. ¶¶ 22-26. For purposes of this motion, the terms silencer and suppressor are used interchangeably to refer to the relevant devices covered by 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(24).

[4] The NFA expressly distinguishes between persons who make firearms (including silencers) for personal use, as opposed to "manufacturers." The term "manufacturer" means any person who is engaged in the business of manufacturing [silencers]." 26 U.S.C. § 5845. Because "parts kits" are defined as silencers (and by extension as "firearms") under the applicable statutes, those kits must

5

In the event the maker of a firearm wishes to challenge the assessment of the NFA's tax against him, the Internal Revenue Code provides an administrative process to address that claim. The maker can file a claim for refund or credit with the Attorney General after submitting an application and paying the applicable tax within the applicable limitations period. *See* 26 U.S.C. § 6511; 26 C.F.R. § 301.6402-2; 27 C.F.R. § 479.172. Only after those administrative remedies are exhausted can the maker then challenge the result in United States District Court, if necessary. *See* 26 U.S.C. § 7422 (civil actions for refund)*.*

    B.    <u>Texas House Bill 957</u>

Texas House Bill 957 ("HB 957") was passed on May 4, 2021, and went into effect on September 1, 2021. HB 957 purports to exempt firearms suppressors made for personal use in Texas from some federal firearms laws. In particular, Section 2.052 of the Texas Government Code now provides that neither "[a] firearm suppressor that is manufactured in this state and remains in this state" nor "[a] basic material from which a firearm suppressor is manufactured in this state" is "subject to federal law or federal regulation . . . under the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052 (as amended).

HB 957 further states: "On written notification to the attorney general by a United States citizen who resides in this state of the citizen's intent to manufacture a firearm suppressor to which Section 2.052 applies, the attorney general shall seek a declaratory judgment from a federal district court in this state that Section 2.052 is consistent with the United States Constitution." *Id.*[5]

---

comply with the NFA's firearms manufacturing requirements at the time they are manufactured and transferred, including the requirement that registration must occur before the silencer is manufactured or transferred. *See* 26 U.S.C. § 5841. In addition, pursuant to 26 U.S.C. § 5861(d), it is unlawful for "any person" to "receive or possess a firearm [including a silencer] which is not registered to him in the National Firearms Registration and Transfer Record."

[5] Before HB 957 went into effect, ATF issued an "Open Letter to All Texas Federal Firearms Licensees" dated July 26, 2021, advising them that regardless of HB 957, all federal firearms laws

C.     Individual Plaintiffs' Stated Intention to Make Suppressors for Personal Use

Individual Plaintiffs claim that they "intend[] to manufacture a firearm suppressor to which section 2.052 of the Texas Government Code applies and ha[ve] notified the attorney general of that fact in writing." Am. Compl. ¶¶ 13-15. Specifically, on February 23, 2022, Individual Plaintiffs, collectively and through their shared attorney, sent a letter to Texas Attorney General Paxton, stating that "Mr. Schnitz, Mr. Martin, and Mr. Allen each intend to personally manufacture a firearm suppressor for their own personal use" and that "[t]he firearm suppressors will be manufactured in their homes from basic materials." *Id*., Ex. 1 at 1. Plaintiffs' letter further asserts that they "intend to own the firearm suppressors in perpetuity, to never transport them outside the boundaries of the State of Texas, and to never transfer them to another person." *Id.*

Based on the Individual Plaintiffs' stated intentions and HB 957, the Individual Plaintiffs "request[ed] that [Attorney General Paxton] seek a declaratory judgment from a federal district Court in this state that Section 2.052 is consistent with the United States Constitution." *Id.*[6]

D.     Plaintiffs' Amended Complaint

On February 24, 2022, Plaintiffs filed this lawsuit. On April 26, 2022, Defendant filed a Motion to Dismiss, ECF 10; upon consideration of that motion, Plaintiffs filed their now-operative First Amended Complaint on May 17, 2022. Am. Compl., ECF 11.

---

and regulations continued to apply. *See* Am. Compl., Ex. 4. The Open Letter further explained that "[t]his letter does not impose any new obligations. It merely confirms the continuing applicability of existing federal obligations." *Id.* at 1. Plaintiffs have not brought any claims purporting to challenge the Open Letter itself, nor could they do so in light of the fact that the Open Letter imposes no legal obligations. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (holding that a federal agency action is only final, and thus subject to legal challenge, if it is "one by which rights or obligations have been determined, or from which legal consequences will flow"). Here, ATF's Open Letter simply restated the existing obligations under longstanding federal firearms laws.

[6]As detailed *infra* in Part IV.B, the State does not assert any independent factual allegations beyond what is laid out in connection with the Individual Plaintiffs' claims.

