IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KEN PAXTON, in his official capacity as Attorney General of Texas, DAVID SCHNITZ, TRACY MARTIN, and FLOICE ALLEN,<br>    *Plaintiffs,*<br><br>vs.<br><br>STEVEN M. DETTELBACH, in his official Capacity as Director, Bureau of Alcohol, Tobacco, Firearms and Explosives, and<br>MERRICK B. GARLAND, in his official Capacity as Attorney General of the United States,<br>    *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4:22-cv-00143-P |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

EMILY B. NESTLER (D.C. Bar # 973886)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0167
Email: emily.b.nestler@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

I. The Anti-Injunction Act Bars All of Plaintiffs' Claims ........................................................... 2

    A. This Case Should be Dismissed in Its Entirety Because It Seeks to Enjoin the Collection and Assessment of a Tax ................................................................. 2

    B. The AIA Bars this Suit Regardless of whether Some Applications May Be Denied ........................................................................................................................ 4

    C. The *Enochs* Exception to the AIA Is Narrow and Does Not Apply ....................... 5

        1. At a Minimum, There Are Circumstances under which the Government Can Prevail ................................................................................ 5

        2. Equity Jurisdiction Is Not Implicated ............................................................ 7

II. Texas Should be Dismissed from this Case because It Lacks Standing ................................ 9

    A. If This Case Proceeds, the Court Must Determine Whether Texas Has Standing ..................................................................................................................... 9

    B. Texas Lacks Standing ............................................................................................. 10

III. Conclusion .............................................................................................................................. 10

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Alfred L. Snapp & Son, Inc.*,
  458 U.S. 592 (1982) ................................................................................................10

*Bd. of Trs. of State Univ. of New York. v. Fox*,
  492 U.S. 469 (1989) ..................................................................................................9

*Bob Jones Univ. v. Simon*,
  416 U.S. 725 (1974) ..................................................................................................5

*CIC Servs., LLC v. IRS*,
  141 S. Ct. 1582 (2021) ..........................................................................................2, 3

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. Unit B 1981) .........................................................................8

*Enochs v. Williams Packing & Navigation Co.*,
  370 U.S. 1 (1962) .................................................................................................1, 5

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ....................................................................................6

*Jackson v. City and Cnty. of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ....................................................................................6

*Kemlon Prods & Dev. Co. v. United States.*,
  638 F.2d 1315 (5th Cir. 1981) ...........................................................................5, 6, 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................4

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ................................................................................................10

*Murdock v. Pennsylvania*,
  319 U.S. 105 (1943) ..................................................................................................7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ..................................................................................................4

*New York State Rifle & Pistol Association v. Bruen*,
  142 S. Ct. 2111 (2022) ..........................................................................................5, 6

*Sonzinsky v. U.S.*,
  300 U.S. 506 (1937) ..............................................................................................2, 4

*Thompson/Center Arms Co. v. Baker*,
  686 F. Supp. 38 (D.N.H. 1988) ................................................................................................. 5

*Tineo v. Att'y General*,
  937 F.3d 200 (3d Cir. 2019) ..................................................................................................... 10

*Town of Chester N.Y. v. Laroe Ests., Inc*,
  137 S Ct. 1645 (2017) ................................................................................................................ 9

*United States v. Am. Friends Serv. Comm.*,
  419 U.S. 7 (1974) ........................................................................................................................ 8

*United States v. Cox*,
  906 F.3d 1170 (10th Cir. 2018) ........................................................................................... 2, 6

*United States v. One Palmetto State Armory*,
  115 F. Supp. 3d 544 (E.D. Pa. 2015) ...................................................................................... 9

## Statutes

5 U.S.C. § 706 ...................................................................................................................................... 7

26 U.S.C. § 5822 .................................................................................................................................. 7

26 U.S.C. § 7421 ............................................................................................................................. 1, 4

## Rules

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................... 10

The Anti-Injunction Act (the "AIA"), 26 U.S.C. § 7421, provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." In direct contravention of the AIA, the sole purpose of this case is to enjoin the National Firearms Act (the "NFA"), which sets forth the tax scheme associated with making firearms suppressors. Plaintiffs do not dispute that the NFA is a taxing statute, nor could they. The statute requires any person who intends to make a firearm suppressor to pay a $200 tax, and imposes application and registration requirements for the purpose of implementing that tax. Thus, contrary to Plaintiffs' assertions, each step of this integrated scheme is a tax obligation that is covered by the AIA.

