UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KEN PAXTON, in his official capacity as Attorney General of Texas, DAVID SCHNITZ, TRACY MARTIN, and FLOICE ALLEN,<br>  *Plaintiffs*, | § § § § § § § | |
| vs. | § § | Civil Action No. 4:22-cv-00143-P |
| STEVEN M. DETTELBACH, in his Official Capacity as Director, Bureau of Alcohol, Tobacco, Firearms and Explosives, and MERRICK B. GARLAND, in his Official Capacity as Attorney General of the United States,<br>  *Defendants*. | § § § § § § § § | |

**PLAINTIFFS' OBJECTION TO THE COURT'S ORDER
FOR A DISPOSITIVE BRIEFING SCHEDULE**

On October 5, the Court issued an Order stating, "The issues before the Court are seemingly comprised of only questions of law and there does not appear to be any disputed factual matters or a need for factual discovery." Plaintiffs respectfully disagree with the Court's assessment for three reasons.

**1.  There is a fact dispute about whether firearm suppressors are "dangerous and unusual" and whether they are in "common use."**

In *Bruen*, the Supreme Court held that individuals have a Second Amendment right "to keep and bear arms for self-defense," that the Constitution presumptively protects conduct covered by that right, and that regulations of such conduct are unconstitutional unless "the

government [] demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). It also recognized a historical tradition of regulating "dangerous and unusual" weapons, while also holding that the tradition "provide[s] no justification for laws restricting the public carry of weapons that are unquestionably in common use today." 142 S. Ct. at 2143. Plaintiffs' allegations and Defendants' answers thereto demonstrate that there is a fact dispute about whether firearm suppressors are "dangerous and unusual" and whether they are in "common use."

Plaintiffs allege, "There is a historical tradition of prohibiting the carrying of dangerous and unusual weapons, [*Bruen*] at 2128, but firearm suppressors are neither dangerous nor unusual. They are in 'common use,' and therefore the Second Amendment protects their possession and use. *Id.*" Plaintiffs' Second Amended Complaint ("Complaint") at ¶ 4. Defendants answer, "The allegations in this paragraph consist of legal conclusions to which no response is required. Moreover, to the extent the allegations in this paragraph are characterizations of case law, specifically *Bruen*, 142 S. Ct. at 2111, that case speaks for itself and is the best evidence of its content. To the extent a response is deemed required, Defendants deny any allegation that is inconsistent with *Bruen* or with or other law governing this matter." Defendants' Answer ("Answer") at ¶ 4. Thus, Defendants neither admit nor deny that that firearm suppressors are not "dangerous and unusual" and are in "common use."

Plaintiffs allege that "there has never been a public-safety justification or any other legitimate justification for regulating the making of firearm suppressors for non-commercial,

2

personal use. Firearm suppressors are not dangerous and are not often used in crimes." Complaint at ¶ 6. Defendants deny those allegations. Answer at ¶ 6.

Plaintiffs allege, "Firearm suppressors should not be regulated at all because they are widely accepted and very infrequently used in criminal activity." Complaint at ¶ 39. Defendants deny that allegation. Answer at ¶ 39.

Plaintiffs allege, "Firearm suppressors are not dangerous." Complaint at ¶ 40. Defendants deny that allegation. Answer at ¶ 40.

Plaintiffs allege, "In addition to reducing noise, firearm suppressors also reduce recoil, allowing shooters better control over their weapon and leading to improved accuracy and better shot placement." Complaint at ¶ 40. Defendants "admit that suppressors may reduce noise and/or recoil." Answer at ¶ 40. Defendants also state that they "lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that sentence." *Id.* Thus, Defendants, one of whom is charged with regulating firearm suppressors, claim not to know whether firearm suppressors "allow[] shooters better control over their weapon and leading to improved accuracy and better shot placement."

