**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KEN PAXTON, in his official capacity as** | ) | |
| **Attorney General of Texas**, *et al.* | ) | |
| **Plaintiffs,** | ) | Civil Action No. 4:22-cv-00143-P |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STEVEN M. DETTELBACH, in his official** | ) | |
| **Capacity as Director, Bureau of Alcohol** | ) | |
| **Tobacco, Firearms and Explosives**, *et al.*, | **)** | |
| **Defendants**. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE COURT'S ORDER FOR A DISPOSITIVE BRIEFING SCHEDULE

The Court already recognized that the issues in this case "are seemingly comprised of only questions of law" and ordered the parties to submit a proposed briefing schedule for dispositive motions. ECF 34 ("Scheduling Order"). The parties agreed on a proposed summary judgment schedule. ECF 39. However, Plaintiffs also filed an objection to the Court's Scheduling Order, expressing their disagreement with the Court's conclusion that discovery is unnecessary. ECF 40, Pls' Objection to the Court's Order ("Pls.' Obj."). Because the Court correctly determined that there is no genuine dispute as to any material fact, this case should proceed directly to summary judgment briefing.

This case raises a Second Amendment challenge to certain provisions of the National Firearms Act ("NFA"), which imposes a tax on the making of firearms suppressors. *See* ECF 21, Sec. Am. Compl. ("Compl."). Resolution of Plaintiffs' claims turns on: (1) whether this Court has jurisdiction to decide this case on the merits, in light of the Anti-Injunction Act and Article III requirements; and (2) if the court reaches the merits, what is the correct interpretation of the Second Amendment as applied to the NFA's requirements for firearms suppressors—*i.e.*, does the Second

Amendment apply to suppressors at all and, if so, is the NFA consistent with the Second Amendment's text and history. *See* ECF 37 at 1-2, Defs.' Ans. ("Ans."). No additional factfinding is necessary to answer either question, and nothing in Plaintiffs' Objection casts doubt on the Court's conclusion that this case turns solely on resolution of legal questions.

## I.      There are No Disputed Issues of Fact Regarding the Jurisdictional Questions

As Defendants previously explained, the Court lacks jurisdiction over this case—both because the Anti-Injunction Act ("AIA") bars lawsuits that seek to enjoin the collection and assessment of a tax, and because Plaintiffs lack standing to raise all or some of their claims. *See* ECF 26 at 8-25 (Defs.' Mot. to Dism.).[1] There are no disputed issues of fact regarding these jurisdictional questions, and Plaintiffs have pointed to none in their Objection. *See* ECF 40.

First, the Court does not need any additional factual information to determine whether Plaintiffs' claims are barred by the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax was assessed." 26 U.S.C. § 7421. It is undisputed that the NFA is a tax statute, and that all of the provisions that Plaintiffs seek to enjoin are part of the NFA. Thus, the key question the Court must resolve on this point is one of law—*i.e.*, whether the AIA extends to the NFA's obligations that serve the collection and assessment of its tax. *See* ECF 26 at 8-13.[2]

---

[1] The Court denied Defendants' motion to dismiss, but it did not decide that motion on the merits. Rather, the Court determined only that "the arguments contained therein are more appropriately raised at the summary judgment stage of proceedings." ECF 33.

[2] Although Plaintiffs have invoked the *Enochs* exception to the AIA, that exception is narrow and does not apply here as a matter of law. *See* ECF 26 at 13-18. Under the *Enochs* exception, the Plaintiffs must show, *inter alia*, that there are "no circumstances" under which the federal government could prevail. *Bob Jones Univ. v. Simon*, 416 U.S. 735, 759 (1974). This high burden does not contemplate full litigation of the merits, much less discovery to explore the merits of a

Second, Defendants have asserted that Texas lacks Article III standing, which also is a threshold issue that presents purely legal questions. The State has not alleged any direct and concrete injury, nor that it is in any immediate danger of such injury. *Id.* at 21. And it is undisputed that the NFA imposes no direct obligations on the State. *Id.* Whether Texas can nonetheless claim standing based on its general "sovereign interests," or in order to protect its citizens, are questions of law that do not require any additional factfinding. *Id.* at 22-25.

Finally, no factfinding is necessary to determine whether the Individual Plaintiffs lack standing to challenge ATF's process for assessing NFA applications. It is undisputed that none of the Individual Plaintiffs have filed an application to make a suppressor, much less that ATF has delayed or denied their applications. ECF No. 30 at 4 (Defs.' Reply in Supp. of Mot. to Dism.). Thus, the only question is whether Plaintiffs have standing to challenge denial of *other* people's NFA applications, or to challenge ATF's process of seeking additional information from *other* applicants in order to make determinations about their pending NFA applications. *See* Ans. at 1 (Third Defense). Whether Plaintiffs can raise those claims, even though they have not been injured by the agency's alleged actions, is a question of law.