The Amended Complaint asserts only a Second Amendment Challenge to the NFA's tax requirements and related processes, and splits that claim into three parts: Count I seeks to enjoin the NFA's requirement that Texans submit an application in conjunction with paying a tax on the making of firearms suppressors; Count II seeks to enjoin the NFA's requirement that Texans pay a $200 tax on making firearms suppressors; and Count III seeks to enjoin the registration and marking steps associated with paying that tax.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1998). Pursuant to Rule 12(b)(6), a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV.   ARGUMENT

### A.   This Court Lacks Jurisdiction Because the Anti-Injunction Act Bars Plaintiffs' Claims.

The Anti-Injunction Act ("AIA") provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is [a] person against whom such tax [is] assessed." 26 U.S.C. § 7421(a). In other words, the AIA "withdraw[s] jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." *Linn v. Chivatero*, 714 F.2d 1278, 1281 (5th Cir. 1983) (quoting *Enochs* 370 U.S. at 5 ).

The Supreme Court has made explicit that the AIA's jurisdictional limitations apply even where, as here, plaintiffs raise a constitutional challenge:

> The "*decisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim . . . is of no consequence*" *to whether the prohibition against tax injunctions applies*. This is so even though the Anti-Injunction Act's prohibitions impose upon the wronged taxpayer requirements at least as onerous as those mandated by the refund scheme—the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted.

*United States v. Clintwood Elkhorn Mining C*o., 553 U.S. 1, 10 (2008) (quoting *Alexander v. "Am. United" Inc.*, 416 U.S. 752, 759 (1974)) (emphasis added); *see also United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) ("Even though the remitting of the employees to a refund action may frustrate" the plaintiffs' First Amendment rights, "the bar of the Anti-Injunction Act is not removed."); *Linn*, 714 F.2d at 1282 (Plaintiff's "decision to cast his lawsuit in constitutional terms does not mean that the Anti-Injunction Act is inapplicable").

The AIA protects the "Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference 'and to require that the legal right to the disputed sum[] be determined in a suit for refund.'" *Bob Jones Univ.*, *v. Simon* 416 U.S. 735, 736-37 (1974) (quoting *Enochs*, 370 U.S. at 7). Thus, it is well-settled that the AIA is not limited to claims targeting the specific act of paying a levy, but rather also encompasses requests for an injunction that are aimed at "collection or assessment of [that] tax," particularly when they are part of an integrated tax scheme. *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1590 (2021). Moreover, the AIA bars suits against a "tax rule" regardless of whether "tax in question is a so-called regulatory tax—that is, a tax designed mainly to influence private conduct, rather than to raise revenue." *Id.* at 1593 (citing *Sonzinsky*, 300 U.S. at 513). To determine whether a plaintiff's claims are barred by the AIA, courts assess whether the "primary purpose" of the lawsuit is to seek relief that would "restrain the collection of taxes or the collection of information that would aid in the assessment of taxes." *Linn*, 714 F.2d at 1282 (quoting *Bob Jones*, 416 U.S. at 738). When

considering "a suit's purpose" the Court must "inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests." *CIC Servs., LLC* 141 S. Ct. at 1589. The AIA "kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'" *Id.* at 1590.

This case falls squarely within the jurisdictional bar of the AIA. As detailed below: (1) because every aspect of the NFA that Plaintiffs seek to enjoin is an integral component of the statute's mechanism for imposing a tax obligation, Plaintiffs seek relief that would preclude the federal government from assessing or collecting a tax; (2) the AIA's narrow exception does not apply here; and (3) the AIA's jurisdictional bar applies to Texas, as well as to the Individual Plaintiffs. Accordingly, this case should be dismissed.

> 1. *This Case Should be Dismissed in its Entirety Because Its Object is to Enjoin the Collection or Assessment of a Tax.*

This case should be dismissed in its entirety because its "primary purpose" is to seek relief that would restrain "the collection or assessment of [a] tax." *CIC Servs., LLC*, 141 S. Ct. at 1589. Plaintiffs challenge the NFA's $200 tax on the making of a firearm suppressor (Count II) and the NFA's application and registration requirements that aid in collection and enforcement of that tax (Counts I & III). All three counts of Plaintiffs' Amended Complaint seek to enjoin provisions of the NFA, which Plaintiffs concede "is a tax statute." Am. Compl. ¶ 42; *see also Sonzinsky* 300 U.S. at 511-13 (holding that the NFA is a lawful exercise of Congress's taxing power).

Plaintiffs do not dispute that the AIA applies to the $200 tax payment imposed by the NFA, *see* Am. Compl. ¶ 20, nor could they. It is well settled that the AIA applies to excise taxes, *see Bob Jones*, 416 U.S. at 741, and that the levies imposed by the NFA are excise taxes. *See* 26 U.S.C. § 5821(a) ("There shall be levied, collected, and paid upon the making of a firearm [suppressor] *a*

*tax* at the rate of $200 for each firearm made.") (emphasis added); *see also Sonzinksy*, 300 U.S. at 511-13.[7] Plaintiffs instead break the NFA into parts, and ask the Court to rewrite the statute by eliminating its application and registration requirements. Am. Compl. ¶¶ 129, 151. But, the NFA's tax payment cannot be treated in isolation. Rather, the challenged requirements together make up the NFA's integrated "taxing scheme." *United States v. Cox*, 906 F.3d 1170, 1179 & n.12 (10th Cir. 2018) (finding that the NFA's process for collection of excise taxes and registration requirements are part of the statute's tax scheme); *id.* at 1183 n.12 (noting that "[o]ther circuits uniformly agree" that the NFA's requirements are "a valid exercise of Congress's taxing power," and listing cases). The Supreme Court has already held that the NFA's tax scheme regulates only "in aid of a revenue purpose." *Sonzinsky*, 300 U.S. at 513. Under this binding precedent, there can be no doubt that Plaintiffs' claims are barred by the AIA.