Plaintiffs try to shift focus from the AIA's jurisdictional bar to the merits of their Second Amendment claims. Purportedly invoking the narrow exception to the AIA set forth in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962), Plaintiffs expound on their Second Amendment theories, and insist they are entitled to develop a full record on those claims before the Court can dismiss. On the contrary, the whole point of the AIA is to eliminate jurisdiction over those claims in the first place. For that reason, under *Enochs*, a preenforcement challenge to a tax obligation can only proceed if, *inter alia*, Plaintiffs meet their burden to demonstrate virtual certainty of success on the merits based on the information available at that time. *Id.* at 7. Plaintiffs cannot come close to meeting that high bar, where (among other things) every court to consider the issue has held that the Second Amendment does not apply to suppressors at all.

Finally, even if this case is allowed to proceed, Texas should be dismissed for lack of standing. At most, Texas asserts a generalized interest in promoting its policy favoring firearms suppressors, which is insufficient to establish Article III standing. And the Court cannot ignore Texas's lack of standing, as Plaintiffs suggest. Texas's presence in this lawsuit directly impacts the scope of any potential relief, which should be limited to the Individual Plaintiffs once Texas is properly dismissed.

Accordingly, Plaintiffs' Motion to Dismiss should be granted.

1

**I.      The Anti-Injunction Act Bars All of Plaintiffs' Claims**

      A.    <u>This Case Should be Dismissed in Its Entirety Because It Seeks to Enjoin the Collection and Assessment of a Tax</u>

All of Plaintiffs' claims are foreclosed by the AIA, which bars suits against a tax obligation regardless of whether the "tax in question is a so-called regulatory tax—that is, a tax designed mainly to influence private conduct, rather than to raise revenue." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1593 (2021). The AIA also extends beyond claims targeting the specific act of paying a levy, and encompasses requests for an injunction aimed at "collection or assessment of [that] tax." *Id.* at 1590.

Plaintiffs concede that the AIA applies to the NFA's $200 tax. Pls.' Opp. at 21. Yet, they insist the statutory mechanisms for collecting and assessing that tax can be separately enjoined. *Id.* That is incorrect. The challenged requirements—all of which are set forth in the NFA itself—together make up the statute's integrated "taxing scheme." *United States v. Cox*, 906 F.3d 1170, 1179 & n.12 (10th Cir. 2018); *see also Sonzinsky v. U.S.*, 300 U.S. 506, 513 (1937). As detailed in Defendants' motion, the NFA's application process is the regulatory mechanism used to implement the statute's excise tax. Defs.' Mot. at 11. And both the Supreme Court and the Fifth Circuit have repeatedly recognized that the NFA's registration and marking requirements are "part of the web of regulation aiding enforcement of the [NFA's] tax provision." *Id.* at 13. Plaintiffs do not address this caselaw, all of which makes clear that the NFA's application and registration requirements are tax obligations and thus subject to the AIA.

Instead, Plaintiffs incorrectly argue that "[a]fter *CIC Services*, the AIA does not bar injunctions against firearm suppressor application, registration, and serial-number requirements because they are not 'tax obligations' or 'the collection or assessment of [a] tax." Pls.' Opp. at 24. On the contrary, *CIC* did not address the NFA or even excise taxes more broadly, nor does it call into question application of the AIA to the NFA's integrated tax scheme. Rather, *CIC* held that the AIA did not apply to a "standalone reporting requirement" that operated independently from any tax. 141 S. Ct. at 1594. Specifically, *CIC* considered whether the AIA barred suit challenging an IRS rule that required

2

reporting micro-captive transactions, on the basis that failure to comply with that rule could be penalized through civil monetary tax penalties and/or criminal penalties. *Id.* at 1587. Notably, CIC had sought to set aside the IRS's reporting rule, but did not raise any legal claim against the downstream tax penalty that served as just one enforcement option. *Id.* at 1590. The Court, thus, held that CIC's suit fell outside the AIA because the requested injunction did not "run against a tax at all." *Id.* at 1593. Rather, the tax penalty in *CIC* functioned only as a potential "sanction for noncompliance" with the independent reporting obligation. *Id.* at 1594. In other words, the AIA did not apply to the "standalone reporting requirement," because it was too attenuated from the separate statutory tax. *Id.*; *see also id.* at 1593 ("[T]h[is] suit contests, and seeks relief from, a separate legal mandate; the tax appears on the scene—as criminal penalties do too—only to sanction that mandate's violation.").