Plaintiffs allege, "On information and belief, use of firearms suppressors by police and the military has become increasingly common as a means to increase safety." Complaint at ¶ 41. Defendants answer, "This paragraph consists of irrelevant factual assertions, to which no response is required. Moreover, the term 'common' is vague and undefined, and thus Defendant is unable to respond regarding that descriptor. To the extent a response is deemed required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph." Answer at ¶ 41.

Plaintiffs allege, "There are over 2.6 million firearm suppressors registered in the United States, including over 500,000 registered in Texas. BATFE, Firearms Commerce in the United States, Annual Statistical Update 2021, at 16. They are legal to possess in 42 states, including Texas. Firearms Law and the Second Amendment at 600." Complaint at ¶ 43. Defendants admit that allegation. Answer at ¶ 43. Yet Defendants fail to admit that firearm suppressors are in "common use." Answer at ¶ 4.

Plaintiffs allege, "Firearm suppressors are not dangerous and were not regulated at all for the first several decades after their invention. The regulations of private making of firearm suppressors post-date their invention by more than five decades." Complaint at ¶ 124. Defendants answer, "To the extent this paragraph assumes the date of suppressors' invention, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. The remainder of this paragraph is denied." Answer at ¶ 124. Thus, Defendants, one of whom is charged with regulating firearm suppressors, claim not to know when firearm suppressors were invented and claim not to know how long after their invention they were first regulated. And Defendants also deny the allegation: "Firearm suppressors are not dangerous."

Plaintiffs allege, "Firearm suppressors are widely accepted and very infrequently used in criminal activity. They are commonly used by law enforcement, the military, and citizens." Complaint at ¶ 125. Defendants deny that firearm suppressors are very infrequently used in criminal activity. Answer at ¶125.

These allegations and answers demonstrate that there is a fact dispute about whether firearm suppressors are "dangerous and unusual" and whether they are in "common use." Both of those issues are relevant to this case under *Bruen*. Defendants may argue either that firearm

4

suppressor are "dangerous and unusual," are not in "common use," or both. Discovery is needed on those issues.

2. **There is a fact dispute about whether there is a historical tradition of regulating the making of firearm suppressors for non-commercial, personal use in Texas in the ways that federal law regulates it.**

Again, in *Bruen*, the Supreme Court held that individuals have a Second Amendment right "to keep and bear arms for self-defense," that the Constitution presumptively protects conduct covered by that right, and that regulations of such conduct are unconstitutional unless "the government [] demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Plaintiffs' allegations and Defendants' answers thereto demonstrate that there is a fact dispute about whether there is a historical tradition of regulating the making of firearm suppressors for non-commercial, personal use in Texas in the ways that federal law regulates it.

Plaintiffs allege, "There is no historical tradition that can justify regulation of making firearm suppressors for non-commercial, personal use in Texas—including requirements that citizens ask permission before making a firearm suppressor, pay a $200 tax, place a serial number on the firearm suppressor, and register it." Complaint at ¶ 5. Defendants answer, "The allegations in this paragraph consist of legal conclusions to which no response is required. To the extent a response is deemed required, this paragraph is denied." Answer at ¶ 5.

Plaintiffs allege, "Contrary to the prerequisites recognized in *Bruen*, there is no historical tradition of requiring advance permission to exercise a constitutional right." Complaint at ¶ 9. Defendants answer, "The allegations in this paragraph consist of legal conclusions to which no response is required. Moreover, to the extent the allegations in this paragraph characterize case law, specifically *Bruen*, 142 S. Ct. at 2111, that case speaks for itself and is the best evidence of its

content. To the extent a response is deemed required, Defendants deny any allegation that is inconsistent with *Bruen* or other law governing this matter." Answer at ¶ 9. Thus, Defendants neither admit nor deny that "there is no historical tradition of requiring advance permission to exercise a constitutional right."