## II.     There Are No Material Fact Disputes that Bear on the Merits

Even if the Court determines it has jurisdiction to decide this case on the merits, no discovery is necessary to determine whether the NFA violates the Second Amendment. In

---

case. Indeed, requiring robust litigation of the merits would defeat the purpose of the AIA's jurisdictional bar. *See id.* at 736 (describing the AIA's "principal purpose" as "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference."). That is why, in applying the *Enochs* exception, the Court must give the United States the benefit of "the most liberal view of the law and facts" at that time. *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1321 (5th Cir. 1981). In any event, even if the Court had to delve more deeply into the merits to resolve jurisdictional questions under the AIA, no additional factfinding is necessary for the Court to resolve the merits of this case regardless. *See infra* Part II.

Plaintiffs' own words, their entire case turns on whether making firearm suppressors for personal use "is conduct protected by the Second Amendment" and whether the NFA's regulations "are consistent with the Nation's historical tradition of firearms regulation under *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022)." ECF 31 at 1-2. Interpreting the meaning of the Second Amendment, and applying it to a federal statute, raises quintessential legal questions and nothing more.

While Plaintiffs object to the Court's determination that this case can be decided as a matter of law, they fail to meaningfully explain why additional factfinding is necessary. Plaintiffs' objection nowhere addresses the threshold legal question of whether the Second Amendment even applies to suppressors in the first place. Nor does their objection acknowledge that every court to consider that issue has held as a matter of law that suppressors fall outside the Second Amendment guarantee because they are accessories, "not bearable arms" within the founding-era meaning of that term. *See* ECF 26 at 13. Plaintiffs do not dispute the nature of this unanimous precedent, and merely claim that the legal analysis in those cases was "erroneous." Compl. ¶ 12. In other words, Plaintiffs do not contend that any additional factual development is necessary to address this dispositive question.

Instead, Plaintiffs argue that further factual development is necessary for three other "reasons," all of which are unavailing: (1) to determine whether suppressors are "dangerous and unusual;" (2) to determine if "there is a historical tradition of making firearm suppressors for non-commercial personal use"; and (3) to determine whether Defendants' "permitting scheme is being put to abusive ends." Pls.' Obj. at 1-10. Even assuming Plaintiffs could overcome the myriad threshold hurdles discussed above in order to reach these questions, they have failed to identify any open fact disputes that are material on these topics.

4

*First*, there is no material "fact dispute about whether firearm suppressors are 'dangerous and unusual' and whether they are in 'common use.'" Pl.'s Obj. at 1-4. As Plaintiffs acknowledge, the parties agree that "[t]here are over 2.6 million firearm suppressors registered in the United States, including over 500,000 registered in Texas" and that suppressors "are legal to possess in 42 states, including Texas." *Id.* (citing Compl. ¶ 43 & Ans. ¶ 43). In addition, Defendants admit that suppressors are used by law enforcement, the military, and citizens. Ans. ¶ 125. Similarly, the parties agree about what suppressors actually do in practice—*i.e.*, that they "may reduce noise and/or recoil." Pl.'s Obj. at 3 (citing Compl. ¶ 40 & Ans. ¶ 40).[3]

By contrast, the only material disputes identified by Plaintiffs are questions of law—specifically, whether firearms suppressors are "dangerous and unusual" as opposed to "common" within the meaning of *Bruen* and other Second Amendment jurisprudence, such that the challenged restrictions fall outside the ambit of the Second Amendment. Interpretation and application of that standard is a legal question, as evidenced by the fact that Plaintiffs' own Complaint cites and quotes *Bruen* for this very point. *See, e.g.*, Compl. ¶ 4.[4]

---

[3] The parties appear to agree that suppressors are used in perpetrating some crimes. While Plaintiffs' Complaint attempts to qualify that undisputed fact by stating that suppressors are not used in crimes "often" and that they are "very infrequently used in criminal activity," Pl.'s Obj. at 3 (citing Compl. ¶¶ 6, 40), those vague and undefined terms do not change the fact that suppressors can be used to alter firearms in a manner that has been used to facilitate crimes. In any event, it is not clear how the degree of criminal activity associated with suppressors today could inform the central legal question of whether regulation of suppressors is consistent with the text and history of the Second Amendment.