A closer look at the NFA's application and registration requirements confirms that those steps serve to aid in the assessment and collection of the tax. First, requiring application and approval to make a firearm, in conjunction with submitting the requisite tax payment, is merely the regulatory mechanism used to identify those who are required to pay the tax in the first place. *See generally Bezet v. United States*, 276 F. Supp. 3d 576, 618-19 (E.D. La. 2017). As set forth on

---

[7] In *Sonzinsky*, the Supreme Court considered whether the NFA's analogous tax scheme for dealers in firearms was a constitutional exercise of Congress's taxing powers. The criminal defendant argued that the NFA's levy was not a true tax, "but a penalty imposed for the purpose of suppressing traffic in certain noxious type of firearms[.]" 300 U.S. at 512. The Court held that "[e]very tax is in some measure regulatory . . . [b]ut a tax is not any the less a tax because it has a regulatory effect." *Id.* at 513-14 (citation omitted). The Court further held that, since the measure operates as a tax, it is within Congress's taxing power and courts should not "speculate as to the motives which moved Congress to impose it[.]" *Id.* The Supreme Court has consistently reiterated this principle. *See CIC Servs. LLC*, 141 S. Ct. at 1593  ("This Court has long since 'abandoned the view that brightline distinctions exist between regulatory and revenue-raising taxes.'") (quoting *Bob Jones*, 416 U.S. at 743 n.17).

the application form itself, the purpose of the information sought is to "verify payment of the tax imposed by 26 U.S.C. § 5821," and to confirm whether the applicant owes that tax because the firearm making can lawfully proceed. *Id.*[8] Thus, the NFA's application is not "a standalone reporting requirement" that exists independent of the tax. *CIC Servs. LLC*, 141 S. Ct. at 1594.[9] Rather, the NFA directly levies a tax that flows directly from its application process. Indeed, use of the application process to assess the NFA's tax is expressly required by the statute itself—a statute that Congress lawfully enacted pursuant to its taxing power. *See* 26 U.S.C. § 5822 ("No person shall make a firearm unless he has . . . filed with the [Attorney General] a written application, in duplicate, to make and register the firearm on the form proscribed"); *see also* Am. Compl., Ex. 3 at 4 (NFA Form-1 statement that "[s]olicitation of this information is made pursuant to the National Firearms Act (26 U.S.C. §§ 5821 and 5822)").

Second, the NFA's registration and marking requirements serve to aid the Department in its ability to enforce the applicable tax—a fact that both the Supreme Court and the Fifth Circuit have recognized. In *Sonzinsky v. United States*, the Supreme Court upheld the NFA's registration

---

[8] Notably, if ATF determines that the applicant cannot make the requested firearm, and thus that the tax does not apply, the applicant's $200 payment is returned. *See* 27 C.F.R. § 479.64.

[9] In *CIC,* the plaintiff challenged an IRS Notice that required reporting certain transactions, but did not raise any claim against the separate statutory tax that served as one way to enforce that reporting requirement. 141 S. Ct. 1590. The Court held that the AIA did not apply because the IRS's "standalone reporting requirement" was too attenuated from the separate statutory tax. *Id.* The Court made clear that "[h]ad Congress, or the IRS act[ion] through a delegation, imposed a tax on micro-captive transactions themselves—and had CIC then brought a pre-enforcement suit to prevent the IRS from applying that tax—the Anti-Injunction Act would have kicked in." *Id.* at 1594. The Court also made explicit that a "legal rule at issue is a tax provision" to which the AIA applies when "[t]he tax *does not backstop the violation of another law*" and instead "imposes a cost on perfectly legal behavior." *Id.* at 1593 (emphasis added). The result in *CIC* is clearly distinguishable from the facts at hand. Here, the NFA directly levies a tax, which flows directly from the statute's application requirement; and the NFA's tax is not a penalty, but rather is an excise tax that is assessed upon a person's *compliance* with the requisite process.

provisions as a constitutional exercise of Congress's taxing power, on the basis that those registration requirements are "obviously supportable as in aid of a revenue purpose." 300 U.S. at 513. Likewise, the Fifth Circuit has repeatedly upheld Congress's ability to enforce a tax through the promulgation of firearm registration requirements. *See, e.g.*, *United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997) (holding requirement to register pipe bombs was "not a mere pretext for police power, but is 'part of the web of regulation aiding enforcement of the tax provision'"); *United States v. Ardoin*, 19 F.3d 177, 188 (5th Cir. 1994) (holding requirements to register weapons can be constitutionally premised on Congress's taxing power); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972) (upholding penalty on possession of unregistered weapons under Congress's taxing power because "[s]uch a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax").