By contrast, here, the NFA directly levies a tax, which flows directly from the statute's application requirement; and the NFA's tax is not a penalty, but rather is an excise tax that is assessed upon a person's *compliance* with the requisite process. It is thus unsurprising that, unlike *CIC*, Plaintiffs in this case have directly challenged the *entire* NFA tax scheme—including the NFA's $200 tax payment—since the scheme's requirements are obviously an integrated set of tax obligations. *CIC* expressly contemplated that the AIA would continue to apply under these circumstances. Cautioning against any "overstate[ment]" as to "the possible consequences" of its ruling, the *CIC* Court explained that had the challenged law "imposed a tax on micro-captive transactions themselves—and had CIC then brought a pre-enforcement suit to prevent the IRS from applying that tax—the Anti-Injunction Act would have kicked in." *Id.* at 1594. The Court also made clear that a "legal rule at issue is a tax provision" to which the AIA applies when "[t]he tax does not backstop the violation of another law" and instead "imposes a cost on perfectly legal behavior." *Id.* at 1593. Both of those distinct

3

characteristics—which are hallmarks of AIA-covered tax obligations—are present in the instant case.[1]

B. The AIA Bars this Suit Regardless of whether Some Applications May Be Denied

Alternatively, Plaintiffs argue that the AIA does not apply to its challenge against the NFA's application requirement (Count I) in circumstances where an application is denied. Pls.' Opp. at 21. As a threshold matter, no Plaintiff has alleged that they applied to pay the $200 tax and make a firearm suppressor, much less that their application has been denied. Thus, Plaintiffs lack standing to bring an as-applied challenge on that basis, and any claim based on such circumstances is not properly before the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (claim is not ripe for judicial interference "until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."); *see also infra* Part II.A (explaining that as-applied challenges are limited to plaintiffs' particularized harms).[2]

In any event, the AIA bars suit for the purpose of restraining "the assessment *or* collection of any tax." 26 U.S.C. § 7421(a) (emphasis added). Enjoining the NFA's application requirement would restrain the assessment of the statutory tax that flows from the application process—regardless of whether Defendants' ultimate assessment is that no tax is owed.[3] Thus, the only court to consider

---

[1] *CIC*'s explanation of what constitutes a "tax obligation" (versus what does not) is consistent with the Supreme Court's ruling that the NFA's requirements are a tax scheme. *In Sonzinsky,* the Court held the NFA is a tax statute that regulates only "in aid of a revenue purpose." 300 U.S. at 511-13. The Court distinguished the NFA from cases where "the [challenged] statute contain[ed] regulatory provisions related to a purported tax in such a way . . . that the latter [wa]s a penalty resorted to as a means of enforcing the regulations." *Id.* at 513.

[2] Plaintiffs have not pled that the NFA's application requirement is unconstitutional only as applied to denials. Count I of the Complaint broadly seeks to "enjoin the enforcement of federal law requiring Texans to apply for and receive permission to make firearm suppressors for non-commercial, personal use in Texas."

[3] ATF's assessment process is not "an effort to deny applications and *not* collect taxes." Pls.' Opp. at 22-23. Rather, ATF has a statutory obligation to determine whether each application meets the statutory requirements and/or whether additional information is necessary—that is how it determines whether the tax is owed. *See* Defs.' Mot. at 4; *see also infra* Part I.C.1. While Plaintiff may disagree with how ATF conducts its assessment process, that does not make the process any less of a tax obligation.

4

whether the AIA bars challenges to the NFA's tax scheme (including its application requirement) held that it did. *See Thompson/Center Arms Co. v. Baker*, 686 F. Supp. 38 (D.N.H. 1988).

   C.  <u>The *Enochs* Exception to the AIA Is Narrow and Does Not Apply</u>

The *Enochs* exception to the AIA does not apply here. Under *Enochs*, a pre-enforcement injunction against the assessment or collection of a tax may be granted only if two requirements are *both* met: (1) "if it is clear that under no circumstances could the Government ultimately prevail"; *and* (2) "if equity jurisdiction otherwise exists." 370 U.S. 1 at 7. Plaintiffs' claims fail at both steps.