Plaintiffs allege, "Nor is there any historical tradition of requiring registration of firearm suppressors, or the placement of serial numbers on firearm suppressors, made for non-commercial, personal use, so statutes and regulations requiring such registration and serial numbers are unconstitutional under *Bruen*." Complaint at ¶ 11. Defendants answer, "The allegations in this paragraph consist of legal conclusions to which no response is required. Moreover, to the extent this paragraph characterizes case law, specifically *Bruen*, 142 S. Ct. at 2111, that case speaks for itself and is the best evidence of its content. To the extent a response is deemed required, Defendants deny any allegation that is inconsistent with *Bruen* or other law governing this matter." Answer at ¶ 11.

Plaintiffs allege, "Possessing firearm suppressors is legal, but taxing and regulating the making of firearm suppressors in Texas for non-commercial, personal use in Texas has no historical predicate." Complaint at ¶ 123. Defendants answer, "Defendants admit that possessing firearm suppressors is legal in some states, under circumstances in which the possessor of a firearm suppressor satisfies the applicable federal and state laws associated therewith. With respect to the remaining allegations in this paragraph, denied." Answer at ¶ 123. Thus, Defendants deny that "taxing and regulating the making of firearm suppressors in Texas for non-commercial, personal use in Texas has no historical predicate."

6

These allegations and answers demonstrate that there is a fact dispute about whether there is a historical tradition of regulating the making of firearm suppressors for non-commercial, personal use in Texas in the way that federal law does so. That issue is relevant to this case under *Bruen*. Discovery is needed on that issue.

3.  **There is a fact dispute about whether Defendants' permitting scheme is being put to abusive ends.**

In *Bruen*, the Supreme Court held that "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9. Plaintiffs' allegations and Defendants' answers thereto demonstrate that there is a fact dispute about whether Defendants' permitting scheme is being put to abusive ends.

Plaintiffs allege, "The current firearm suppressor permit procedure is unconstitutional because it is being 'put towards abusive ends,' with 'lengthy wait times in processing … applications' and 'exorbitant fees.'" Complaint at ¶ 10. Defendants "deny any allegation that is inconsistent with *Bruen* or other law governing this matter. In addition, [the allegation] is further denied to the extent it contends ATF is abusing the process for firearm suppressor applications or otherwise engaging in that process in an improper or unlawful manner." Answer at ¶ 10.

Plaintiffs allege, "Moreover, the government is also not following its own rules for approving the making of firearm suppressors for non-commercial, personal use." Complaint at ¶ 10. Defendants deny that allegation. Answer at ¶ 10.

Plaintiffs allege, "Without any authority, [Defendants are] requiring applicants to submit '[p]ictures of the parts that you will use to make the silencer,' even though possession of parts

7

intended to be made into a firearm suppressor is illegal without prior approval." Complaint at ¶ 10. Defendants "admit that ATF has requested pictures of parts in connection with Form-1 applications in some circumstances, but Defendants deny that they have done so '[w]ithout any authority.' The remainder of the fourth sentence of this paragraph is a characterization of the NFA, which statute speaks for itself. Accordingly, no response is required." Answer at ¶ 10.

Plaintiffs allege, "It is impossible to legally comply with this unauthorized, illegal, unconstitutional requirement [to submit pictures of parts that will be used to make the silencer], and thus impossible to get approval to make a firearm suppressor for non-commercial, personal use." Complaint at ¶ 10. Defendants deny that allegation. Answer at ¶ 10.

Plaintiffs allege that ATF sent a message to thousands of persons with pending Form 1 applications demanding the following additional information:

- Pictures of the parts that you will use to make the silencer (the pictures should be clear and allow identification of the parts photographed);
- A description of the process you will use to assemble or fabricate the silencer;
- The product, model or kit name, if any, of each device and/or part that you will use to make the silencer; and
- The source from which the parts were obtained, i.e. the name of the store, website, etc.

Complaint at § 81. Defendants further allege, "No statute, regulation, or instruction on the Form 1 requires that applicants provide this 'additional information.'" Complaint at ¶ 82. Defendants answer that ATF sent the message to approximately 1,901 email addresses, Answer at ¶ 81, but "deny that ATF's request for additional information from Form 1 applicants is not authorized by and/or is inconsistent with the NFA and its implementing regulations," Answer at ¶ 82.