[4] The only other point of "dispute" identified in this section of Plaintiffs' Objection relates to the date that suppressors were invented—a fact that is not material to the "dangerous and unusual" analysis. Pl.'s Obj. at 4. As explained in their Answer, Defendants lack knowledge or information sufficient to know the exact date when suppressors where invented. *Id.* (quoting Ans. ¶ 124). However, to the extent this were somehow deemed relevant, Defendants admit that suppressors were not invented yet at the time when the Second Amendment was promulgated and that the invention of suppressors predated their federal regulation by some period of time.

*Second*, there is no material "fact dispute about whether there is a historical tradition of regulating the making of firearm suppressors for non-commercial, personal use." Pls.' Obj. at 5-6. On this issue, Plaintiffs point to paragraphs of their Complaint that merely recite the legal standard from Second Amendment cases and that characterize the Supreme Court's decision in *Bruen*. *Id.* Defendants' Answer rightly noted that those allegations are legal conclusions, and thus denied them to the extent they "are inconsistent with *Bruen* and other law governing this matter." *Id.* Even if there is a dispute about the meaning and application of Second Amendment precedent as it relates to suppressors, that is a disagreement of law not fact—and one that the Court can resolve without further factfinding.

*Third*, there is no material "fact dispute about whether Defendants' permitting scheme is being put to abusive ends." Pls.' Obj. at 7-10. Plaintiffs allege that "ATF is abusing the process for firearm suppressor applications" by seeking additional information from applicants under some circumstances, specifically when ATF determines that its application review requires pictures of the parts that will be used to make the suppressor at issue. *Id.*  As a threshold matter, and as discussed *supra* in Part I, even assuming *arguendo* that there was a fact dispute regarding ATF's process for reviewing and evaluating the information in particular Form 1 applications, discovery into those claims still would not be necessary or appropriate because those claims are not properly before this Court. None of the Plaintiffs in this case have alleged that they filed an application to make a suppressor, much less that ATF has delayed or denied their applications in violation of the Second Amendment. *See* ECF No. 30 at 4.[5]

---

[5] To the extent Individual Plaintiffs allege they "are concerned that compliance with BATFE's request for 'additional information' would require them to incriminate themselves by disclosing possession of parts intended to be used in making the firearm suppressor that is the subject of the application," Pls.' Obj. at 9 (quoting Compl. ¶ 83), Plaintiffs have not explained the nature of their concerns. Thus, Defendants reasonably answered that they "lack knowledge or information

In any event, the facts giving rise to this claim are undisputed. As Plaintiffs recognize, Defendants "admit that ATF has requested pictures of parts in connection with Form-1 applications in some circumstances," and that they did so by sending the message quoted in Plaintiffs' Complaint to approximately 1,091 email addresses." Pls.' Obj. at 7-8 (quoting Compl. ¶¶ 10, 81; Ans. ¶¶ 10, 81).[6] Thus, the question is not whether ATF has employed this process, but rather: (1) whether ATF has the *legal* authority to seek that additional information under the NFA and its implementing regulations; and (2) whether the answer to that question somehow alters the Second Amendment analysis put to this Court. Plaintiffs have not identified any factual information that this Court needs in order to make those purely legal determinations.

### III.    CONCLUSION

Accordingly, for the foregoing reasons, the Court should enter a briefing schedule for summary judgment without discovery, as contemplated by the Court's October 5, 2022, Scheduling Order.

---

sufficient to form a belief as the truth of the allegations regarding what Plaintiffs' concerns may be and the nature of any such purported concerns." *Id.* (quoting Ans. ¶ 83). To the extent Plaintiffs wish to expound upon what their concerns may be, Plaintiffs themselves are the ones in possession of that information and, thus, discovery is not necessary in order for them to do that.

[6] As Defendants have explained, ATF is not "failing to approve applications" or arbitrarily requiring additional information in response to some applications. Rather, ATF merely seeks additional information when necessary to complete the requisite NFA process. *See* ECF 26 at 15 n.13. Under the NFA, "[a]pplications [to make firearms] shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law." 26 U.S.C. § 5822. When the information set forth in a particular application leaves unclear whether it can be approved and taxed in accordance with this statutory requirement, ATF may need to request additional information from the applicant in order to complete the process.

DATED: November 7, 2022        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

*/s/ Emily B. Nestler*
EMILY B. NESTLER (D.C. Bar # 973886)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0167
Email: emily.b.nestler@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On November 7, 2022, I electronically submitted the foregoing with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ Emily B. Nestler
EMILY B. NESTLER