Thus, notwithstanding Plaintiffs' assertions to the contrary, Am. Compl. ¶ 20, every statute and regulation they seek to enjoin serves the assessment and collection of a tax and Plaintiffs' claims are therefore barred by the AIA.

### 2.    The Enochs Exception to the AIA is Narrow and Does Not Apply

The exception to the AIA set forth in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), is narrow and does not apply. *See Bob Jones Univ.* 416 U.S. at 742 (holding *Enochs* is "the capstone to judicial construction of the Act"). Under the two-part test set forth in *Enochs*, a pre-enforcement injunction against the assessment or collection of taxes may be granted only: (1) "if it is clear that under no circumstances could the Government ultimately prevail"; *and* (2) "if equity jurisdiction otherwise exists." *Enochs*, 370 U.S. at 7; *see also Bob Jones Univ.*, 416 U.S. at 748-49. "Unless both conditions are met, a suit for preventive injunctive relief must be dismissed." *Am. Friends Serv. Comm.*, 419 U.S. at 10 (quoting *Alexander*, 416 U.S. at 758). Plaintiff cannot satisfy either prong of the *Enochs* test, much less both.

13

a)   *There is No Basis to Conclude that the Government is Unable to Prevail Under Any Circumstances*

Plaintiffs have not established that the United States is unable, under any circumstances, to ultimately prevail in this suit. *See* Am. Compl. ¶ 19 (stating in a conclusory fashion that the AIA does not apply for this reason). In making this determination for purposes of the *Enochs* exception, the Court must give the United States the benefit of the "most liberal view of the law and the facts." *Kemlon Prod.*, 638 F.2d at 1321. In other words, Plaintiffs' Second Amendment claims need only be "sufficiently debatable to foreclose any notion that 'under no circumstances could the [United States] ultimately prevail.'" *Bob Jones*, 416 U.S. at 749. They do not meet this high threshold.[10]

To determine whether a law violates the Second Amendment, the Fifth Circuit applies a two-part inquiry. First, the Court "determine[s] whether the challenged law impinges upon a right protected by the Second Amendment." *Nat'l Rifle Ass'n of Am, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012). "If no Second Amendment right is implicated, then the inquiry ends." *Bezet v. United States*, 714 Fed. Appx. 336, 340 (5th Cir. 2017). If a Second Amendment right is implicated, the Court proceeds to the second step, which is to determine whether the law survives the applicable level of scrutiny. *See Hollis v. Lynch*, 827 F.3d 436, 447 (5th Cir. 2016).

Any contention by Plaintiffs that the government could not prevail in opposing Plaintiffs' Second Amendment claim fails at the first step. The weight of authority unanimously holds that the Second Amendment does not apply to the suppressors at issue in this case. Under *District of Columbia v. Heller*, the Second Amendment extends only to "instruments that constitute bearable arms." 554 U.S. 570, 582 (2008). No court has ever held that a firearm suppressor is an "arm"

---

[10] The Court need not delve deeply into the merits of Plaintiffs' claims, because this case is jurisdictionally barred. However, were this case to proceed on the merits, Defendant's positions would be more than just debatable. Rather, Defendant should prevail. *See infra* Part IV.C.

within the meaning of the Second Amendment. In fact, every court to consider the issue has found that suppressors do *not* qualify as "bearable arms." *See, e.g., Cox*, 906 F.3d at 1186 ("A silencer is a firearm accessory; it's not a weapon in itself."); *United States v. Al-Azhari*, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, 2019 WL 4573424, at *4-5 (D. Md. Sept. 20, 2019), *aff'd* 26 F.4th 610 (4th Cir. 2022). The Second Amendment does not protect the right to make "instruments, such as silencers, that fall outside its ambit." *Cox*, 906 F.3d at 1187. In light of this overwhelming authority, the Government's ability to prevail under "the most liberal view of the law" is beyond debatable. That alone is dispositive, and the Court can stop here.

But, even if the NFA's requirements for making a suppressor burdened conduct within the scope of the Second Amendment, Plaintiffs cannot show that the government could not prevail. The Fifth Circuit has already upheld the NFA's making requirements in the context of actual "arms" under an intermediate scrutiny analysis. *See Bezet,* 714 Fed. Appx. at 341 ("[A]s the district court correctly explained, there is a reasonable fit between these relatively light burdens and the important government objective of curbing gun violence."); *see also Bezet*, 276 F. Supp. 3d at 612 ("[The] Court finds that levying a $200 tax and imposing a registration requirement for the making of a firearm both have a 'reasonable fit' with Congress's important government objectives.").