    1.  *At a Minimum, There Are Circumstances under which the Government Can Prevail*

Under *Enochs*, the AIA applies unless "it is clear that under no circumstances could the government ultimately prevail." *Id.* To make this determination, the Court must give the United States the benefit of the "most liberal view of the law and the facts." *Kemlon Prods & Dev. Co. v. United States.*, 638 F.2d 1315, 1321 (5th Cir. 1981). In other words, Plaintiffs' Second Amendment claims need only be "sufficiently debatable to foreclose any notion that 'under no circumstances could the [United States] ultimately prevail.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 749 (1974). Rather than grapple with this high bar, Plaintiffs turn *Enochs* on its head, arguing that "*on this record*, Defendants have no chance of ultimately prevailing" because "establishing a 'historical tradition of firearm regulation' is a tall order." Pls.' Opp. at 8 (emphasis added). But, under *Enochs*, Defendants do not have the "burden" of establishing a full record refuting Plaintiffs' claims on the merits. *Id.* at 18-19. Rather, Plaintiffs have the burden of proving "certainty of success on the merits" based on the information available at this time. *Bob Jones Univ.*, 416 U.S. at 737 (citing *Enochs*, 370 U.S. at 6-7). Plaintiffs have not come close to meeting that high threshold for several reasons.

First, unanimous precedent holds that the Second Amendment does not apply to suppressors, based on the text and history of the Second Amendment. *Id.* at 14. Nothing in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), calls those decisions into question, since they

5

functionally apply the same text-and-history standard as *Bruen. Id.* This overwhelming precedent, in and of itself, forecloses application of the *Enochs* exception to Plaintiffs' claims—which requires the Court to apply "the most liberal view of the law." *Kemlon*, 638 F.2d at 1321.[4]

Second, even if the Second Amendment applied to suppressors, Plaintiffs' claim that the NFA's tax scheme is inconsistent "with this Nation's historical tradition of firearm regulation" is questionable at best. Pls.' Opp. at 19 (quoting *Bruen*, 142 S. Ct. 523). The NFA is a longstanding tax statute that has been repeatedly upheld under Congress's taxing power in the face of Second Amendment challenges. Defs.,' Mot. at 15. By contrast, Plaintiffs do not, and cannot, cite a single case holding that the NFA's making requirements are unconstitutional based on the Second Amendment or on any other basis.[5] To be sure, no court has yet had the opportunity to consider the NFA based on *Bruen*. But, absent any intervening caselaw, any question as to whether *Bruen* alters that century of precedent is, at a minimum, "sufficiently debatable" under the "most liberal view of the law."

Third, there is no merit, much less certainty of success, as to Plaintiffs' claim that ATF is

---

[4] Contrary to Plaintiffs' assertion, *Bruen* did not render "[o]pinions discussing whether firearm suppressors are themselves 'arms' [] irrelevant," merely because it referenced situations in which "the Second Amendment's plain text covers an individual's *conduct*." Pls.' Opp. at 8 (emphasis added). On the contrary, *Bruen* made clear that meaning of the term "arms" remains central, reiterating that "the Second Amendment's definition of 'arms' is fixed according to its historical understanding." *Bruen*, 142 S. Ct. at 2132. Consistent with that standard, courts have rightly held that suppressors fall squarely outside the historical definition of "arms." *See, e.g.*, *Cox*, 906 F.3d at 1186 ("An instrument need not have existed at the time of the founding to fall within the amendment's ambit, but it must fit the founding-era definition of an 'Arm[].'"). The only conduct at issue in this case is making suppressors. There is no right to make an item that is not covered by the Second Amendment in the first place.

[5] Instead, Plaintiffs attempt to draw an inapt comparison between making suppressors and "when one goes to a firing range" or "when one uses ammunition." Pls.' Opp. at 10. But, unlike suppressors, the Seventh Circuit found that protection of the right to target practice (and by extension access to a firing range) had a historical basis in the Second Amendment. *See Ezell v. City of Chicago*, 651 F.3d 684, 705 (7th Cir. 2011). And the Ninth Circuit held the Second Amendment covered ammunition because, unlike a restriction on making suppressors, "[a] regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." *Jackson v. City and Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). By contrast, every court to apply this same standard to suppressors reached the opposite conclusion. *See* Defs.' Mot. at 14.