Plaintiffs allege, "Moreover, because the NFA at 18 U.S.C. § 921(a)(24) defines 'any part intended only for use in' 'assembling or fabricating a [firearm suppressor]' as a firearm suppressor, Plaintiffs are concerned that compliance with BATFE's request for 'additional information' would require them to incriminate themselves by disclosing possession of parts intended to be used in making the firearm suppressor that is the subject of the application." Complaint at ¶ 83. Defendants answer, "The allegations in the first part of this paragraph characterize the NFA, which statute speaks for itself and is the best evidence of its content. Accordingly, no response to those allegations is required. To the extent a response is deemed required, Defendants deny any allegation that is inconsistent with the NFA, or any other applicable law. With respect to the second part of this paragraph, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Plaintiffs' concerns may be and the nature of any such purported concerns." Answer at ¶ 83. Thus, Defendants, one of whom is charged with regulating firearm suppressors, claim to not know whether requiring would-be makers of firearm suppressors to send ATF pictures of their not-yet-approved (and therefore illegal) parts would be incriminating.

Defendants allege, "BATFE apparently believes that it can extend the application process indefinitely and ask for any 'additional information' it wants. This includes additional information which could be used by BATFE to prosecute Form 1 applicants under the provision of the NFA declaring parts intended to be used to make a firearm suppressor are regulated as if they are already firearm suppressors." Complaint at ¶ 84. Defendants answer, "Defendants deny that ATF extends the application process or seeks any information other than as necessary and appropriate to consider any particular Form 1 application in accordance with the applicable statutory and

9

regulatory framework." That seems to be an admission that Defendants believe that BAFTE "can extend the application process indefinitely and ask for any 'additional information' it wants."

These allegations and answers demonstrate that there is a fact dispute about whether Defendants' permitting scheme is being put to abusive ends. That issue is potentially relevant to this case under *Bruen*. Discovery is needed on that issue.

* * *

For these reasons, Plaintiffs request that the Court allow discovery to proceed, and that the Court not require the parties to file dispositive motions at this time.

Respectfully submitted,

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | */s/ Tony K. McDonald*<br>TONY K. MCDONALD<br>State Bar No. 24083477 |
| BRENT WEBSTER<br>First Assistant Attorney General | GARRETT MCMILLAN<br>State Bar No. 24116747 |
| AARON F. REITZ<br>Deputy Attorney General for Legal Strategy<br>State Bar No. 24105704 | THE LAW OFFICES OF TONY MCDONALD<br>1501 Leander Dr., Suite B2<br>Leander, Texas 78641<br>(512) 200-3608 • fax (815) 550-1292<br>tony@tonymcdonald.com |
| */s/ Charles K. Eldred*<br>CHARLES K. ELDRED<br>Special Counsel for Legal Strategy<br>State Bar No. 00793681 | |
| | WARREN V. NORRED<br>State Bar No. 24045094 |
| OFFICE OF THE ATTORNEY GENERAL OF TEXAS<br>P. O. Box 12548<br>Austin, Texas 78711-2548<br>(512) 936-1706 • fax (512) 320-0167<br>charles.eldred@oag.texas.gov | NORRED LAW, PLLC<br>515 E. Border Street<br>Arlington, Texas 76010<br>(817) 704-3984 • fax (817) 524-6686<br>warren@norredlaw.com |
| ***Attorneys for Ken Paxton,***<br>***Attorney General of Texas*** | ***Attorneys for David Schnitz,***<br>***Tracy Martin, and Floice Allen*** |

11

## CERTIFICATE OF SERVICE

We certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on October 31, 2022.

Emily B. Nestler
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
emily.b.nestler@usdoj.gov

Attorney for Defendants

*/s/ Charles K. Eldred*   */s/ Tony K. McDonald*
Charles K. Eldred      Tony K. McDonald