Finally, Plaintiffs' complaint cites *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105 (1943), and suggests it stands for a *per se* rule that "the government cannot tax the exercise of Second Amendment rights." Am. Compl. ¶¶ 3-4, 102. But, *Murdock* had nothing to do with the Second Amendment and created no such *per se* rule. Rather, *Murdock* struck down a licensing fee for religious canvassing on First Amendment grounds because it was "not a nominal [fee], imposed as a regulatory measure and calculated to defray the expense" of policing the activities in question. 319 U.S. at 113-14. Neither the Fifth Circuit nor the Supreme Court has extended *Murdock* to the

Second Amendment context. Some courts have expressly declined to do so. *See United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020) (declining to extend *Murdock* to the Second Amendment context because "[t]he absence of [binding precedent] rules out a holding that" the failure to do so was erroneous). And, even courts that have imported *Murdock* into their Second Amendment analyses nonetheless have upheld the restrictions at issue under that standard. *See Bauer v. Becerra*, 858 F.3d 1216, 1226 (9th Cir. 2017) (fees supporting background check program "can fairly be considered an 'expense[] of policing the activities in question' or an 'expense incident to . . . the maintenance of public order in the matter licensed'"); *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (finding $340 fee for residential handgun licensing permissible).

Accordingly, because Plaintiffs' claims are "sufficiently debatable" under the "most liberal view of the law and the facts," *Kemlon,* 638 F.2d at 1321, the *Enochs* exception does not apply.

### b)   *Equity Jurisdiction is Not Implicated*

Because Plaintiffs cannot satisfy the first prong of *Enochs*, the narrow exception does not apply, and the Court does not need to consider the second prong. *See Kemlon Prod.*, 638 F.2d at 1321 ("*Enochs* establishes two prongs, both of which must be satisfied"); *Alexander*, 416 U.S. at 761-62 ("[A]llowing injunctive relief on the basis of [a showing of equity jurisdiction] alone would render § 7421(a) quite meaningless."). In any event, Plaintiffs also cannot meet the second prong of the *Enochs* test, which looks to whether "normal equity jurisdiction" is present, "i.e., irreparable injury and inadequacy of legal remedy." *Kemlon Prod.*, 638 F.2d at 1321.

First, Plaintiffs cannot claim irreparable harm based on a purported loss of Second Amendment rights under the facts at hand. As discussed above, no constitutional rights are implicated here because the Second Amendment does not encompass the right to have *suppressors* in the first place, and the NFA would survive heightened scrutiny in any event. *See supra* Part

16

IV.A.2.a. But, even assuming *arguendo* that constitutional rights were involved, the Supreme Court has made clear that "the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." *United States v. Am. Friends Serv. Comm.*, 419 U.S. at 11 (quoting *Alexander*, 416 U.S. at 759). Indeed, the Supreme Court has applied this rule even where subjecting a plaintiff to the challenged taxation method would, in and of itself, *permanently* deprive the plaintiffs of access to constitutionally-protected activity. *See id.* ("Even though remitting of the employees to a refund action may frustrate their chosen method of bearing witness to their religious convictions, a chosen method which they insist is constitutionally protected, the bar of the Anti-Injunction Act is not removed.").

Nor can the Individual Plaintiffs claim irreparable harm based on their vague purported fear that submitting an NFA application could "expos[e] them[] to potential criminal prosecution on account of their [unlawful] possession of parts disclosed in the application." Am. Compl. ¶ 128. Plaintiffs neither explain what parts they possess, nor offer any explanation as to how or why they may have those parts illegally. Moreover, Plaintiffs do not allege facts suggesting that any would-be maker has faced prosecution as a result of suppressor parts disclosed in their NFA application. On the contrary, Plaintiffs' complaint alleges only that disclosures of combinations of unregistered illegal parts have resulted in application denials and/or requests for additional information. *See id*. ¶¶ 69-70. Plaintiffs' speculation cannot establish imminent harm. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (injury must be "actual or imminent, not conjectural or hypothetical.").

In any event, Plaintiffs' possession of unlawful parts would not prevent them from filing an application, paying the tax, and getting approval to make a suppressor. NFA applications are granted so long as the making of that suppressor would not "place the person making the firearm in violation of law." 26 U.S.C. § 5822. Plaintiffs remain free to file an application and pay the tax

17

to make a firearm suppressor using lawful parts. No step in that process requires Plaintiffs to disclose their separate possession of other firearms or parts not related to that suppressor.

Finally, Plaintiffs do not lack alternative means to litigate their claims. Plaintiffs can employ the appropriate administrative procedure, which is to file a claim for refund *after* submitting an application and paying the applicable tax within the limitations period, and thereafter to challenge the result in United States District Court, if necessary. *See* 26 U.S.C. §§ 6511, 7422; 26 C.F.R. § 301.6402-2; 27 C.F.R. § 479.172; *see also Thompson/Center Arms Co. v. Baker*, 686 F. Supp. 38 (D.N.H. 1988) (dismissing challenge to NFA's taxing provisions for firearms makers based on the AIA, and explaining appropriate alternative process for the challenge).[11]

### 3.    *The AIA's Jurisdictional Bar Applies to the State*

To the extent Texas suggests that the AIA's jurisdictional bar does not apply to the State, that is incorrect. By its terms, the AIA bars suits brought by "*any person*, *whether or not such person is the person against whom such tax was assessed.*" 26 U.S.C. § 7421(a) (emphasis added). In the context of and for the purposes of the Internal Revenue Code, the Supreme Court has long held that "person" necessarily includes States. *See Sims v. United States*, 359 U.S. 108 (1959); *Ohio v. Helvering*, 292 U.S. 360, 370 (1934) (holding that a state was "embraced within the meaning of the word 'person'" where the word person was defined as "meaning and including a partnership, association, company, or corporation, as well as a natural person"), *overruled on other*