6

putting the NFA's tax scheme "to abusive ends" by "failing to approve or *deny* []applications." Pls.' Opp. at 13. As alleged in Plaintiffs' own Complaint, ATF is not arbitrarily delaying applications, but rather seeking additional information when necessary. Compl. ¶ 81. ATF's request for additional information is wholly consistent with the NFA's requirement that "[a]pplications [to make firearms] shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." 26 U.S.C. § 5822. In situations where it is unclear whether a particular application can be approved or denied in accordance with that statutory requirement, it is reasonable (indeed necessary) for ATF to seek additional information in order to complete the requisite process. Defs.' Mot. at 4.[6] In any event, because none of the Plaintiffs in this case have alleged that they filed an application to make a suppressor, much less that ATF has delayed their application and/or sought additional information from them in a manner that violated their Second Amendment rights, such claims are not properly before this Court. *See supra* Part I.B.[7]

    2.  *Equity Jurisdiction Is Not Implicated*

Because Plaintiff is unable to demonstrate that "under no circumstances" will the government succeed on the merits, Plaintiff cannot invoke the *Enochs* exception and the Court's inquiry can stop here. *See Kemlon Prod.*, 638 F.2d at 1321. Still, Plaintiffs also cannot satisfy the second step of *Enochs*, because equity jurisdiction does not exist here regardless.

---

[6] Plaintiffs devote several pages to opining on whether ATF's process of seeking additional information for its review of NFA applications exceeds the agency's statutory and regulatory authority. Pls.' Opp. at 15-17. Plaintiffs have not brought any claims challenging Defendants' interpretation of the NFA under the Administrative Procedure Act, which would be the appropriate vehicle for such claims. *See* 5 U.S.C. § 706(2)(C). Because this case only raises Second Amendment challenges to the NFA's tax scheme, that discussion in Plaintiff's brief is irrelevant to the claims at hand.

[7] Plaintiffs also reassert the same faulty arguments based on *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), set forth in their Complaint. For the reasons set forth in Defendants' Motion, *Murdock* does not establish a "per se" rule that the government cannot tax the exercise of Second Amendment rights. Defs.' Opp. at 16. Some courts have held that *Murdock* does not apply to the Second Amendment at all, and others have upheld Second Amendment restrictions despite applying the *Murdock* standard. *Id.*

7

First, Plaintiffs argue they suffer irreparable harm "in the form of time lost" exercising their Second Amendment rights. Pls.' Opp. at 6. As discussed above, because the Second Amendment does not apply, no constitutional rights are implicated. But, in any event, the Supreme Court has repeatedly made clear that "the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." *United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 15 (1974); *see also* Defs.' Mot. at 17.

Plaintiffs' reliance on First Amendment jurisprudence for this point is misplaced. Contrary to their assertions, it is not "well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury" *for purposes of the AIA*. Pls.' Opp. at 6 (quoting *Deerfield Med. Ctr.*, 661 F.2d 328, 338 (5th Cir. 1981)).[8] On the contrary, the Supreme Court rejected that very argument in *American Friends*, 419 U.S. 7 (1974). There, a Quaker group sought to enjoin collection of certain taxes while they litigated whether those taxes were due at all. The plaintiffs argued that the AIA should not apply because jurisdiction was necessary to prevent irreparable harm to their First Amendment rights—*i.e.*, because the act of paying the tax at the outset (as opposed to withholding the taxes as a form of religious protest), in and of itself foreclosed plaintiffs' ability to freely express their opposition to war in any form. *American Friends* recognized that forcing plaintiffs to pay the taxes up front "may frustrate their chosen method of bearing witness to their religious convictions, a chosen method which they insist is constitutionally protected," but held that "[d]ecisions of this Court make it unmistakably clear" that the AIA barred the suit even though delay could cause permanent loss of First Amendment rights. *Id.* at 11 For the same reasons, the constitutional nature of Plaintiffs' underlying Second Amendment claims here cannot remove the AIA's bar.

---

[8] *Deerfield Medical Center* addressed the irreparable harm prong of the preliminary injunction standard in a case challenging an abortion restriction. 661 F.2d at 338. It had nothing to do with the AIA or the Second Amendment.

8

Second, Plaintiffs do not lack alternative means to litigate their claims. *See* Pls.' Opp. at 7. As previously explained, Plaintiffs can employ the appropriate administrative procedure, which is to file a claim for refund *after* submitting an application and paying the applicable tax within the limitations period, and then to challenge the result in court, if necessary. Defs.' Mot. at 18. Alternatively, in the event Plaintiffs' applications were denied (which has not happened), they could file a lawsuit challenging the denial at that time, once they have exhausted the requisite administrative process. *Id.* at 18 n.14; *see, e.g.*, *United States v. One Palmetto State Armory*, 115 F. Supp. 3d 544, 577 (E.D. Pa. 2015) (holding firearms maker had standing to challenge denial of NFA application to make a firearm).