---

[11] Alternatively, in the event Plaintiffs' application were denied, they could file a lawsuit challenging the denial at that time. Such a challenge would then take into account the reason for the denial and the effect of any alleged resulting injury. However, because Plaintiffs have not engaged in the requisite administrative process of filing an application at all—much less one that was denied—any such claim is not ripe at this time. *See Nat'l Park Hospitality Ass'n v.  Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (explaining that ripeness is a justiciability doctrine that prevents courts "from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.").

*grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985).[12] Further, the Supreme Court has held that the AIA applies even when a third party seeks to challenge only the regulatory impact of a tax, because "a suit to enjoin the assessment or collection of *anyone's* taxes triggers the literal terms of § 7421(a)." *Alexander*, 416 U.S. at 760 (emphasis added); *id.* ("Section 7421(a) does not bar merely a taxpayer's attempt to enjoin the collection of his own taxes."). Here, the State seeks relief that would have the effect of restraining the assessment and collection of the NFA's tax. *See* Prayer for Relief, Am. Compl. at 31. Because the State's claims directly "trigger[] the literal terms of § 7421(a)," the AIA bars those claims. *See Alexander*, 416 U.S. at 760.

This is not a case like *South Carolina v. Regan*, 465 U.S. 367 (1984), where the state asserted its own independent interest in enjoining the law at hand. In *Regan*, the Supreme Court permitted a state to challenge the revocation of a tax exemption for state-issued bonds "on its own behalf," when the tax substantially harmed the state's ability to issue bonds and the state could not rely on individual buyers to assert its claims. *Id.* at 371-72, 380-81.[13] *Regan* did not hold that states are exempted from the AIA generally. Rather, the court allowed the state's claims to go forward based on the specific facts at hand—because the state had "no alternative avenue . . . to litigate claims on its own behalf." *Id.* at 381, 403.

_____

[12] With respect to the Internal Revenue Code—including the AIA—Congress intended the word "person" to be construed broadly. Inclusion of the phrase "by any person, whether or not such person is the person against whom such tax [was] assessed" was simply meant to reaffirm that the AIA applied to taxpayers and nontaxpayers alike, not to limit the scope of the AIA's reach. *See Bob Jones Univ.*, 416 U.S. at 731 n.6; *Conf. Tribes and Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau* 843 F.3d 810, 814 (9th Cir. 2016) (detailing AIA's legislative history to show "[t]his history cuts against an interpretation of the [AIA] that excludes suits based merely on the identity of the plaintiff, at least where that party readily fits the ordinary definition of 'person').

[13] In particular, buyers of South Carolina's bonds were unlikely to assert their own claims because they could avoid taxation simply by purchasing registered bonds, and thus would have little incentive to pay the tax, file a refund suit, and raise the state's constitutional claims. *Id.* at 381.

By contrast, here Texas has not identified any concrete harm to itself, such that the State requires an injunction "on its own behalf." *See infra* Part IV.B. Rather, Texas's claims are entirely derivative of the injuries claimed by individual Texans, specifically would-be makers of firearm suppressors and, in particular, the Individual Plaintiffs. *Id.* Texas has offered no explanation as to why the rights of individual Texans cannot be addressed through the appropriate "alternative avenue"—*i.e.,* paying the tax and, if they wish, challenging its validity in a refund action thereafter. *See New York v. Mnuchin*, 408 F. Supp. 3d 399, 412 (S.D.N.Y. 2019) (applying *Regan* to allow state's claim, but explaining that the Court's analysis of *Regan* "would be different if the States sought in this action to assert the rights of their taxpayers—rights that the taxpayers could defend themselves in a refund action"), *aff'd* 15 F.4th 569, 579 (2d Cir. 2021) (confirming the district court's application of *Regan* because the States' claims were not derivative of taxpayers' injuries).

Nor must Texas "depend on the *mere possibility* of persuading" individual taxpayers to assert claims challenging the tax at issue, which was the situation in *Regan*. 465 U.S. at 381 (emphasis added). Here, the Individual Plaintiffs were obviously motivated to (i) write to the Texas attorney general and request that he seek a declaratory judgment, and (ii) file this lawsuit. The Individuals Plaintiffs appear to have every incentive to raise these claims in a refund suit if this case is dismissed for lack of jurisdiction under the AIA (as it should be). *See Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810, 815 (9th Cir. 2016) (distinguishing *Regan* and finding AIA barred tribe from bringing claims aimed at protecting its members because, *inter alia*, the members were incentivized to raise their own claims). Conversely, if Texas's claims were allowed to go forward under these circumstances, the AIA would be rendered meaningless, since individuals could then evade the AIA by merely asking states to file lawsuits in their stead. *Cf. Regan*, 465 U.S. at 381 n.19 (clarifying its holding does

not allow taxpayers to "evade the [AIA] by forming organizations to litigate their tax claims").