## II. Texas Should be Dismissed from this Case because It Lacks Standing

### A. If This Case Proceeds, the Court Must Determine Whether Texas Has Standing

As set forth above, this suit should be dismissed in its entirety. But, if this case goes forward, the Court must consider Texas's lack of standing. Plaintiffs argue that if "at least one plaintiff has standing, [the court] need not consider whether the remaining plaintiffs have standing to maintain the suit." Pls.' Opp. at 24. But, that general rule does not apply where inclusion of a party without standing would alter the scope of available relief. The Supreme Court has made clear that "standing is not dispensed in gross." *Town of Chester N.Y. v. Laroe Ests., Inc,*, 137 S Ct. 1645, 1650 (2017). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* And "[t]he same principle applies when there are multiple plaintiffs. At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Id.* at 1651.

Plaintiffs challenge the NFA's requirements as-applied in Texas, and seek to enjoin those requirements statewide. *See* Compl., Counts I-IV & Prayer for Relief. Only Texas—not the Individual Plaintiffs—could conceivably have standing to seek a statewide injunction in this case. This is because an as-applied claimant asserts only that "*the acts of his that are the subject of the litigation fall outside what a properly drawn prohibition could cover.*" *Bd. of Trs. of State Univ. of New York. v. Fox*, 492 U.S. 469, 482 (1989)

9

(italics in original); *see also Tineo v. Att'y General*, 937 F.3d 200, 210 (3d Cir. 2019) (as-applied challenge turns on plaintiff's "particular circumstances at hand"). Thus, without Texas as a party, any relief would necessarily be limited to an injunction preventing application of the NFA's requirements to the Individual Plaintiffs. Under these circumstances, Texas's lack of standing cannot be ignored.

    B.    <u>Texas Lacks Standing</u>

As detailed in Defendants' motion, the Complaint fails to articulate any "legally protected" State interest that is harmed, much less a "concrete and particularized injury." Defs.' Mot. at 21-25. In its response, Texas merely reiterates its "quasi-sovereign interest in the health and well being—both physical and economic of its residents in general." Pls.' Opp. at 24 (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. 592, 607 (1982)). Texas does not acknowledge that the language it quotes from *Alfred L. Snapp* addressed *parens patriae* standing, or the fact that the Supreme Court made explicit in the same case that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." 458 U.S. 610 n.16. While Texas states in a conclusory fashion that it "is not trying to protect its citizens from the operation of federal law," Pls.' Opp. at 25, the only purported "health and safety" concern it identifies is an interest in protecting Texans from restraints on their ability to use suppressors—*e.g.*, in "protecting" citizens from enforcement of the NFA by the federal government. *Id.* That is just the type of standing theory proscribed by *Alfred L. Snapp*. In the end, the State concedes that it is suing "to vindicate [its] quasi-sovereign interests in promoting" its "policy in favor of the use of firearms suppressors." *Id.* That abstract assertion of "sovereign interest" is insufficient to establish Article III standing. *See Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923).

**III.    Conclusion**

Accordingly, this case should be dismissed.[9]

---

[9] Plaintiffs did not respond directly to Defendants' Rule 12(b)(6) motion for failure to state a claim. But, for the reasons set forth in Defendants' motion and in Part I.B.1 of this Reply, even if the Court had jurisdiction to hear this case, it should be dismissed for failure to state a claim.

DATED: September 6, 2022      Respectfully submitted,

                BRIAN M. BOYNTON
                Principal Deputy Assistant Attorney General
                Civil Division

                LESLEY FARBY
                Assistant Branch Director

                */s/ Emily B. Nestler*
                EMILY B. NESTLER (D.C. Bar # 973886)
                Trial Attorney
                United States Department of Justice
                Civil Division, Federal Programs Branch
                1100 L Street, NW
                Washington, D.C. 20005
                Tel: (202) 305-0167
                Email: emily.b.nestler@usdoj.gov

                *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On September 6, 2022, I electronically submitted the foregoing with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Emily B. Nestler*

EMILY B. NESTLER