Accordingly, the Anti-Injunction Act bars all Plaintiffs' claims to enjoin enforcement of the NFA's tax provisions and related regulatory requirements, and this case should be dismissed.

B.     Texas Lacks Standing Because It Has Alleged No Cognizable Injury

Even if Texas's claims were not barred by the Anti-Injunction Act,[14] the State would still lack standing because it fails to allege the requisite cognizable injury to meet the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. To establish standing, Texas must show that it has "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.*; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing, including injury in fact) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The burden rests with the party invoking federal jurisdiction, here Texas, to "establish[] these elements." *Id.*

Texas does not articulate any "legally protected" state interest that is harmed, much less an injury that is "concrete and particularized." Texas claims only—without any further explanation—that it "has standing to assert its sovereign interest in regulating the making of firearm suppressors within Texas that will stay in Texas and in promoting the availability of firearms suppressors in Texas." Am. Compl. ¶ 11. That is insufficient. A state's alleged harm to its abstract interest in its own sovereignty is not in itself a justiciable injury. *See Mellon*, 262 U.S. at 484-85; *New Jersey v. Sargent*, 269 U.S. 328, 337 (1926) (allegations that provisions of federal law "go beyond the

---

[14] Because the AIA can dispose of this case in its entirety, the Court can and should consider the AIA's jurisdictional bar first, before reaching the question of Texas's standing. *See Matter of LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 392 n.6 (7th Cir. 1987) (applying AIA to dispose of case before reaching standing because "it is relatively straightforward, avoids deciding a constitutional question (Article III standing), and provides the narrowest ground for decision"); *Am. Bicycle, Ass'n v. United States (In re Am. Bicycle Assoc.)*, 895 F.2d 1277, 1279 (9th Cir. 1990) (same).

power of Congress and impinge on that of the state . . . do not suffice as a basis for invoking an exercise of judicial power"); *Texas v. ICC*, 258 U.S. 158, 162-63 (1922) (state's claim of infringement upon state sovereignty was merely "an abstract question of legislative power," not a justiciable case or controversy). These decisions make clear that Texas's abstract assertion of "sovereign interest" does not give rise to a controversy under Article III; Texas is asking this Court "to adjudicate, not rights of person or property, not rights of dominion over physical domain, not quasi sovereign rights actually invaded or threatened, but abstract questions of political power, of sovereignty, of government." *Mellon*, 262 U.S. at 484. Because Texas has failed to articulate any basis for its standing, its claims fail on their face and should be dismissed.

To the extent Texas may argue that it has standing pursuant to HB 957—the State's recently-enacted law purporting to exempt firearms suppressors made in Texas from federal law— that argument has no merit. HB 957 purports to nullify federal laws that regulate firearms suppressors made in Texas, but *only* with respect to laws that are based on "the authority of the United States Congress to regulate interstate commerce." Tex. Gov't Code § 2.052. HB 957 is silent as to laws promulgated pursuant to *other* federal powers—including those based on Congress's taxing power. *Id.* This case seeks injunctive relief only as to the NFA, which is a tax statute. Because the challenged laws are not based on "the authority of the United States Congress to regulate interstate commerce," the terms of HB 957 simply are not implicated here, and thus HB 957 cannot form the basis for Texas's standing to challenge the laws at hand.

In any event, even if HB 957 purported to address the laws challenged here, any argument that it creates standing for Texas would still fail as a matter of law. A federal law can only inflict the requisite injury-in-fact upon a state when the challenged law interferes with the state's exercise of its sovereign "power to create and enforce a legal code." *Alfred L. Snapp & Son, Inc. v. Puerto*

*Rico*, 458 U.S. 592, 601 (1982). By contrast, HB 957 does not create any state program, much less a regulatory mechanism for enforcement. On the contrary, HB 957 merely provides that "firearm suppressor[s] that [are] manufactured in this state and remain[] in this state" and "basic material[s] from which a firearm suppressor is manufactured in this state" are "not subject to federal law or federal regulation, including registration, under the authority of the United States Congress to regulate interstate commerce." Am. Compl. ¶ 97 (quoting Tex. Gov't Code § 2.052(b)).

Texas cannot manufacture its own standing to challenge a federal law by simply passing a statute purporting to nullify it. Under the Supremacy Clause, a state law purporting to nullify federal law "must yield." *Florida v. Mellon*, 273 U.S. 12, 17 (1927); *see also Helvering v. Davis*, 301 U.S. 619, 645 (1937). For this reason, Courts consistently recognize that a state has standing based on "federal interference with the enforcement of state law," only when "'the state statute at issue regulate[s] behavior or provide[s] for the administration of a state program' *and does not 'simply purport [] to immunize [state] citizens from federal law.*'" *Texas v. United States*, 809 F.3d 134, 153 (5th Cir. 2015) (emphasis added) (citing *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253 (2011)); *see also Texas v. Becerra*, No. 5:21-cv-300-H, 2021 WL 6198109, at *21 (N.D. Tex. Dec. 31, 2021) (also citing *Cucinelli* for this same principle).[15]

The Fourth Circuit's decision in *Cuccinelli* is instructive. In that case, the State of Virginia challenged the the Affordable Care Act's (ACA's) individual mandate. Virginia claimed standing on its own behalf, relying upon the Virginia Health Care Freedom Act ("VHCFA"), which was passed after the ACA was signed into law. The VHCFA declared that no person could be forced

---

[15] Unlike here, cases implicating a state's "power to create and enforce a legal code" involve state laws that establish rights accompanied by processes and enforcement mechanisms. *See, e.g., Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) (state standing based on established procedures to expunge misdemeanor convictions in order to restore firearms rights).

to buy health insurance against their will, thereby purporting to override the ACA. The court held Virginia lacked standing because "the VHCFA regulates nothing and provides for the administration of no state program. Instead, it simply purports to immunize Virginia citizens from federal law. In doing so, the VHCFA reflects no exercise of 'sovereign authority to nullify federal law." *Cuccinelli*, 656 F.3d at 270. As the court aptly recognized, if states could manufacture standing in the way Texas attempts to do here, a state could import any political or policy dispute into federal court by enacting its side of the argument into state law. *See id.* at 271 ("To permit a state to litigate whenever it enacts a statute declaring its opposition to a federal law . . . would convert the federal judiciary into a 'forum' for the vindication of a state's 'generalized grievances about the conduct of government.'") (quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1968)). As the Sixth Circuit recently reiterated, "Article III of the U.S. Constitution permits federal courts to adjudicate only 'cases or controversies," not any political dispute that happens to arise between the state and federal executive branches." *Arizona v. Biden*, 31 F.4th 469, 474 (6th Cir. 2022).[16]

Finally, to the extent Texas argues that it has standing because federal gun laws impose burdens or adversely affect its citizens, Am. Compl. ¶ 12, that argument also fails. A state cannot, acting as "parens patriae, . . . institute judicial proceedings to protect citizens of the United States from the operation of [federal] statutes." *Mellon*, 262 U.S. at 485-86. Because citizens of a state "are also citizens of the United States," it is the United States, and not the state, which represents

---

[16] Even if there were a legitimate conflict between H.B. 957 and federal law, that still could not give rise to a legitimate sovereign interest on behalf of Texas. Such abstract policy disputes are not proper subjects for judicial resolution. *See United States v. West Virginia*, 295 U.S. 463, 469 (1935) (conflict between federal and state licensing laws for dam construction presented merely a "difference of opinion" between the state and federal governments, not a case or controversy); *New Jersey*, 269 U.S. at 337 (state lacked standing to challenge provisions of federal law that were allegedly contrary to the state's water policies). There is no legal basis for Texas to receive an advisory opinion as to whether its state law is valid on the ground that the federal law is not.

[its citizens] as parens patriae" and, thus, "it is no part of [a State's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government." *Id.* The Supreme Court has repeatedly reiterated that *Mellon* "prohibits" a state from suing federal defendants "to protect her citizens from the operation of federal statutes." *Massachusetts*, 549 U.S. at 520 n.17 (*Mellon* "prohibits" "allowing a State 'to protect her citizens from the operation of federal statutes"); *Alfred L. Snapp & Son, Inc.,* 458 U.S. at 610 n.16 ("A State does not have standing as *parens patriae* to bring an action against the Federal Government"). Texas thus cannot bring this suit against the federal government on the theory that the NFA (or any other federal firearms restriction) burdens or otherwise injures Texas's citizens.

Accordingly, Texas lacks standing and should be dismissed from this case.

C.      This Case Should Be Dismissed Because Plaintiffs Have Failed to State a Claim Under the Second Amendment

Even assuming *arguendo* that the Court has jurisdiction to hear this case, the Court should still grant Defendant's Motion to Dismiss because Plaintiffs have failed to state a claim. Plaintiffs' entire case is premised upon the incorrect notion that the NFA's application to the making of suppressors violates the Second Amendment. As detailed above: (1) suppressors do not qualify as "bearable arms" and, thus, the challenged law does not impinge upon a right protected by the Second Amendment; and (2) even in the context of actual "arms," the NFA's making requirements survive intermediate scrutiny. *See supra* Part IV.2.a. For those same reasons, Plaintiffs' claims fail on the merits as a matter of law.

V.      **CONCLUSION**

For the foregoing reasons, this case should be dismissed.

25

DATED: June 15, 2022                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General
                                        Civil Division

                                        LESLEY FARBY
                                        Assistant Branch Director

                                        */s/ Emily B. Nestler*
                                        EMILY B. NESTLER (D.C. Bar # 973886)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, D.C. 20005
                                        Tel: (202) 616-0167
                                        Email: emily.b.nestler@usdoj.gov

                                        *Counsel for Defendant*

26

## <u>CERTIFICATE OF SERVICE</u>

On June 15, 2022, I electronically submitted the foregoing with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Emily B. Nestler*

EMILY B. NESTLER