# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| KEN PAXTON, in his official capacity as<br>Attorney General of Texas,<br>DAVID SCHNITZ,<br>TRACY MARTIN, and<br>FLOICE ALLEN,<br>    *Plaintiffs,* | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| v. | § | Civil Action No. 4:22-cv-00143-P |
| | § | |
| STEVEN M. DETTELBACH, in his<br>Official Capacity as Director, Bureau of<br>Alcohol, Tobacco, Firearms and Explosives,<br>and<br>MERRICK B. GARLAND, in his<br>Official Capacity as Attorney General<br>of the United States,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

---

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... iii

Introduction ................................................................................................................... 1

Factual and Legal Background ..................................................................................... 2

   I.   Firearm suppressors ............................................................................................. 2

   II.  Federal law ........................................................................................................... 5

      A.   Federal law defines firearm suppressors as "firearms" and regulates them under the NFA. ....................................................................................................................5

      B.   The NFA prohibits Texans from making firearm suppressors for non-commercial, personal use in Texas without first applying for and receiving the approval of BATFE. 6

      C.   The NFA requires Texans who make a suppressor in Texas for non-commercial, personal use in Texas to pay a tax of $200....................................................................12

      D.   All newly made firearm suppressors must be registered—including those made by Texans for non-commercial, personal use in Texas....................................................12

      E.   All firearm suppressors must be marked with an individual serial number—including those made by Texans for non-commercial, personal use in Texas.........................13

      F.   Prohibited acts and penalties for makers of firearm suppressors ...............................13

   III. Parties ............................................................................................................... 14

Procedural History ....................................................................................................... 15

Statement of the Issues ................................................................................................ 16

Standard of Review ...................................................................................................... 16

Argument and Authorities ........................................................................................... 16

   I.   The parties have standing. ................................................................................. 16

      A.   Texas has standing. ....................................................................................................16

      B.   Schnitz, Martin, and Allen have standing. ................................................................17

      C.   If one plaintiff has standing, there is no need to consider whether other plaintiffs have standing. ....................................................................................................................19

   II.  The AIA does not apply to this case. ................................................................ 19

      A.   The AIA does not apply to Counts I, III, and IV. It also does not apply to Count II in the case of a denied application....................................................................................19

      B.   The AIA does not apply to any of the challenged statutes under the *Enochs* exception. 23

1.    Enforcement of the challenged regulations causes irreparable injury...................24

2.    Defendants have no chance of ultimately prevailing...............................................25

III. The challenged statutes are unconstitutional as applied to Texans making firearm suppressors for non-commercial, personal use, and their continued possession of those firearm suppressors......................................................................................................26

A.    Regulation of firearm suppressors is regulation of conduct covered by the Second Amendment. ............................................................................................................28

B.    The challenged statutes are not consistent with the Nation's historical tradition of firearm regulation...................................................................................................31

1.    There is a historical tradition of requiring adults, as members of the militia, to possess firearms. This tradition is inconsistent with restrictions on the right to keep and bear arms....................................................................................................31

2.    Some firearm regulations are part of a historical tradition, but none are analogous to the challenged statutes. ..............................................................................33

C.    *Sonzinsky* does not control this case..............................................................................36

D.    The government may not tax the exercise of a constitutional right.............................36

E.    Last year, Defendants put the application process toward abusive ends....................37

Plaintiffs are Entitled to a Permanent Injunction.........................................................................39

Conclusion ......................................................................................................................................40

Footnote 9 .......................................................................................................................................42

Certificate of Service......................................................................................................................50

# TABLE OF AUTHORITIES

Constitutional Provisions

U.S. Const. amend. II ............................................................................................... passim

Cases

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*,
    141 S. Ct. 2485 (2021) ............................................................................................. 38
*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982) ......................................................................................... 14, 16
*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................................ 39
*Babbitt v. Farm Workers*,
    442 U.S. 289 (1979) ................................................................................................ 18
*CIC Services, LLC v. Internal Revenue Serv.*,
    141 S. Ct. 1582 (2021) ...........................................................................19, 21, 22, 23
*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) .............................................................................. 24, 25
*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ........................................................................................ passim
*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................................ 39
*Enochs v. Williams Packing & Nav. Co.*,
    370 U.S. 1 (1962) ...................................................................................19, 23, 24, 25
*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ................................................................................... 29
*Firearms Policy Coal., Inc. v. McCraw*,
    No. 4:21-CV-1245-P, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022) ..................... 32
*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ..................................................................... 28, 29, 30
*Jackson v. City & City of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ................................................................................... 29
*Jones v. Bonta*,
    34 F.4th 704 (9th Cir. 2022) ................................................................................... 32
*Kemlon Products & Dev. Co. v. United States*,
    638 F.2d 1315 (5th Cir. 1981), modified, 646 F.2d 223 (5th Cir. 1981)................................ 23
*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007) ................................................................................................ 17
*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) ................................................................................................ 17
*McAllen Grace Brethren Church v. Salazar*,
    764 F.3d 465 (5th Cir. 2014) ................................................................................... 19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .................................................................................................. 18
*Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*,
    460 U.S. 575 (1983) ............................................................................................ 29, 37
*Murdock v. Com. of Pennsylvania*,
    319 U.S. 105 (1943) .................................................................................................. 36
*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ...................................................................................... 19, 23, 38
*New York State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ..................................................................................... 29
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022) .................................................................................... passim
*Oakland Tactical Supply, LLC v. Howell Twp., Michigan*,
    No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022) .......................................... 29
*Ocean State Tactical, LLC v. State of Rhode Island*,
    No. 22-CV-246 JJM-PAS, 2022 WL 17721175 (D.R.I. Dec. 14, 2022) .................... 28
*Oregon Firearms Fed'n, Inc. v. Brown*,
    No. 2:22-CV-01815-IM, 2022 WL 17454829 (D. Or. Dec. 6, 2022) ........................ 28
*Perpich v. Dep't of Def.*,
    496 U.S. 334 (1990) .................................................................................................. 32
*Rocky Mountain Gun Owners v. Bd. of Cnty. Commissioners of Boulder Cnty.*,
    No. 122CV02113CNSMEH, 2022 WL 4098998 (D. Colo. Aug. 30, 2022) .............. 28
*Six Dimensions, Inc. v. Perficient, Inc.*,
    969 F.3d 219 (5th Cir. 2020) .................................................................................... 16
*Sonzinsky v. United States*,
    300 U.S. 506 (1937) .................................................................................................. 36
*Steffel v. Thompson*,
    415 U.S. 452 (1974) .................................................................................................. 18
*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .................................................................................................. 18
*United States v. Bolatete*,
    977 F.3d 1022 (11th Cir. 2020) .................................................................................. 3
*United States v. Holton*,
    No. 3:21-CR-0482-B, 2022 WL 16701935 (N.D. Tex. Nov. 3, 2022) ...................... 27
*United States v. Hoover*, No. 321CR22S3MMHMCR,
    2022 WL 10524008 (M.D. Fla. Oct. 18, 2022) ........................................................ 27
*United States v. Miller*,
    307 U.S. 174 (1939) .................................................................................................. 32
*United States v. Price*,
    No. 2:22-CR-00097, 2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022) ..................... 27
*United States v. Rahimi*,
    No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023) ......................................... 1
*United States v. Reyna*,
    No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ........ 27

*United States v. Rush,*
No. 22-CR-40008-JPG, 2023 WL 403774 (S.D. Ill. Jan. 25, 2023) .......................................... 27
*United States v. Syverson,*
90 F.3d 227 (7th Cir. 1996) ........................................................................................................ 2
*United States v. Taylor,*
100 Fed. Appx. 305 (5th Cir. 2004) ........................................................................................... 3
*United States v. Tita,*
No. CR RDB-21-0334, 2022 WL 17850250 (D. Md. Dec. 22, 2022) .......................................... 27

## Statutes

18 U.S.C. § 921(a)(25) ............................................................................................................ 2, 11, 20
18 U.S.C. § 922(k) .............................................................................................................................. 27
26 U.S.C § 5845(a)(7) ........................................................................................................................... 2
26 U.S.C. § 5821(a) ............................................................................................................................. 12
26 U.S.C. § 5821(b) ............................................................................................................................. 12
26 U.S.C. § 5821(c) ............................................................................................................................. 12
26 U.S.C. § 5822 .............................................................................................................................. 7, 38
26 U.S.C. § 5841(a) ............................................................................................................................. 12
26 U.S.C. § 5841(c) ............................................................................................................................. 13
26 U.S.C. § 5841(e) ............................................................................................................................. 13
26 U.S.C. § 5842(a) ....................................................................................................................... 13, 27
26 U.S.C. § 5842(b) ............................................................................................................................. 27
26 U.S.C. § 5845(a) ............................................................................................................................... 6
26 U.S.C. § 5845(a)(7) ................................................................................................................ 6, 20, 28
26 U.S.C. § 5845(i) ................................................................................................................................ 6
26 U.S.C. § 5845(m) .............................................................................................................................. 6
26 U.S.C. § 5848(a) ............................................................................................................................. 11
26 U.S.C. § 5848(b) ............................................................................................................................. 11
26 U.S.C. § 5861(c) ............................................................................................................................. 14
26 U.S.C. § 5861(d) ....................................................................................................................... 14, 27
26 U.S.C. § 5861(f) .............................................................................................................................. 14
26 U.S.C. § 5861(i) .............................................................................................................................. 14
26 U.S.C. § 5871 ................................................................................................................................. 14
26 U.S.C. § 5872 ................................................................................................................................. 14
26 U.S.C. § 7421 ........................................................................................................... 19, 21, 23, 24
26 U.S.C. § 7801(a)(2)(A)(i) ................................................................................................................. 6
28 U.S.C. § 599A ................................................................................................................................... 6

## Regulations

27 C.F.R. § 479.102 ............................................................................................................................. 13
27 C.F.R. § 479.61 ............................................................................................................................... 12
27 C.F.R. § 479.62(b)(1) ........................................................................................................................ 7
27 C.F.R. § 479.62(b)(2) ........................................................................................................................ 7

27 C.F.R. § 479.62(b)(3) ................................................................................. 8
27 C.F.R. § 479.62(b)(4) ................................................................................. 8
27 C.F.R. § 479.62(b)(5) ................................................................................. 8
27 C.F.R. § 479.62(c) ..................................................................................... 9
27 C.F.R. § 479.62(d) ..................................................................................... 9
27 C.F.R. § 479.63(a) ..................................................................................... 8
27 C.F.R. § 479.64 ................................................................................. passim
27 C.F.R. § 479.65 ......................................................................................... 9
27 C.F.R. § 479.71 ....................................................................................... 13
27 C.F.R. §479.64 ........................................................................................... 7
27 C.F.R.§ 479.62(b)(6) ................................................................................. 8
28 C.F.R. § 0.130(a)(2) ................................................................................... 6

Rules

Fed. R. Civ. P. 56(a) .................................................................................... 16

Other Authorities

Firearms Law and the Second Amendment: Regulation, Rights, and Policy,
    Nicholas J. Johnson, et al. (3rd ed. 2021) ...............................2, 5, 12, 33
Hiram Percy Maxim,
    Alice Clink Schumacher (1998) ............................................................. 2
Stephen P. Halbrook
    *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L.
    Rev. 35 (2016)........................................................................... passim

**TO THE HONORABLE MARK T. PITTMAN, U.S. DISTRICT JUDGE:**

Plaintiffs, Ken Paxton, in his official capacity as Attorney General of Texas, David Schnitz, Tracy Martin, and Floice Allen, file this Brief in Support of their Motion for Summary Judgment, and will respectfully show the Court as follows:

## INTRODUCTION

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) establishes a new test for the constitutionality of firearm regulations. Just four days ago, the Fifth Circuit held that *Bruen* "clearly fundamentally changed our analysis of laws that implicate the Second Amendment, rendering prior precedent obsolete." *United States v. Rahimi*, No. 21-11001, 2023 WL 1459240, at *3 (5th Cir. Feb. 2, 2023) (cleaned up, citation omitted). *Bruen* requires courts to re-evaluate Second Amendment jurisprudence. *Id.* at *1.

The National Firearms Act of 1934 (NFA) was amended in 1968 to regulate (for the first time) the making of firearm suppressors for non-commercial, personal use in Texas. But Defendants cannot demonstrate any historical tradition that can be analogized to any feature of the regulatory regime that applies to the making of firearm suppressors for non-commercial, personal use in Texas. *Bruen*, 142 S. Ct. at 2126. Therefore, the statutes establishing that regulatory regime, and Defendants' rules and practices implementing and enforcing that regulatory regime, are unconstitutional. *See also Rahimi* at *10 (holding that "[t]he Government fails to demonstrate that 18 U.S.C. § 922(g)(8)'s restriction of the Second Amendment right fits within our Nation's historical tradition of firearm regulation…. As a result, § 922(g)(8) falls outside the class of firearm regulations countenanced by the Second Amendment.").

Moreover, Plaintiffs have standing, and the Anti-Injunction Act does not bar injunctive relief. The Court should grant summary judgment in Plaintiffs' favor.

## FACTUAL AND LEGAL BACKGROUND

### I.   Firearm suppressors

Firearm suppressors were invented by Hiram Percy Maxim in the first decade of the 20th century. He also invented the car engine muffler and mufflers for loud factory equipment around the same time. Firearm suppressors and car engine mufflers operate on similar principles. Loud noise results from hot gasses exiting the muzzle of a gun or the exhaust pipe of an automobile. Firearm suppressors and car engine mufflers cause the escaping hot gas to swirl and cool, lowering the volume of the noise. Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 35, 41–42 (2016) ("Halbrook"); FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY, NICHOLAS J. JOHNSON, ET AL., at 557–58 (3rd ed. 2021) ("Firearms Law and the Second Amendment"); HIRAM PERCY MAXIM, ALICE CLINK SCHUMACHER (1998) at 48–53.

"The terms 'firearm silencer' and 'firearm muffler' mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 26 U.S.C § 5845(a)(7); 18 U.S.C. § 921(a)(25).

To "diminish[] the report of a portable firearm" is to make it quieter when fired. *See United States v. Syverson*, 90 F.3d 227, 229 (7th Cir. 1996) (the government "introduced evidence showing that Syverson had knowingly possessed the cylinder and that it could be used to reduce the report of a pistol from 151 decibels to 144.5.").

2

"[T]he term 'silencer' is a misnomer, in that—despite movie fantasies—a noise suppressor reduces decibels, but does not actually 'silence' the discharge of a firearm. Noise may be muffled or diminished, and maybe only by a few decibels at that, but it can still be heard." Halbrook, *supra*, at 36.

"Firearm silencers" or "firearm mufflers" are also commonly known as "firearm suppressors," or simply "suppressors," "silencers," or "mufflers." *See United States v. Bolatete*, 977 F.3d 1022, 1028 (11th Cir. 2020) (referring to "suppressors or silencers (which are the same thing)"); *United States v. Taylor*, 100 Fed. Appx. 305, 307 (5th Cir. 2004) (irrelevant subsequent history omitted) ("Taylor admitted that he had tried to make silencers with the help of a book entitled 'How to Build Practical Firearms Suppressors: an Illustrated Step-by-Step Guide.'"). Plaintiffs will use the term "firearm suppressor" in this Brief, and intend that term to have the same meaning as "suppressor," "firearm silencer," "silencer," "firearm muffler," and "muffler."

Firearm suppressors are widely accepted and very infrequently used in criminal activity. As Ronald Turk, former second in command of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") (the agency responsible for enforcing federal law regulating firearm suppressors) stated in 2017.

In the past several years, opinions about silencers have changed across the United States. Their use to reduce noise at shooting ranges and applications within the sporting and hunting industry are now well recognized. At present, 42 states generally allow silencers to be used for sporting purposes....

While DOJ and ATF have historically not supported removal of items from the NFA [National Firearms Act], the change in public acceptance of silencers arguably indicates that the reason for their inclusion in the NFA is archaic and historical reluctance to removing them from the NFA should be reevaluated. ATF's experience with the criminal use of silencers also supports reassessing their inclusion in the NFA. On average in the past

10 years, ATF has only recommended 44 defendants a year for prosecution on silencer-related violations; of those, only approximately 6 of the defendants had prior felony convictions. Moreover, consistent with this low number of prosecution referrals, silencers are very rarely used in criminal shootings. Given the lack of criminality associated with silencers, it is reasonable to conclude that they should not be viewed as a threat to public safety necessitating NFA classification, and should be considered for reclassification under the GCA [Gun Control Act, which does not regulate the making of firearm suppressors].

**Exhibit 1**, Options to Reduce or Modify Firearms Regulations, White Paper (Not for public distribution), Ronald Turk, Associate Deputy Director (Chief Operating Officer), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), January 20, 2017, at 6–7.

The National Hearing Conservation Association (NHCA) Task Force on Prevention of Noise-Induced Hearing Loss from Firearm Noise recommend the use of firearm suppressors as a strategy to reduce the risk of acquiring noise induced hearing loss.[1] The CDC agrees, stating: "The only potentially effective noise control method to reduce … noise exposure from gunfire is through the use of noise suppressors that can be attached to the end of the gun barrel."[2] In addition to reducing noise, firearm suppressors also reduce recoil, allowing shooters better control over their weapon and leading to improved accuracy and better shot placement.

There are over 2.6 million firearm suppressors registered in the United States, including over 500,000 registered in Texas. BATFE, Firearms Commerce in the United States, Annual Statistical Update 2021, at 16. They are legal to possess in 42 states, including Texas. Firearms Law and the Second Amendment at 600.

---

[1] Michael Stewart et al, *NHCA Position Statement Recreational Firearm Noise* (2017), *available at* https://www.hearingconservation.org/assets/docs/NHCA_position_paper_on_firea.pdf (accessed July 15, 2022).

[2] Lilia Chen & Scott E. Brueck, Cender for Disease Control and Prevention National Institute for Occupational Safety and Health, *Noise and Lead Exposures at an Outdoor Firing Range—California* (2011), *available at:* https://americansuppressorassociation.com/wp_asa/wp-content/uploads/2017/01/CDC-Study-California-Firing-Ranges.pdf (accessed July 15, 2022).

In short, firearm suppressors are in common use and are neither dangerous nor unusual.

## II.   Federal law

As one scholar has written, "Devices to reduce noise at its source are ubiquitous in modern society. But imagine if you had to register with the government, obtain permission of law enforcement, submit fingerprints, and pay a $200 tax in order to have a muffler on your automobile or lawn mower. You have to do exactly that to obtain a device to muffle the noise from your firearm, and if you fail to do so, you can be imprisoned for ten years." Halbrook, *supra*, at 35 (footnotes omitted).

### A.   Federal law defines firearm suppressors as "firearms" and regulates them under the NFA.

The NFA has regulated the commercial importation and manufacture for sale or disposition of firearm suppressors since 1934.[3] In 1968, those regulations were extended for the first time to making firearm suppressors for non-commercial, personal use.[4] Since then, it has been illegal to make a firearm suppressor for non-commercial, personal use without first requesting permission, and, if granted, paying a $200 tax, registering the firearm suppressor, and marking the firearm suppressor with a serial number.

"While the National Firearms Act of 1934 is based on Congress's tax power and only covered [a] small fraction of the American gun supply [including firearm suppressors], the Gun Control Act of 1968 applies to all firearms manufactured after 1898 and is based on the interstate commerce power." *Firearms Law and the Second Amendment*, *supra*, at 660.

---

[3] 48 Stat. 1236 (1934) (commonly known as the "National Firearms Acts of 1934" or the "NFA," as originally enacted).

[4] 82 Stat. 226 (1968), Title II (amending the National Firearms Act of 1934). Title I of 82 Stat. 226 is commonly known as the "Gun Control Act of 1968" or "GCA."

The NFA defines "firearms" as eight categories of things, including, generally, short-barreled shotguns, short-barreled rifles, machine guns, "destructive devices" (such as explosives, artillery, and missiles), and firearm suppressors. 26 U.S.C. § 5845(a). Note that the NFA explicitly defines firearm suppressors as "firearms." 26 U.S.C. § 5845(a)(7).

Firearms regulated by the NFA are regulated more strictly than firearms regulated by the GCA. As BATFE acknowledges, the GCA does not regulate making firearms (including firearm suppressors) for non-commercial, personal use at all, but "the making of an NFA firearm [i.e. firearms covered by the NFA] requires a tax payment and advance approval by ATF."[5] "By being defined as a 'firearm' in the NFA, a [firearm] suppressor is subject to the same strict requirements involving registration, taxation, and approval by the government that apply to machines guns and artillery." Halbrook, *supra*, at 39. The NFA requirements are detailed below.

Although the NFA is a tax statute located in the Internal Revenue Code, its references to "the Secretary" means the Attorney General. 26 U.S.C. § 7801(a)(2)(A)(i). BATFE, part of the Department of Justice, enforces the NFA. 28 U.S.C. § 599A; 28 C.F.R. § 0.130(a)(2).

### B. The NFA prohibits Texans from making firearm suppressors for non-commercial, personal use in Texas without first applying for and receiving the approval of BATFE.

Under the NFA, "[t]he term 'make', and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a [firearm suppressor]." 26 U.S.C. § 5845(i); *Compare to* 26 U.S.C. § 5845(m) ("The term "manufacturer" means any person who is engaged in the business of manufacturing [firearm suppressors].)" Thus, under federal law,

---

[5] https://www.atf.gov/firearms/qa/does-individual-need-license-make-firearm-personal-use (last accessed July 15, 2022).

a person "makes" a firearm suppressor if it is intended for non-commercial, personal use, but "manufactures" a firearm suppressor if it is intended for sale.

"No person shall make a [firearm suppressor] unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the [firearm suppressor] on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the [firearm suppressor] to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the [firearm suppressor] and the application form shows such approval. Applications shall be denied if the making or possession of the [firearm suppressor] would place the person making the [firearm suppressor] in violation of law." 26 U.S.C. § 5822.

"The application to make a firearm, Form 1 (Firearms), must be forwarded directly, in duplicate, by the maker of the firearm to the Director in accordance with the instructions on the form." 27 C.F.R. §479.64. A copy of Form 1 is attached as **Exhibit 2**.

The Form 1 must be "executed under the penalties of perjury," and submitted along with $200. 27 C.F.R. § 479.62(b)(1).

"[On the Form 1,] the applicant shall provide the applicant's name, address, and date of birth, and also comply with the identification requirements prescribed in § 479.63(a)." 27 C.F.R. § 479.62(b)(2).

7

"If the applicant is an individual, the applicant shall [on the Form 1] (1) Securely attach to each copy of the Form 1, in the space provided on the form, a 2 x 2-inch photograph of the applicant, clearly showing a full front view of the features of the applicant with head bare, with the distance from the top of the head to the point of the chin approximately 1 1/4 inches, and which shall have been taken within 1 year prior to the date of the application; and (2) Attach to the application two properly completed FBI Forms FD-258 (Fingerprint Card). The fingerprints must be clear for accurate classification and should be taken by someone properly equipped to take them." 27 C.F.R. § 479.63(a).

An applicant who wishes to make a firearm suppressor for non-commercial, personal use must also include on the Form 1 "[a] description of the [firearm suppressor] to be made by type; caliber, gauge, or size; model; length of barrel; serial number; other marks of identification." 27 C.F.R. § 479.62(b)(3).

The applicant must also provide "[t]he applicant's Federal firearms license number (if any)" and "special (occupational) tax stamp (if applicable)." 27 C.F.R. § 479.62(b)(4), (5). But a Federal firearms license is not required to make a firearm suppressor.

"If the applicant … is an alien admitted under a nonimmigrant visa, applicable documentation demonstrating that the nonimmigrant alien" is allowed to possess a firearm suppressor. 27 C.F.R.§ 479.62(b)(6).

The rules also provide, "Prior to the submission of the application to the Director, all applicants … shall forward a completed copy of Form 1 … to the chief law enforcement officer of the locality in which the applicant … is located. The chief law enforcement officer is the local chief of police, county sheriff, head of the State police, or State or local district attorney or prosecutor."

27 C.F.R. § 479.62(c). The chief law enforcement officer is not required to do anything at all upon receipt of a Form 1. This regulation has no statutory authority whatsoever.

Although not required by statute or rule, the ATF Form 1 has a line for the applicant to submit his or her social security number under the instruction: "A maker who is an individual must complete this Section." However, the line refers to "instruction 2f," which states that the social security number is not required but that "refusal to provide this information may result in a delay in the NICS background check process." **Exhibit 2**.

Although not required by statute or rule, the ATF Form 1 also requires the applicant to identify his or her race and ethnicity. **Exhibit 2**.

"If the application is approved, the Director will affix a National Firearms Act stamp to the original application in the space provided therefor and properly cancel the stamp. The approved application will then be returned to the applicant." 27 C.F.R. § 479.62(d).

"The Director will consider the application for approval or disapproval. If the application is approved, the Director will return the original thereof to the maker of the firearm and retain the duplicate. Upon receipt of the approved application, the maker is authorized to make the firearm described therein. The maker of the firearm shall not, under any circumstances, make the firearm until the application, satisfactorily executed, has been forwarded to the Director and has been approved and returned by the Director with the National Firearms Act stamp affixed." 27 C.F.R. § 479.64.

"An application to make a firearm shall not be approved by the Director if the making or possession of the firearm would place the person making the firearm in violation of law." 27 C.F.R. § 479.65. "If the application is disapproved, the original Form 1 (Firearms) and the remittance

9

submitted by the applicant for the purchase of the stamp [$200] will be returned to the applicant with the reason for disapproval stated on the form." 27 C.F.R. § 479.64. The rules do not provide for an appeal of BATFE's decision.

BATFE reports that current (last update January 6, 2023) Form 1 average processing times are 45 days for paper submissions and 30 days for efiled submissions.[6]

Plaintiffs filed this lawsuit on February 24, 2022.

Defendants admit that BATFE denied approximately 845 Form 1 applications to make firearms suppressors on February 28, 2022. Defendants' Answer at ¶ 80.

Defendants admit that BATFE sent a letter to approximately 1,901 email addresses associated with pending Form 1 applications on March 3, 2022, stating:

Dear eForm applicant:

The National Firearms Act (NFA) Division received your ATF eForm 1, *Application to Make and Register a Firearm*. As part of the application process, NFA Division must confirm that the making or possession of a firearm would not place the applicant in violation of the law [footnote omitted].

NFA Division requests that you provide certain additional information so that it may determine whether your eForm 1 application to make a silencer may lawfully be approved. Specifically, please submit to NFA Division the following:

- Pictures of the parts that you will use to make the silencer (the pictures should be clear and allow identification of the parts photographed);

- A description of the process you will use to assemble or fabricate the silencer;

- The product, model or kit name, if any, of each device and/or part that you will use to make the silencer; and

- The source from which the parts were obtained, i.e. the name of the store, website, etc.

---

[6] *Current Processing Times*, BATFE, atf.gov/resource-center/current-processing-times (last visited Feb. 6, 2023).

… Without the additional descriptive information, NFA Division will be unable to determined whether the eForm 1 application to make a silencer may lawfully be approved. Therefore, failure to submit the requested information by ***March 25, 2022*** will result in your application being disapproved and your $200 making tax refunded [emphasis in original].

Defendants' Answer at ¶ 81.

No statute, regulation, or instruction on the Form 1 requires that applicants provide this "additional information."

Recall that 18 U.S.C. § 921(a)(25) defines "any part intended only for use in" "assembling or fabricating a [firearm suppressor]" as a firearm suppressor. BATFE's March 3, 2022 email required applicant to submit "[p]ictures of the parts that you will use to make the silencer (the pictures should be clear and allow identification of the parts photographed)." But under § 921(a)(25), those parts are themselves firearm suppressors that the applicant cannot possess until BATFE has granted permission. Persons possessing firearm suppressor parts without BATFE's permission are subject to ten years in prison. *See* Part II.F., *infra*. Incredibly, by requiring applicants to provide this "additional information," BATFE requires applicants incriminate themselves by disclosing possession of parts without BATFE's prior permission.

By statute, BATFE cannot use this information "directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration," 26 U.S.C. § 5848(a), but can use this information "in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information," 26 U.S.C. § 5848(b). But nothing prohibits BATFE from using this information to deny the application—from which there is no appeal.

11

**C.    The NFA requires Texans who make a suppressor in Texas for non-commercial, personal use in Texas to pay a tax of $200.**

The tax on making firearms suppressors and other "firearms" regulated under the National Firearms Act of 1934 is $200. "There shall be levied, collected, and paid upon the making of a [firearm suppressor] a tax at the rate of $200 for each firearm made." 26 U.S.C. § 5821(a). "The tax imposed by subsection (a) of this section shall be paid by the person making the [firearm suppressor]." 26 U.S.C. § 5821(b). "The tax imposed by subsection (a) of this section shall be payable by the stamp prescribed for payment by the Secretary." 26 U.S.C. § 5821(c). "Payment of the tax on the making of a firearm shall be represented by a $200 adhesive stamp bearing the words 'National Firearms Act.' The stamps are maintained by the Director." 27 C.F.R. § 479.61.

In 1934, the $200 amount "was decided because that was the average cost of a machine gun, and a 100% tax would thereby be imposed." Halbrook, *supra*, at 50; *Firearms Law and the Second Amendment* at 571. Before the enactment of the Firearms Act of 1934, a firearm suppressor cost about five dollars. Halbrook, *supra*, at 50. The amount of the tax—$200—has not changed since 1934. *Firearms Law and the Second Amendment* at 578.

**D.    All newly made firearm suppressors must be registered—including those made by Texans for non-commercial, personal use in Texas.**

When BATFE approves an application, it simultaneously registers the firearm suppressor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841(a). "The registry shall include (1) identification of the [firearm suppressor]; (2) date of registration; and (3) identification and address of person entitled to possession of the [firearm suppressor]." *Id.*

"Each … maker … of a [firearm suppressor] shall, prior to … making a [firearm suppressor], obtain authorization in such manner as required by this chapter or regulations issued thereunder to … make … the [firearm suppressor], and such authorization shall effect the registration of the

12

[firearm suppressor] required by this section." 26 U.S.C. § 5841(c). "The approval by the Director of an application, Form 1 (Firearms), to make a firearm under this subpart shall effectuate registration of the firearm described in the Form 1 (Firearms) to the person making the firearm." 27 C.F.R. § 479.71.

"A person possessing a [firearm suppressor] registered as required by this section shall retain proof of registration which shall be made available to the Secretary upon request." 26 U.S.C. § 5841(e). "The original Form 1 (Firearms) showing approval by the Director shall be retained by the maker to establish proof of his registration of the firearm described therein, and shall be made available to any ATF officer on request." 27 C.F.R. § 479.71.

### E.  All firearm suppressors must be marked with an individual serial number— including those made by Texans for non-commercial, personal use in Texas.

Once BATFE approves an application, the firearm suppressor must have a serial number.

"[A]nyone making a [firearm suppressor] shall identify each [firearm suppressor] … by a serial number which may not be readily removed, obliterated, or altered, the name of the … maker, and such other identification as the Secretary may by regulations prescribe." 26 U.S.C. § 5842(a). Federal regulations contain detailed requirements for how the serial number must be placed on the firearm suppressor. 27 C.F.R. § 479.102.

### F.  Prohibited acts and penalties for makers of firearm suppressors

It is unlawful for any person to

- "possess a [firearm suppressor] made in violation of the provisions of this chapter;"

- "possess a [firearm suppressor] which is not registered to him in the National Firearms Registration and Transfer Record;"

- "make a [firearm suppressor] in violation of the provisions of this chapter;" or

- "possess a [firearm suppressor] which is not identified by a serial number as required by this chapter."

26 U.S.C. § 5861(c), (d), (f), (i).

The penalties for any of the above violations are a fine not more than $10,000, imprisonment for not more than ten years, or both. 26 U.S.C. § 5871. And "[a]ny [firearm suppressor] involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture." 26 U.S.C. § 5872.

Thus, a person who makes or possesses a firearm suppressor in Texas for non-commercial, personal use in Texas without first obtaining BATFE's advance permission, without paying the $200 tax, without registering it, or without engraving a unique serial number on the suppressor faces ten years imprisonment, a fine of not more than $10,000, or both.

## III.  Parties

Plaintiff Ken Paxton is the Attorney General of Texas. The State of Texas is a sovereign state of the United States. "[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The unconstitutional regulation of firearm suppressors adversely affects Texans' health and well-being by delaying or prohibiting Texans' ability to use firearm suppressors (by 30 or 45 days, even when the application if approved) for the purpose of home defense.

Plaintiffs Schnitz, Martin, and Allen are Texas citizens who wish to make firearm suppressors for their own non-commercial, personal use in Texas. They wish to retain possession of the firearm suppressors that they would like to make. They do not wish to sell the firearm suppressor they would like to make. **Exhibit 3, 4, 5.**

14

Defendant Stephen Dettelbach is the Director of BATFE. BATFE is responsible for enforcing those parts of the NFA that apply to Texans who make firearm suppressors for non-commercial, personal use in Texas, including the requirements that they apply for and receive permission to make a firearm suppressor for non-commercial, personal use in Texas (Count I), pay a $200 tax on making firearm suppressors for non-commercial, personal use in Texas (Count II), and register and place a serial number on firearm suppressors made in Texas for non-commercial, personal use in Texas (Counts III and IV).

Defendant Merrick B. Garland, Attorney General of the United States is the Attorney General and is responsible for prosecuting criminal violations of those requirements.

## PROCEDURAL HISTORY

Plaintiffs sued Stephen Dettelbach, Director of BATFE, and Merrick B. Garland, Attorney General of the United States, in their official capacities. Plaintiffs seek injunctive relief against enforcement of the requirements that they apply for and receive permission to make a firearm suppressor for non-commercial, personal use in Texas (Count I), pay a $200 tax on making firearm suppressors for non-commercial, personal use in Texas (Count II), and register and place a serial number on firearm suppressors made in Texas for non-commercial, personal use in Texas (Counts III and IV). *See* Plaintiff's Second Amended Complaint (Dkt. #21).

Plaintiffs are not challenging other parts of the NFA or the GCA. For instance, Plaintiffs are not challenging regulations of rifles or handguns not regulated by the NFA. They are not challenging regulation of weapons regulated by the NFA other than firearm suppressors. Plaintiffs are also not challenging commercial regulations, such as regulations of transferring weapons in or manufacturing weapons for interstate commerce, or licensing regulations.

15

The Court denied Plaintiffs' request to take discovery and ordered that the case be submitted on cross-motions for summary judgment.

## STATEMENT OF THE ISSUES

1. Do Plaintiffs have standing?

2. Does the Anti-Injunction Act bar Plaintiffs' claims?

3. Are the challenged statutes unconstitutional?

## STANDARD OF REVIEW

Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 224 (5th Cir. 2020).

## ARGUMENT AND AUTHORITIES

### I.  The parties have standing.

#### A.  Texas has standing.

"[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." *Alfred L. Snapp & Son*, 458 U.S.at 607.

The unconstitutional regulation of firearm suppressors adversely affects Texans' health and well-being by delaying (by 30 or 45 days when the application is approved) or prohibiting (when the application is not approved) Texans' ability to use firearm suppressors for the purpose of home defense, as demonstrated by the affidavits of Plaintiffs Schnitz, Martin, and Allen. Exhibit 3, 4, 5. Therefore, Texas has standing to vindicate its quasi-sovereign interests in its citizens' health and well-being.

Texas's quasi-sovereign interests in the health and safety of its citizens exist independently of the statute directing the Attorney General to file this lawsuit. The statute does not manufacture a

lawsuit. Instead, it sets out the State's policy in favor of the use of firearms suppressors and directs the Attorney General to vindicate Texas's independently existing quasi-sovereign interests in promoting that policy in federal court.

"[T]here is a critical difference between allowing a State to protect her citizens from the operation of federal statutes (which is what [*Massachusetts v. Mellon*, 262 U.S. 447 (1923)] prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 n.17 (2007) (internal quotation marks omitted). Texas is asserting its right to vindicate its quasi-sovereign interests in the health and well-being of its citizens.

### B. Schnitz, Martin, and Allen have standing.

The federal government prosecutes people for illegal possession of firearm suppressors.[7] At least one citizen was convicted of making silencers that state law declared legal.[8]

---

[7] Many examples can be found through a simple internet search. Some examples:

- *Holdrege man sentenced to 30 months imprisonment for unlawful possession of a silencer*, KHGI Nebraska TV (Feb. 3, 2020), https://nebraska.tv/news/local/holdrege-man-sentenced-to-30-months-imprisonment-for-unlawful-possession-of-a-silencer.
- *Falls City woman gets probation for selling unregistered silencer on Facebook*, News Channel Nebraska (Aug. 6, 2022), http://rivercountry.newschannelnebraska.com/story/4704 4716/falls-city-woman-gets-probation-for-selling-unregistered-silencer-on-facebook.
- Press Release, *Jacksonville Man Charged With Illegal Possession Of A Silencer,* BATFE (Dec. 4, 2017), https://www.justice.gov/usao-mdfl/pr/jacksonville-man-charged-illegal-posse ssion-silencer.
- Press Release, *Ordering Silencers Delivers Federal Prison Sentence*, BATFE (Sept. 10, 2021), http://justice.gov/usao-co/pr/ordering-silencers-delivers-federal-prison-sentence.

[8] Roxana Hegeman, *Kansas man's homemade gun silencers clash with federal law*, KSL Salt Lake City (Nov. 21, 2021), http:// https://www.ksl.com/article/42298980/kansas-mans-homemade-gun-silencers-clash-with-federal-law.

On July 28, 2021, BATFE issued an "open letter" stating that "because [Chapter 2 of the Texas Government Code] directly conflicts with federal firearms laws and regulations, federal law supersedes [Chapter 2]. In summary, all provisions of the Gun Control Act (GCA) and the National Firearms Act (NFA), including their corresponding regulations, continue to apply to [federal firearms licensees] and *other persons in Texas*." **Exhibit 6** (emphasis added).

Consequently, Plaintiffs Schnitz, Martin, and Allen reasonably fear enforcement of the challenged statutes. When an individual is subject to threatened enforcement of a law, they have an Article III injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. *Id.*; *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"). A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Therefore, Plaintiffs Schnitz, Martin, and Allen have standing.

### C. If one plaintiff has standing, there is no need to consider whether other plaintiffs have standing.

"It is well settled that once [courts] determine that at least one plaintiff has standing, [courts] need not consider whether the remaining plaintiffs have standing to maintain the suit." *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).

\* \* \*

At least one party has standing—in fact, they all do. The Court should therefore find that Plaintiffs have standing to bring this suit.

## II. The AIA does not apply to this case.

The Anti-Injunction Act ("AIA") reads, "[With inapplicable exceptions,] no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421. The AIA "protects the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes. Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012).

### A. The AIA does not apply to Counts I, III, and IV. It also does not apply to Count II in the case of a denied application.

Plaintiffs concede that the text of the AIA applies to Count II (challenging the collection of the $200 tax from citizens whose applications are approved) (although Plaintiffs maintain that the *Enochs* exception applies to that collection; see Part II.B, *supra*). But, under *CIC Services, LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582 (2021), the AIA does not apply to Counts I (challenging the application process), III (challenging the registration requirement), or IV (challenging the serial number requirement) because those counts do not challenge the "assessment or collection" of tax.

It also does not apply to Count II in cases where BATFE denies an application because no tax is assessed or collected.

As detailed above, a Texan who wants to make a firearm suppressor for non-commercial, personal use does not simply pay a tax on that activity. Instead, the Texan must send BATFE $200 and apply for permission to make the firearm suppressor. If BATFE grants permission, it keeps the $200, registers the suppressor, and sends the Texan a tax stamp, who can then make the suppressor, so long as he or she registers it and puts a serial number on it. And sometimes BATFE holds applications and indefinitely refuses to approve or deny them, while illegally demanding "additional information" that no statute or rule allows them to demand. This "additional information" includes pictures of the parts that the person intends to use to make the suppressor. But because "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler" constitutes a "suppressor" under federal law, *see* 26 U.S.C. § 5845(a)(7), 18 U.S.C. § 921(a)(25), this appears to be a trap. If a person submits pictures of the parts that he or she intends to use in order to build a suppressor, BATFE may take the position that the person has provided photographic proof that he or she is illegally in possession of a suppressor and that would prove a violation of the National Firearms Act.

BATFE may also (rightly or wrongly) *disapprove* the application and return the $200. This establishes that the AIA does not apply to the application process. The AIA only bars injunctions against the "assessment or collection" of taxes. The approval process is neither. BATFE neither assesses an amount due nor collects taxes when it approves or disapproves an application to make a firearm suppressor. The collection happens (or not) *after* BATFE evaluates the application, but the evaluation itself is neither tax assessment nor tax collection.

Neither denying an application nor demanding more information without statutory authority (and information that is arguably self-incriminating) is assessing or collecting taxes. It is in fact an effort to *not* collect taxes. The AIA does not apply to Count I.

The application process is similar to a reporting requirement, but challenges to reporting requirements are not barred by the AIA. "[I]t [does] not matter that the reporting requirements would facilitate collection of taxes." *CIC Services*, 141 S. Ct. at 1589 (internal quotations omitted). "The [AIA's] limit on injunctions is not keyed to all activities that may improve a State's ability to assess and collect taxes. It is instead keyed to the acts of assessment and collection themselves. That means a suit directed at ordinary reporting duties can go forward, unimpeded by the Anti-Injunction Act." *Id.* (cleaned up, internal citations and quotations omitted). This further demonstrates that the AIA does not apply to Count I.

The AIA *might* apply if the law simply required citizens to pay a tax whenever they make a firearm suppressor and to submit relevant information on a tax return. "As every taxpayer knows, the Internal Revenue Service (IRS) has broad power to require the submission of tax-related information that it believes helpful in assessing and collecting taxes." *CIC Services*, 141 S. Ct. at 1586–87. But the challenged regulations are very different. Deciding whether a citizen can make a firearm suppressor is not assessing or collecting taxes. And BATFE demonstrates that it is not merely assessing or collecting taxes when it denies applications unless the applicant provides information not required by any authority whatsoever. The AIA does not bar injunctive relief against such decisions.

Counts III and IV do not even arguably challenge the assessment or collection of taxes. They challenge *post-collection* requirements that the maker of firearm suppressors register the firearm

suppressor and place a serial number on the firearm suppressor. And as with Count II, Counts III and IV even more clearly do not challenge the assessment or collection of taxes in the case of a disapproved application, in which case the maker of the firearm suppressor may not even legally move on to the registration or serial number steps. Thus, Counts I, III, and IV do not have the purpose of restraining the assessment or collection of any tax.

Whether a claim challenges the assessment of collection of taxes is an objective inquiry. "[T]he Anti-Injunction Act provides, with exceptions not relevant here, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.' If [a] suit is not for that purpose, it can go forward. If the suit is for that purpose, it must be dismissed." *CIC Services*, 141 S. Ct. at 1588.

> In considering a suit['s] purpose, we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests…. The purpose of a measure is "the end or aim to which [it] is directed." N. Webster, An American Dictionary of the English Language (rev. ed. 1844); see Webster's Third New International Dictionary 1847 (1976). And in this context, that aim is not best assessed by probing an individual taxpayer's innermost reasons for suing. Down that path lies too much potential for circumventing the Act. Instead, this Court has looked to the face of the taxpayer's complaint. We have asked about what the Government here calls "the substance of the suit"—the claims brought and injuries alleged—to determine the suit's object. And most especially, we have looked to the "relief requested"—the thing sought to be enjoined. The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation— or stated in the Act's language, when that injunction runs against the "collection or assessment of [a] tax."

*CIC Services*, 141 S. Ct. at 1589–90.

Count I's purpose is to enjoin the application process, not the assessment or collection of taxes. Count III's purpose is to enjoin the registration requirement, not the assessment or collection of taxes. Count IV's purpose is to enjoin the serial-number requirement, not the assessment or collection of taxes.

Thus, under *CIC Services*, the AIA does not bar injunctions against firearm suppressor application, registration, and serial-number requirements, and of course does not apply to non-collection of tax due to a disapproved or indefinitely un-acted on application, because they are not "tax obligations" or "the collection or assessment of [a] tax." *CIC Services*, 141 S. Ct. at 1590. Enjoining the government from enforcing the suppressor application, registration, and serial-number requirements would not have any effect on "the Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes," which is the entire point of the AIA. *Sebelius*, 567 U.S. at 543.

**B. The AIA does not apply to any of the challenged statutes under the *Enochs* exception.**

Despite the seemingly clear language of the AIA, courts recognize the *Enochs* exception. "[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the [AIA] is inapplicable and the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in the guise of a tax." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 9 (1962) (internal citation and quotation omitted). "*Enochs* establishes two prongs, both of which must be satisfied, before an injunction may issue pursuant to [the AIA]. The first prong is that normal equity jurisdiction must obtain, i.e., irreparable injury and inadequacy of legal remedy must exist. The second independent criterion is that it must be clear that under 'no circumstances' could the government ultimately prevail. Only if the government does not have 'a chance of ultimately prevailing' and only if under the 'most liberal view of the law and the facts' the United States cannot win, may a district court issue an injunction." *Kemlon Products & Dev. Co. v. United States*, 638 F.2d 1315, 1321 (5th Cir. 1981), modified, 646 F.2d 223 (5th Cir. 1981) (quoting *Enochs*).

23

Even if the AIA applied to all the challenged regulations (it does not; see part II.A, *infra*), the exception to the AIA recognized in *Enochs* applies because (1) the challenged regulations cause irreparable harm, that cannot be cured with damages, by causing delay—sometimes indefinite delay—and requiring registration and serial numbers (and permission is sometimes denied), and (2) Defendants will not be able to overcome their burden to prove that the challenged requirements are "consistent with the Nation's historical tradition of firearm regulation," which they must do to justify the regulations under the Second Amendment. *Bruen*, 142 S. Ct. at 2126. See Part III, *infra*.

### 1.    Enforcement of the challenged regulations causes irreparable injury.

For most taxes, the taxpayer pays a tax when the taxpayer performs a taxable activity, such as purchasing a product subject to an excise tax, or when taxes are due, such as when the taxpayer pays the income tax on April 15 and submits paperwork showing the amount due. In these cases, if the tax was illegally collected, the taxpayer is not irreparably harmed because the taxpayer can sue for a refund and get his or her money back, with interest. That makes the taxpayer whole under the law of irreparable injury, *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981), so the taxpayer has an adequate remedy at law for illegal tax assessment and collection, and accordingly would not be entitled to prepayment injunctive relief under the AIA.

This case is very different. BATFE takes some time—sometimes, an indefinite period of time while it collects "more information"—to decide whether to approve an application to make a firearm suppressor. Even if BATFE eventually approves a Texan's application, the Texan has suffered irreparable harm in the form of time lost that cannot be repaired by recovering the $200 back with interest. In the First Amendment context, requiring a would-be speaker to submit $200 along with an application for permission to speak, and waiting for permission (sometimes while the

agency illegally requests "additional information"), cannot be repaired by giving the $200 back with interest because the applicant was not allowed to speak before the agency granted permission (if it ever did). That is a harm that cannot be repaired with money. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury." *Deerfield Med. Ctr.*, 661 F.2d at 338. So too for delays in exercising Second Amendment rights.

Additionally, approved applicants must register their firearm suppressor with BATFE and place a serial number on it. Those harms also cannot be repaired in a tax refund action that results in returning the $200 with interest. The refund procedure is not available to return lost time or to undo serial number and registration requirements.

Disapproved applicants more obviously suffer an irreparable injury. They are not allowed to make a firearm suppressor and never are even allowed to pay the tax. There is no way to repair their injury by giving their money back (they still have their money) or with any other amount of money. And Plaintiffs are unaware of any authority allowing a citizen to challenge BATFE's denial of an application to make a firearm suppressor in court.

Texas is also irreparably harmed by delays to or prohibitions on Texans' ability to use firearm suppressors for the purpose of home defense. This runs counter to state policy favoring firearm suppressors.

Thus, the challenged regulations cause irreparable injury—injuries that cannot be repaired by a post-collection tax refund suit. Plaintiffs pass the first part of *Enochs*'s two-part test.

### 2.   Defendants have no chance of ultimately prevailing.

Defendants have no chance of ultimately prevailing because the application process, the $200 tax, the serial-number requirement, and the registration requirements are unconstitutional. See Part III, *infra*.

### III. The challenged statutes are unconstitutional as applied to Texans making firearm suppressors for non-commercial, personal use, and their continued possession of those firearm suppressors.

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122; *see also District of Columbia v. Heller*, 554 U.S. 570 (2008). This right, however, is not unlimited: our Nation's historical tradition teaches that there are certain "longstanding," "presumptively lawful regulatory measures" that the Second Amendment did not abrogate. *District of Columbia v. Heller*, 554 U.S. 570, 626–27 & n.26 (2008).

After *Bruen*, rather than means-end scrutiny, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. at 2132. Stated another way, courts must first interpret the Second Amendment's text, as informed by history. And when the plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Id.* at 2129–30. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2130.

*Bruen* has already been cited hundreds of times, mostly in cases that do not apply to anything resembling the challenged regulations.[9] But a few opinions citing *Bruen* address issues that are closer to the issues in this case.

---

[9] For readability, this very long footnote has been moved to after the Conclusion section.

26 U.S.C. § 5842(a) requires makers of firearm suppressors to place a serial number on the firearm suppressor, and 26 U.S.C. § 5842(b) requires possessors of firearm suppressors without a serial number to place a serial number on the firearm suppressor. Plaintiffs challenge both statutes. No post-*Bruen* opinion has construed those statutes, but some have construed 18 U.S.C. § 922(k), a GCA statute which Plaintiffs do not challenge and which prohibits possessing or receiving a firearm (including a firearm suppressor) "which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." Opinions are split as to whether § 922(k) survives *Bruen*. *Compare United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022) (holding that § 922(k) does not survive *Bruen*) *to United States v. Tita*, No. CR RDB-21-0334, 2022 WL 17850250 (D. Md. Dec. 22, 2022); *United States v. Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376 (N.D. Ind. Dec. 15, 2022); *United States v. Holton*, No. 3:21-CR-0482-B, 2022 WL 16701935 (N.D. Tex. Nov. 3, 2022) (all holding that § 922(k) remains constitutional).

Two opinions have upheld the constitutionality of regulations on other weapons regulated by the NFA. *United States v. Hoover*, No. 321CR22S3MMHMCR, 2022 WL 10524008, at *1–2 (M.D. Fla. Oct. 18, 2022) (holding that the NFA's prohibition on the possession of unregistered machineguns (26 U.S.C. § 5861(d)) is constitutional on the grounds that machine guns are "dangerous and unusual."); *United States v. Rush*, No. 22-CR-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023) (holding that the NFA's prohibition on possession of unregistered short-barreled rifles (26 U.S.C. § 5861(d)) is constitutional on the grounds that short-barreled rifles are "dangerous and unusual."). These opinions do not apply to firearm suppressors, which are neither dangerous nor unusual.

Three opinions (and one important pre-*Bruen* opinion) have considered large capacity magazines, which, like firearm suppressors, Defendants argue can be considered "accessories." In *Rocky Mountain Gun Owners v. Bd. of Cnty. Commissioners of Boulder Cnty.*, No. 122CV02113CNSMEH, 2022 WL 4098998 (D. Colo. Aug. 30, 2022), the court held that the plaintiffs had a substantial likelihood of success on the merits and granted a TRO against an ordinance that prohibits the sale and purchase of "assault weapons" and large capacity magazines. On the other hand, in *Ocean State Tactical, LLC v. State of Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175 (D.R.I. Dec. 14, 2022), the court held that Rhode Island law prohibiting large capacity magazines is constitutional on the grounds that they are not "arms" and are not instruments of self-defense, and in *Oregon Firearms Fed'n, Inc. v. Brown*, No. 2:22-CV-01815-IM, 2022 WL 17454829 (D. Or. Dec. 6, 2022), the court held that Oregon law prohibiting large capacity magazines is constitutional on the grounds that they are not in common use). Those two opinions contradict *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*"), where the court held on remand from the Supreme Court that weapons with large capacity magazines are "arms" and in common use, but that the government may ban them under now-obsolete pre-*Bruen* intermediate scrutiny.

### A. Regulation of firearm suppressors is regulation of conduct covered by the Second Amendment.

Making a firearm suppressor for non-commercial, personal use is conduct covered by the Second Amendment. Although the NFA itself defines firearm suppressors as "firearms," 26 U.S.C. § 5845(a)(7), whether a firearm suppressor is or is not an "arm" is not the issue. Firearm suppressors are attached to the barrel of firearms. When one keeps or bears arms with a firearm suppressor, one is exercising Second Amendment rights, just as when one keeps or bears arms with

28

a trigger, or a detachable magazine, or a scope, one is exercising Second Amendment rights. Regulating firearm suppressors, triggers, detachable magazines, or scopes is regulating conduct falling within the scope of the Second Amendment's guarantee.

Likewise, when one goes to a firing range, they are exercising Second Amendment rights, *see Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), even though a firing range is not an arm. *See also Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022) (remanding a case to review a city's shooting-range ordinances under *Bruen)*. And when one uses ammunition and firearms accessories, such as large-capacity magazines, they are exercising Second Amendment rights. *See, e.g., Jackson v. City & City of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014); *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *Heller II*, 670 F.3d at 1261.

Regulating firearm parts, accessories, and things like firing ranges is regulating conduct covered by the Second Amendment's plain text. The Second Amendment covers more than regulations of arms themselves. Similarly, the First Amendment covers more than speech and press themselves. For instance, neither paper nor ink are themselves "speech" or "press," but newspapers use paper and ink to exercise their rights of freedom of speech and freedom of press, just as citizens may use firearm suppressors, triggers, sights, detachable magazines, ammunition, and firing ranges to exercise their right to keep and bear arms. That is why newspapers cannot be constitutionally taxed on their purchases of paper and ink, except as part of a general sales tax on all goods purchased. *Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 591 (1983). Regulating paper and ink used to exercise freedoms of speech and press is subject to

constitutional constraints. So is regulating firearm accessories used to exercise the right to keep and bear arms.

Moreover, in *Bruen*, the Court defined "arms" broadly to include "modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. Previously, it recognized the historical inclusion of "armour of defence" within the definition of arms, showing the definition is not limited to completed weapons. *Heller*, 554 U.S. 570, 581 (2008). And *Bruen* clarifies that the Second Amendment covers "*conduct* falling within the scope of the Second Amendment's guarantee," not just arms. *Bruen*, 142 S. Ct. at 2126 (emphasis added).

The Second Amendment does not apply to weapons *not* typically possessed by law-abiding citizens for lawful purposes. *Heller*, 554 U.S. at 625. But firearm suppressors *are* typically possessed by law-abiding citizens for lawful purposes. There are over 2.6 million firearm suppressors legally owned and registered in the United States, including over 500,000 registered in Texas. BATFE, Firearms Commerce in the United States, Annual Statistical Update 2021, at 16. They are legal to possess in 42 states, including Texas. Firearms Law and the Second Amendment at 600. They are in common use just like AR-15s are in common use, as the D.C. Circuit found because "[a]pproximately 1.6 million AR–15s alone have been manufactured since 1986." *Heller II*, 670 F.3d at 1261 (D.C. Cir. 2011).

Making and possessing firearm suppressors is conduct covered by the Second Amendment. This becomes clearer if one imagines the same regulations at issue in this case applied to books. Imagine a regulatory scheme where no citizen can make a book without permission,[10] must pay a

---

[10] Imagine further that parts of a book are illegal to own without government permission, and that the government has an admitted history of neither approving nor disapproving the making of the

$200 tax on the act of making a book, and must register the book with the government and place a serial number on it so the government can track the ownership of the book—and if the citizen fails to do these things, he or she faces ten years imprisonment and a fine of $10,000. Those imaginary regulations cover conduct protected by the First Amendment. The real regulations in this case likewise cover conduct covered by the Second Amendment.

### B. The challenged statutes are not consistent with the Nation's historical tradition of firearm regulation.

Because the plain text of the Second Amendment covers the conduct of making and possessing firearms with firearm suppressors attached, the Constitution presumptively protects that conduct. *Bruen*, 142 S. Ct. at 2129–30. The burden therefore falls on Defendants to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. Plaintiffs are not required to prove anything to prevail.

### 1. There is a historical tradition of requiring adults, as members of the militia, to possess firearms. This tradition is inconsistent with restrictions on the right to keep and bear arms.

*Heller* explained that a prefatory clause does not limit its operative clause. Instead, the Second Amendment's prefatory clause ("A well regulated Militia, being necessary to the security of a free State") announces the Second Amendment's purpose is to "prevent elimination of the militia." *Heller*, 554 U.S. at 595, 599. Given the Second Amendment's stated purpose, logic demands that if an individual was (or is) a member of the "militia," the Second Amendment's protections extend at least to those who constitute the militia. It would be illogical to enumerate a constitutional right to keep and bear arms to maintain an armed militia if that right did not protect those individuals

---

book and "requesting" photos of the illegally owned parts of the book as part of a new application process contrary to statute and rule. *See* Part III.E, *infra*.

from whom a militia would be drawn. *Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996, at *5 (N.D. Tex. Aug. 25, 2022).

So who are these militia members? In *United States v. Miller*, the Supreme Court explained that "the Militia comprised all males physically capable of acting in concert for the common defense." 307 U.S. 174, 179 (1939). And in *Heller*, the Supreme Court affirmed this definition, stating that it "comports with founding-era sources." *Heller*, 554 U.S. at 595 (collecting sources). Thus, at the Founding, the "militia" was generally understood to be comprised of "all able-bodied men." *Id.* at 596.

More accurately, however, the "militia" was "each and every free able-bodied white male citizen" between the age of 18 and 45. Second Militia Act of 1792 § 1, 1 Stat. 271 (1792). Events since 1792 have extinguished the historical tradition of limiting Second Amendment rights to able-bodied white males of the most physically fit age. Now, the "Second Amendment right is exercised individually and belongs to *all Americans*." *Heller*, 554 U.S. at 581 (emphasis added).

The historical record supports this understanding. The First Congress enacted legislation "command[ing] that every able-bodied male citizen between the ages of 18 and 45 be enrolled in the militia and equip himself with appropriate weaponry." *Jones v. Bonta*, 34 F.4th 704, 719 (9th Cir. 2022) (quoting *Perpich v. Dep't of Def.*, 496 U.S. 334, 341 (1990)) (alterations omitted)). Additionally, the 1792 Act required militia members to arm themselves rather than rely on the Government to provide arms. *See Miller*, 307 U.S. at 1796 (recognizing that the militia presupposed firearm possession because "when called for service[,] these men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time"). State constitutions and statutes from the founding era also demonstrate a tradition of a permanent, armed militia

32

consisting of citizens keeping and bearing weapons in common use, with standing armies during times of war only. FIREARMS LAW AND THE SECOND AMENDMENT: REGULATION, RIGHTS, AND POLICY at 308–320.

Laws requiring militia service by people required to keep and bear commonly used arms is inconsistent with laws regulating and restricting making and possessing commonly used arms, such as firearms with a firearm suppressor attached. Defendants will not be able to overcome their burden.

### 2. Some firearm regulations are part of a historical tradition, but none are analogous to the challenged statutes.

Although some 18th-Centrury American regulations addressed conduct covered (or arguably covered) by the Second Amendment, Defendants cannot establish that any of those regulations are analogous to the regulations at issue in this case.

Defendants may establish a historical tradition of restricting Second Amendment rights exercised by blacks, both free and slave. But that historical tradition was extinguished by the Civil War and the Reconstruction Amendments and can no longer justify any firearm regulations. Defendants may also establish a historical tradition of restricting Second Amendment rights exercised by Indians who were not part of "the People," but all Indians are now American citizens, so that tradition has died out as well. Defendants might also establish a historical tradition of restricting Second Amendment rights exercised by Catholics, since the English Bill of Rights of 1689 stated, "That the Subjects which are Protestants may have Arms for their Defence suitable to their Conditions and as allowed by Law." If Defendants can establish such a tradition ever took hold in the United States, that tradition was extinguished by the Second Amendment itself because Catholics have always been part of "the People."

33

These expired traditions cannot justify any regulation at all. And even if they were not extinguished, they would not justify the regulations at issue in this case, which apply to all of "the People," not just on Others, simply based on their status as Others, whom the ruling class does not consider part of "the People."

Defendants might establish a historical tradition of restricting Second Amendment rights exercised by Loyalists or rebels (such as the participants in Shays' Rebellion), or Second Amendment rights exercised by other criminals (which many courts have recognized post-*Bruen*; see n. 9, *infra*). That tradition cannot justify the regulations at issue because they apply to all the People, not just to traitors, rebels, or criminals.

Defendants can surely establish a historical tradition of militia regulations, such as drilling and arms requirements, since the Second Amendment itself refers to "a well regulated Militia." But this tradition cuts against the idea that the government can regulate commonly owned firearms and firearm accessories. *See* Part III.B.1, *supra*.

Defendants might establish a historical tradition requiring local governments to keep arms for use by militia members. After all, the American Revolution itself started when the British attempted to confiscate such stores of weapons. But that tradition cannot justify regulations on commonly owned firearms and firearm accessories, such as firearm suppressors.

Defendants might establish a historical tradition of prohibiting the storage of gunpowder in heavily urbanized areas (due to the risk of explosion). But that tradition cannot justify regulations on commonly owned firearms and firearm accessories, such as firearm suppressors.

34

Defendants might establish a historical tradition of prohibiting the firing of weapons in cities, or at night, without cause. But that tradition cannot justify regulations on commonly owned firearms and firearm accessories, such as firearm suppressors.

Defendants might establish a historical tradition of regulating "dangerous and unusual" weapons. *Bruen*, 142 S. Ct. at 2128. But firearm suppressors are neither dangerous nor unusual, so that tradition cannot justify regulations on firearm suppressors.

None of these historical traditions justify regulations on commonly owned firearms and firearm accessories, including firearm suppressors. Plaintiffs do not believe that Defendants are able to establish any other 18th Century historical traditions. Therefore, Defendants cannot overcome their burden.

Moreover, Defendants are *not* able to establish a historical tradition of prohibiting the making of firearms unless pre-approved by the government. No government attempted to regulate the making of firearms until 1968, when the NFA was amended.

Defendants are *not* able to establish a historical tradition of taxing the making of firearms. There were no American taxes on firearms in the 18th Century. The first federal tax on firearms was enacted in 1919,[11] and the first federal tax on making firearms was enacted in 1968. *See also* Part III.B.4, *infra*, discussing the unconstitutionality of taxing the exercise of constitutional rights.

---

[11] "First imposed on February 25, 1919, Section 4181 of the Internal Revenue Code imposes an excise tax on imported firearms and ammunition when the importer sells or uses the firearms or ammunition (FAET). A tax if 10 percent of the sales price is imposed on pistols and revolvers, and a tax of 11 percent of the sales price is imposed on other portable weapons (e.g., rifles and shotguns) and ammunition." https://www.atf.gov/firearms/firearms-guides-importation-verification-firearms-ammunition-and-implements-war-firearms

Finally, Defendants are *not* able to establish an American 18th Century historical tradition of requiring that firearms be registered or have serial numbers. Those requirements first appeared in 1934.

### C.   *Sonzinsky* does not control this case.

In a previous pleadings, Defendants cited *Sonzinsky v. United States*, 300 U.S. 506, 514 (1937) for the proposition that "the Supreme Court has already upheld other analogous sections of the NFA as a valid exercise of the taxing powers." Dkt. #21 at 15. But *Sonzinsky* is inapposite for two reasons.

First, the issue in *Sonzinsky* was whether the NFA's $200 annual license tax on dealers in firearms was a constitutional exercise of the Taxing Power. *Sonzinsky* at 511. It was not about the tax on making a firearm suppressor for non-commercial, personal use, a matter which was not taxed in 1937, and was not taxed until 1968.[12]

Second, as a pre-*Heller*, pre-*Bruen* opinion, the *Sonzinsky* Court did not consider whether the tax might violate the Second Amendment, did not even mention the right to keep and bear arms, and did not review the tax under the historical-tradition standard. *Sonzinsky* is obsolete after *Bruen*.

### D.   The government may not tax the exercise of a constitutional right.

It is a *per se* violation to tax the exercise of a constitutional right. *Murdock v. Com. of Pennsylvania*, 319 U.S. 105, 113 (1943). As the Supreme Court said in the First Amendment context:

> A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency. When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general

---

[12] 48 Stat. 1236 (1934); 82 Stat. 1213 (1968).

applicability are weakened, and the threat of burdensome taxes becomes acute. That threat can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government.

*Minneapolis Star & Tribune Co.*, 460 U.S. at 585 (1983) (citation omitted). The NFA singles out Texans who exercise their Second Amendment rights. It is not a general tax that happens to also apply to the exercise of Second Amendment rights:

A tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest. Any tax that the press must pay, of course, imposes some "burden." But, as we have observed, this Court has long upheld economic regulation of the press. The cases approving such economic regulation, however, emphasized the general applicability of the challenged regulation to all businesses, [and] suggest[ed] that a regulation that singled out the press might place a heavier burden of justification on the State, and we now conclude that the special problems created by differential treatment do indeed impose such a burden.

*Id.* at 582–83.

It is unconstitutional to regulate Second Amendment rights via taxation.

### E.    Last year, Defendants put the application process toward abusive ends.

There is an additional reason that the application process is unconstitutional. When a citizen applies for permission to make a firearm suppressor for non-commercial, personal use, federal regulations require action: "The Director will consider the application for approval or disapproval." 27 C.F.R. § 479.64. But Defendants admit that they did not "approv[e] or disapprov[e]" applications for some time last year. Under *Bruen*, failing to act on an application is unconstitutional.

"[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, *lengthy wait times in processing license applications* or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9 [emphasis added]. The application process is a shall-issue regime. Indeterminate

37

wait times—unauthorized by statute or rule—are unconstitutional. Yet Defendants have a history of doing just that.

Defendants have no authority to indefinitely delay approval or disapproval or to ask for unspecified "additional information." "Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided." *Sebelius*, 142 S. Ct. at 665. "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485, 2490 (2021). The statute limits what Defendants can do. It reads:

> No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe; (d) identified himself in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law.

26 U.S.C. § 5822. But BATFE demanded "additional information" that is not "on the form provided by the Secretary," contrary to the statute. Nor does any rule allow BATFE to demand "additional information."

The regulations provide, "The Director will consider the application for approval or disapproval. If the application is approved, the Director will return the original thereof to the maker of the firearm and retain the duplicate. … If the application is disapproved, the original Form 1 (Firearms) and the remittance submitted by the applicant for the purchase of the stamp will be returned to the applicant with the reason for disapproval stated on the form." 27 C.F.R. § 479.64.

The options are "approve" or "deny." There is no third option. There certainly is no option for "neither approve nor deny and demand 'additional information.'"

Defendants may not just make up a "process" of indeterminate length. The process established by statute and regulation is a "shall-issue" process. If the applicant provides all information, the applicant gets permission to make the firearm suppressor, period. Otherwise, BATFE denies the application.

Defendants' past refusal to approve or disapprove applications, as required by 27 C.F.R. § 479.64, and demand for "more information," illegally turns the process into more of a "may-issue" regime like the one found unconstitutional in *Bruen. Bruen*, 142 S. Ct. at 2123–24.

## PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

"[F]ederal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. But that has been true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015).

Before a court may grant a permanent injunction, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiffs have irreparable injury for which money damages are inadequate. Defendants' hardship in being unable to enforce unconstitutional statutes, regulations, and practices are heavily

outweighed by the harm to Plaintiffs if they cannot exercise their constitutional rights, and the public interest is not disserved by requiring Defendants to cease and desist from violating Plaintiff's rights under the Second Amendment. Accordingly, Plaintiffs are entitled to injunctive relief prohibiting Defendants from enforcing unconstitutional statutes, regulations, and practices against Texans generally and against Plaintiff Schnitz, Martin, and Allen specifically.

## CONCLUSION

Plaintiffs request that the Court grant their motion for summary judgment and

a.  Issue permanent injunctive relief enjoining Defendants from requiring Texans to apply for and receive permission to make firearm suppressors in Texas for non-commercial, personal use in Texas;

b.  Issue permanent injunctive relief enjoining Defendants from requiring Texans to pay a $200 tax on the making of firearm suppressors in Texas for non-commercial, personal use in Texas;

c.  Issue permanent injunctive relief enjoining Defendants from requiring Texans to register firearms suppressors made in Texas for non-commercial, personal use in Texas;

d.  Issue permanent injunctive relief enjoining Defendants from requiring Texans to place a serial number on firearms suppressors made in Texas for non-commercial, personal use in Texas;

e.  Issue permanent injunctive relief enjoining Defendant Garland from initiating criminal prosecution of Plaintiffs Schnitz, Martin and Allen for making a firearm suppressor in Texas for non-commercial, personal use in Texas without complying with the application, taxation, registration, or serial number requirements;

f. Declare the following statutes unconstitutional as applied to the making of firearms by Texans for non-commercial, personal use in Texas:

26 U.S.C. §§ 5821, 5822, 5841, 5842, and 5861.

g. Declare the following regulations unconstitutional as applied to the making of firearms by Texans for non-commercial, personal use in Texas:

27 C.F.R. §§ 479.61, 479.62, 479.63, 479.64, 479.71, and 479.102; and

h. Award other and further relief as the Court deems equitable and just.

In the alternative, the Court should issue an injunction requiring BATFE to promptly approve or disapprove all Form 1 applications to make firearm suppressors without requesting additional information not already requested in the Form 1 application as it existed on February 24, 2022.

# FOOTNOTE 9

Plaintiffs describe the holdings of the below opinions to show that most of them are inapplicable to this case. Plaintiffs do not necessarily agree that any of the opinions are correct. For readability, these opinions do not appear in the Index of Authorities unless they also appear in the main body of this Brief.

18 U.S.C. § 922(g)(1) (prohibiting possession of firearm by felon) is constitutional post-*Bruen*: *United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022); *Range v. Attorney Gen. United States*, 53 F.4th 262, 284 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Attorney Gen. United States of Am.*, 56 F.4th 992 (3d Cir. 2023); *United States v. Martin*, No. 2:21-CR-00068, 2023 WL 1767161 (D. Vt. Feb. 3, 2023); *United State v. Issac*, No. 522CR117LCBHNJ1, 2023 WL 1415597 (N.D. Ala. Jan. 31, 2023); *United States v. Taylor*, No. 322CR00022GFVTEBA1, 2023 WL 1423725 (E.D. Ky. Jan. 31, 2023); *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023); *United States v. Brown*, No. CR 20-260-1, 2023 WL 424260 (E.D. Pa. Jan. 26, 2023); *United States v. Davis*, No. CR 5:19-159-DCR, 2023 WL 373172 (E.D. Ky. Jan. 24, 2023); *Shipley v. Hijar*, No. EP-23-CV-11-KC, 2023 WL 353994 (W.D. Tex. Jan. 20, 2023); *Gordon v. United States*, No. 114CR00312ELRJKL1, 2023 WL 336137 (N.D. Ga. Jan. 20, 2023); *Battles v. United States*, No. 4:23-CV-00063-HEA, 2023 WL 346002 (E.D. Mo. Jan. 20, 2023); *United States v. Robinson*, No. 22-00070-01-CR-W-BP, 2023 WL 214163 (W.D. Mo. Jan. 17, 2023); *United States v. Tucker*, No. 2:22-CR-00017, 2023 WL 205300 (S.D.W. Va. Jan. 17, 2023); *United States v. Garrett*, No. 18 CR 880, 2023 WL 157961 (N.D. Ill. Jan. 11, 2023); *United States v. Moore*, No. 3:20-CR-00474-IM-1, 2023 WL 154588 (D. Or. Jan. 11, 2023); *United States v. Jordan*, No. EP-22-CR-01140-DCG-1, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023); *Campiti v. Garland*, No. 3:22-CV-177 (AWT), 2023 WL 143173 (D. Conn. Jan. 10, 2023); *Davis v. United States*, No. 4:19-CR-080-A, 2023 WL 129599 (N.D. Tex. Jan. 9, 2023); *United States v. Coleman*, No. 3:22-CR-8-2, 2023 WL 122401 (N.D.W. Va. Jan. 6, 2023); *United States v. Medrano*, No. 3:21-CR-39, 2023 WL 122650 (N.D.W. Va. Jan. 6, 2023); *United States v. Trammell*, No. 3:20-CR-61-RGJ, 2023 WL 22981 (W.D. Ky. Jan. 3, 2023); *United States v. Wondra*, No. 1:22-CR-00099-BLW, 2022 WL 17975985 (D. Idaho Dec. 27, 2022); *United States v. Williams*, No. 121CR00362LMMLTW1, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022); *United States v. Goins*, No. 522CR00091GFVTMAS1, 2022 WL 17836677 (E.D. Ky. Dec. 21, 2022); *United States v. Dawson*, No. 321CR00293RJCDCK, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022); *United States v. Hunter*, No. 1:22-CR-84-RDP-NAD-1, 2022 WL 17640254 (N.D. Ala. Dec. 13, 2022); *United States v. Spencer*, No. 2:22CR106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022); *United States v. Grinage*, No. SA-21-CR-00399-JKP, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Wagoner*, No. 4:20-CR-00018, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Robinson*, No. 4:22-CR-00070-BP, 2022 WL 18356667, at *3 (W.D. Mo. Dec. 1, 2022), report and recommendation adopted, No. 22-00070-01-CR-W-BP, 2023 WL 214163 (W.D. Mo. Jan. 17, 2023); *United States v. Ford*, No. 21-CR-00179-1-HFS, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022); *United States v. Jones*, No. 20-CR-00354-HFS, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022); *United States v. Cage*, No. 3:21-CR-68-KHJ-FKB, 2022 WL 17254319 (S.D. Miss. Nov. 28, 2022); *United States v. Willis*, No. 22-CR-00186-RMR, 2022 WL 17177470 (D. Colo. Nov. 23, 2022); *United States v. Teerlink*, No. 2:22-CR-0024-TS, 2022 WL 17093425 (D. Utah Nov. 21, 2022); *United States v. Good*, No. 21-00180-01-CR-W-HFS, 2022 WL 18107183, at *7 (W.D. Mo.

Nov. 18, 2022), *report and recommendation adopted*, No. 21-00180-CR-W-HFS, 2023 WL 25725 (W.D. Mo. Jan. 3, 2023); *United States v. Hill*, No. CR H-22-249, 2022 WL 17069855 (S.D. Tex. Nov. 17, 2022); *United States v. Mitchell*, No. CR 1:22-00111-KD-MU, 2022 WL 17492259 (S.D. Ala. Nov. 17, 2022); *United States v. Williams*, No. 121CR00362LMMLTW, 2022 WL 18285005, at *5 (N.D. Ga. Nov. 14, 2022), *report and recommendation adopted as modified*, No. 121CR00362LMMLTW1, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022); *United States v. Gray*, No. 22-CR-00247-CNS, 2022 WL 16855696 (D. Colo. Nov. 10, 2022); *United States v. Banuelos*, No. EP-22-CR-00903-FM, 2022 WL 17752205 (W.D. Tex. Nov. 10, 2022); *United States v. Baker*, No. 2:20-CR-00301-DBB, 2022 WL 16855423 (D. Utah Nov. 10, 2022); *United States v. Carpenter*, No. 1:21-CR-00086-DBB, 2022 WL 16855533 (D. Utah Nov. 10, 2022); *United States v. Moore*, No. CR 21-121, 2022 WL 17490021 (W.D. Pa. Nov. 9, 2022); *United States v. Reese*, No. 19-CR-257, 2022 WL 16796771 (W.D. Pa. Nov. 8, 2022); *United States v. Young*, No. CR 22-054, 2022 WL 16829260 (W.D. Pa. Nov. 7, 2022); *United States v. Ford*, No. 21-00179-01-CR-W-HFS, 2022 WL 17331288, at *2 (W.D. Mo. Nov. 4, 2022), *report and recommendation adopted*, No. 21-CR-00179-1-HFS, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022); *United States v. Butts*, No. CR 22-33-M-DWM, 2022 WL 16553037 (D. Mont. Oct. 31, 2022); *United States v. Carleson*, No. 3:22-CR-00032-SLG, 2022 WL 17490753 (D. Alaska Oct. 28, 2022); *Walker v. United States*, No. 20-CV-31-DMS-AGS, 2022 WL 16541183 (S.D. Cal. Oct. 28, 2022) (upholding felon-in-possession laws generally without specifying 922(g)(1)); *United States v. Grant*, No. CR 3:22-161-MGL-1, 2022 WL 16541138 (D.S.C. Oct. 28, 2022); *United States v. Burton*, No. CR 3:22-362-MGL-1, 2022 WL 16541139 (D.S.C. Oct. 28, 2022); *United States v. Deamonte Law*, No. CR 20-341, 2022 WL 17490258 (W.D. Pa. Oct. 27, 2022); *United States v. Jones*, No. 20-00354-01-CR-W-HFS, 2022 WL 17331287, at *5 (W.D. Mo. Oct. 19, 2022), *report and recommendation adopted*, No. 20-CR-00354-HFS, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022); *United States v. Minter*, No. 3:22-CR-135, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022); *United States v. Melendrez-Machado*, No. EP-22-CR-00634-FM, 2022 WL 17684319 (W.D. Tex. Oct. 18, 2022); *United States v. Trinidad*, No. CR 21-398 (SCC), 2022 WL 10067519 (D.P.R. Oct. 17, 2022); *United States v. Raheem*, No. 3:20-CR-61-RGJ, 2022 WL 10177684 (W.D. Ky. Oct. 17, 2022); *United States v. Ridgeway*, No. 22CR175-CAB, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022); *United States v. Carrero*, No. 2:22-CR-00030, 2022 WL 9348792 (D. Utah Oct. 14, 2022); *United States of Am. v. Riley*, No. 1:22-CR-163 (RDA), 2022 WL 7610264 (E.D. Va. Oct. 13, 2022); *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022) *United States v. King*, No. 21-CR-255 (NSR), 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022); *United States v. Delpriore*, No. 3:18-CR-00136-SLG, 2022 WL 17490771 (D. Alaska Oct. 4, 2022); *United States v. Daniels*, No. 1:03-CR-00083-MR, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022); *United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Harper*, No. CR21-4085-LTS, 2022 WL 4595060 (N.D. Iowa Sept. 30, 2022); *United States v. Siddoway*, No. 1:21-CR-00205-BLW, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Campbell*, No. CR-22-00138-001-HE, 2022 WL 17492255 (W.D. Okla. Sept. 27, 2022); *United States v. Perez*, No. 3:21-CR-508-CAB-1, 2022 WL 17484969 (S.D. Cal. Sept. 26, 2022); *United States v. Collette*, No. MO:22-CR-00141-DC, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Coombes*, No. 22-CR-00189-GKF, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022); *United States v. Hill*, No. 21CR107 WQH, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022); *United States v. Jackson*, No. CR 21-51 (DWF/TNL), 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States v. Cockerham*, No. 5:21-CR-6-DCB-

FKB, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Harper*, No. 21-CR-4085-LTS-KEM, 2022 WL 8288406, at *5 (N.D. Iowa Sept. 9, 2022), *report and recommendation adopted*, No. CR21-4085-LTS, 2022 WL 4595060 (N.D. Iowa Sept. 30, 2022); *United States v. Doty*, No. 5:21-CR-21, 2022 WL 17492260 (N.D.W. Va. Sept. 9, 2022) (not clear from opinion, but PACER confirms this was a (g)(1) conviction); *United States v. Burrell*, No. 21-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022); *USA v. Ramos,* No. 2:21-CR-00395-RGK-1, 2022 WL 17491967 (C.D. Cal. Aug. 5, 2022).

States laws similar to 18 U.S.C. § 922(g)(1) upheld post-*Bruen*: *Nilsson v. Baker Cnty., Oregon*, No. 2:19-CV-01250-HL, 2022 WL 17156771 (D. Or. Nov. 21, 2022), *report and recommendation adopted*, No. 2:19-CV-01250-HL, 2022 WL 17170713 (D. Or. Nov. 22, 2022) (Oregon law suspending concealed carry license after being found guilty of misdemeanor); *Commonwealth v. Griffith*, 101 Mass. App. Ct. 1124, 199 N.E.3d 887 (2022) (Massachusetts law prohibiting possession of firearms by criminal); *People v. Caldwell*, 76 Misc. 3d 997, 1002, 173 N.Y.S.3d 918, 922 (N.Y. Sup. Ct. 2022) (New York law prohibiting possession of firearms by felon); *Fooks v. State*, 255 Md. App. 75, 278 A.3d 208 (2022), *cert. granted*, 482 Md. 141, 285 A.3d 848 (2022) (Maryland law prohibiting person incarcerated for two years or more from possessing firearms).

Sentence enhancement § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.") is constitutional post-*Bruen*. *United States v. Love*, No. 1:21-CR-42-HAB, 2022 WL 17829438 (N.D. Ind. Dec. 20, 2022); *United States v. Alaniz*, No. 1:21-CR-00243-BLW, 2022 WL 3700834 (D. Idaho Aug. 26, 2022) (but the court later acknowledged there is a substantial question about this while ruling on a motion for release pending appeal, *United States v. Alaniz*, No. 1:21-CR-00243-BLW, 2022 WL 4585896 (D. Idaho Sept. 29, 2022)).

18 U.S.C. § 922(g)(3) (prohibiting possession of firearms by unlawful user of or addicted to any controlled substance) is constitutional post-*Bruen*. *United States v. Lewis*, No. CR-22-368-F, 2023 WL 187582 (W.D. Okla. Jan. 13, 2023); *United States v. Black*, No. CR 22-133-01, 2023 WL 122920, at *4 (W.D. La. Jan. 6, 2023); *Gilpin v. United States*, No. 20-04050-01-CR-C-RK, 2023 WL 387049, at *4 (W.D. Mo. Jan. 3, 2023); *United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2022 WL 17829158 (W.D. Tex. Dec. 21, 2022) (on a blank slate, the court thinks (g)(3) might not survive *Bruen*, but is bound by pre-*Bruen* 5th Circuit precedent); *United States v. Sanchez*, No. W-21-CR-00213-ADA, 2022 WL 17815116 (W.D. Tex. Dec. 19, 2022; *Fried v. Garland*, No. 4:22-CV-164-AW-MAF, 2022 WL 16731233 (N.D. Fla. Nov. 4, 2022) (user of state-legal "medical marijuana" barred from possessing a firearm because marijuana is illegal under federal law); *United States v. Harper*, No. CR21-4085-LTS, 2022 WL 4595060 (N.D. Iowa Sept. 30, 2022) (also (g)(1) possession by felon); *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022); *United States v. Daniels*, No. 1:22-CR-58-LG-RHWR-1, 2022 WL 2654232 (S.D. Miss. July 8, 2022); *United States v. Harper*, No. 21-CR-4085-LTS-KEM, 2022 WL 8288406, at *5 (N.D. Iowa Sept. 9, 2022), *report and recommendation adopted*, No. CR21-4085-LTS, 2022 WL 4595060 (N.D. Iowa Sept. 30, 2022).

18 U.S.C. § 922(g)(4) (prohibiting possession by one "who has been adjudicated as a mental defective or who has been committed to a mental institution") is constitutional post-*Bruen*. *Clifton v. United States Dep't of Justice*, No. 121CV00089DADEPG, 2022 WL 2791355 (E.D. Cal. July 15, 2022).

California law prohibiting owning or possessing a firearm for five years after his or her release from a mental health facility is constitutional post-*Bruen*. *Pervez v. Becerra*, No. 218CV02793KJMKJN, 2022 WL 2306962 (E.D. Cal. June 27, 2022).

New York law allowing court to order persons to not possess firearms because they are a danger to themselves or others in unconstitutional on due-process and *Bruen* grounds. *G.W. v. C.N.*, No. 2022-2431, 2022 WL 17972654 (N.Y. Sup. Ct. Dec. 22, 2022).

18 U.S.C. § 922(g)(5) (prohibiting possession of firearm by illegal alien) is constitutional post-*Bruen*. *United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395 (N.D. Ill. Dec. 19, 2022); *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 17242870 (M.D. Pa. Nov. 23, 2022).

The Fifth Circuit held 18 U.S.C. § 922(g)(8) (prohibiting possession of firearm by person subject to protective order against intimate partner) unconstitutional post-*Bruen* in *United States v. Rahimi*, No. 21-11001, 2023 WL 1459240 (5th Cir. Feb. 2, 2023). Two district courts agree. *United States v. Combs*, No. CR 5:22-136-DCR, 2023 WL 1466614 (E.D. Ky. Feb. 2, 2023); *United States v. Perez-Gallan*, No. PE:22-CR-00427-DC, 2022 WL 16858516 (W.D. Tex. Nov. 10, 2022) (§ 922(g)(8) is unconstitutional because there is no historical tradition supporting (g)(8) and there is a historical tradition of handling domestic violence in different ways). One district court ruled that § 922(g)(8) is constitutional post-*Bruen*. *United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) (§ 922(g)(8) is constitutional because surety laws provide a historical analogue).

18 U.S.C. § 922(g)(9) (prohibiting possession of a firearm following a domestic violence misdemeanor conviction) is constitutional post-*Bruen*. *United States v. Bernard*, No. 22-CR-03 CJW-MAR, 2022 WL 17416681 (N.D. Iowa Dec. 5, 2022); *United States v. Anderson*, No. 2:21CR00013, 2022 WL 10208253 (W.D. Va. Oct. 17, 2022); *United States v. Jackson*, No. CR-22-59, 2022 WL 3582504 (W.D. Okla. Aug. 19, 2022); *United States v. Nutter*, No. 2:21-CR-00142, 2022 WL 3718518 (S.D.W. Va. Aug. 29, 2022).

18 U.S.C. § 922(b)(1), (c)(1) (prohibiting the sale of handguns and handgun ammunition to persons under 21 years old) is constitutional post-*Bruen*. *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, No. 6:20-CV-01438, 2022 WL 17859138 (W.D. La. Dec. 21, 2022).

Texas law prohibiting law-abiding 18-to-20-year-olds from carrying a handgun for self-defense outside the home is unconstitutional. *Firearms Policy Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996 (N.D. Tex. Aug. 25, 2022).

18 U.S.C. § 922(a)(1)(A) (prohibiting dealing firearms without a license) is constitutional post-*Bruen*. *United States v. King*, No. 5:22-CR-00215-001, 2022 WL 17668454, at *3 (E.D. Pa. Dec. 14, 2022) ("the Second Amendment does not protect the *commercial* dealing of firearms"); *United States v. Gonzalez*, No. 1:22-CR-00054, 2022 WL 17583769 (D. Utah Dec. 12, 2022); *United States v. Tilotta*, No. 3:19-CR-04768-GPC, 2022 WL 3924282 (S.D. Cal. Aug. 30, 202

The Second Amendment does not apply to the "buying, selling, storing, shipping, or otherwise engaging in the business of firearms." *Gazzola v. Hochul*, No. 122CV1134BKSDJS, 2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022); *United States v. Flores*, No. CR H-20-427, 2023 WL 361868 (S.D. Tex. Jan. 23, 2023); *Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 3:22-CV-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022).

45

The Second Amendment does not apply to corporations. *Gazzola v. Hochul*, No. 122CV1134BKSDJS, 2022 WL 17485810, at *14 (N.D.N.Y. Dec. 7, 2022)

Courts are split on the post-*Bruen* constitutionality of 18 U.S.C. § 922(n) (prohibiting any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year from shipping, transporting, or receiving a firearm or ammunition in interstate or foreign commerce). Finding § 922(n) unconstitutional: *United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 WL 16936043, at *6 (W.D. Okla. Nov. 14, 2022), *recons. denied United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023) (government failed to meet its burden to prove that a historical tradition justifies § 922(n); *United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023); *United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022); *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *1 (W.D. Tex. Sept. 19, 2022). Finding § 922(n) constitutional: *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037 (S.D.N.Y. Jan. 26, 2023); *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022); *United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022. Finally, *see also United States v. Avila*, No. 22-50088, 2022 WL 17832287 (5th Cir. Dec. 21, 2022) (defendants did not challenge constitutionality of § 922(n) at trial, so no plain error to uphold guilt on appeal).

Conviction for possession of firearms by person under indictment under Ohio law remanded for consideration in light of *Bruen*. *State v. Philpotts*, 2022-Ohio-4362 (Ohio Supreme Court Dec. 9 2022).

The penalty enhancement for possession of firearms in furtherance of drug-trafficking (18 U.S.C. § 924(c)(1)(A)) is constitutional post-*Bruen*. *United States v. Burgess*, No. 22-1110, 2023 WL 179886 (6th Cir. Jan. 13, 2023); *United State v. Issac*, No. 522CR117LCBHNJ1, 2023 WL 1415597 (N.D. Ala. Jan. 31, 2023); *United States v. Garrett*, No. 18 CR 880, 2023 WL 157961 (N.D. Ill. Jan. 11, 2023); *United States v. Trammell*, No. 3:20-CR-61-RGJ, 2023 WL 22981 (W.D. Ky. Jan. 3, 2023); *United States v. Snead*, No. 1:22-CR-033, 2022 WL 16534278 (W.D. Va. Oct. 28, 2022); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022); *U.S.A. v. Nevens*, No. CR 19-774-DMG, 2022 WL 17492196 (C.D. Cal. Aug. 15, 2022).

18 U.S.C. § 924(a)(1)(A) (prohibiting knowingly making false statements or representations regarding firearms records) does not regulate conduct that falls under the plain text of the Second Amendment, so *Bruen* does not apply. *United States v. Porter*, No. CR 3:22-00055, 2023 WL 113739 (S.D.W. Va. Jan. 5, 2023).

18 U.S.C. § 922(a)(6) (prohibiting knowingly making any false statements or identification with the intent to of likelihood of deceiving a licensed importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition) does not regulate conduct that falls under the plain text of the Second Amendment, so *Bruen* does not apply. *United States v. Soto*, No. SA-22-CR-302-JKP, 2023 WL 1087886 (W.D. Tex. Jan. 27, 2023).

18 U.S.C. § 922(d)(1) (prohibiting knowingly disposing of a firearm to a convicted felon) does not regulate conduct that falls under the plain text of the Second Amendment, and even it if did, there

are sufficient historical analogues of regulating the sale and transfer of firearms. *United States v. Porter*, No. CR 3:22-00055, 2023 WL 113739 (S.D.W. Va. Jan. 5, 2023).

One appellate court remanded a case to review a city's shooting-range ordinances under *Bruen*. *Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022).

City ordinance requiring gun owners to obtain and maintain liability insurance and contribute fee to gun harm reduction programs is constitutional post-*Bruen*. *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, No. 22-CV-00501-BLF, 2022 WL 3083715 (N.D. Cal. Aug. 3, 2022).

A condition of release of prohibiting possession of firearms is constitutional post-*Bruen*. *United States v. Wendt*, No. 422CR00199SHLHCA1, 2023 WL 166461 (S.D. Iowa Jan. 11, 2023); *United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *3 (W.D. Pa. Oct. 6, 2022); *United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *1 (S.D. Cal. Sept. 18, 2022), r*eview denied*, No. 22-CR-1581-GPC, 2022 WL 17477918 (S.D. Cal. Dec. 6, 2022).

Prohibition on possession of firearms as condition of parole is constitutional post-*Bruen*. *United States v. Fencl*, No. 21-CR-3101 JLS, 2022 WL 17486363 (S.D. Cal. Dec. 7, 2022).

Bond requirement prohibiting possession of firearms under Texas law is constitutional post-*Bruen*. *Ex parte Isedore*, No. 14-22-00161-CR, 2023 WL 142514 (Tex. App.—Houston [14th Dist.] Jan. 10, 2023, no pet. h.)

It violates the Second Amendment for the government to keep guns seized during a criminal investigation after the investigation is over. *Frein v. Pennsylvania State Police*, 47 F.4th 247, 250 (3d Cir. 2022).

Rule prohibiting the carrying of firearms on the campus of the National Institutes for Health (45 C.F.R. § 3.42(g)) is constitutional. *United States v. Power*, No. 20-PO-331-GLS, 2023 WL 131050 (D. Md. Jan. 9, 2023); *United States v. Robertson*, No. 22-PO-867-GLS, 2023 WL 131051 (D. Md. Jan. 9, 2023); *United States v. Marique*, No. CR 8:21-PO-02263-AAQ, 2022 WL 17822443 (D. Md. Dec. 20, 2022); *United States v. Tallion*, No. CR 8:22-PO-01758-AAQ, 2022 WL 17619254 (D. Md. Dec. 13, 2022).

A court granted a TRO enjoining New Jersey's post-*Bruen* expansion of "sensitive places" to public libraries or museums; bars, restaurants, and where alcohol is served; entertainment facilities; private property (unless otherwise indicated by owner); and vehicles unless unloaded and contained in a locked box. *Koons v. Reynolds*, No. CV 22-7464 (RMB/EAP), 2023 WL 128882 (D.N.J. Jan. 9, 2023). The Court later granted a TRO enjoining New Jersey's post-*Bruen* expansion of "sensitive places" to parks, beaches, recreational facilities/areas, and casinos. Siegel v. Platkin, No. CV 22-7464 (RMB/AMD), 2023 WL 1103676 (D.N.J. Jan. 30, 2023).

City may prohibit firearms on at least some city property. *California Rifle & Pistol Ass'n, Inc. v. City of Glendale*, No. 2:22-CV-07346-SB-JC, 2022 WL 18142541 (C.D. Cal. Dec. 5, 2022).

New York may not prohibit the carrying in houses of worship. *Spencer v. Nigrelli*, No. 22-CV-6486 (JLS), 2022 WL 17985966 (W.D.N.Y. Dec. 29, 2022); *Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220 (W.D.N.Y. Nov. 3, 2022) (PI granted); *Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 11669872, at *1 (W.D.N.Y. Oct. 20, 2022) (TRO granted).

New York's prohibition on carrying firearms on private property is unconstitutional. *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631 (W.D.N.Y. Nov. 22, 2022).

Preliminary injunction granted against New York's "good moral character" requirement for gun license, requirement that license applicants to provide list of family members and cohabitants violated Second Amendment, requirement that license applicants provide list of social media accounts for prior three years, requirement that applicants provide "such other information required by the licensing officer," prohibition against possession of firearms in places of worship, prohibition against possession of firearms at gatherings of individuals to express their rights to protest or assemble, and prohibition against possession of firearms "on or in private property where … owner or lessee … has not permitted such possession by clear and conspicuous signage" *Antonyuk v. Hochul*, No. 122CV0986GTSCFH, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022).

Preliminary injunction denied against New York's requirement of 18-hour in-person live firearms safety course and prohibition against possession of firearms in nursery schools and preschools. *Antonyuk v. Hochul*, No. 122CV0986GTSCFH, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022).

TRO granted against New York's requirement that license applicants meet in-person with licensing officer, prohibition of concealed carry in summer camps, and prohibition of firearms in Times Square in New York City. *Antonyuk v. Hochul*, No. 122CV0986GTSCFH, 2022 WL 5239895 (N.D.N.Y. Oct. 6, 2022).

Preliminary injunction granted against Delaware's statutes prohibiting possession of unfinished firearm frames and receivers and untraceable firearms and prohibiting manufacturing of untraceable firearms. *Rigby v. Jennings*, No. CV 21-1523 (MN), 2022 WL 4448220 (D. Del. Sept. 23, 2022).

Preliminary injunction denied against Delaware's statutes making it unlawful for all but federally licensed gun dealers or manufacturers to sell firearms. *Rigby v. Jennings*, No. CV 21-1523 (MN), 2022 WL 4448220 (D. Del. Sept. 23, 2022).

*Bruen* does not apply to California law prohibiting any persons in the State of California – other than federally-licensed firearms manufacturers or importers – from using, possessing, selling, or transferring a computerized numerical code ("CNC") milling machine that has a sole or primary purpose of manufacturing firearms. *Def. Distributed v. Bonta*, No. CV 22-6200-GW-AGRX, 2022 WL 15524977, at *1 (C.D. Cal. Oct. 21, 2022), *adopted*, No. CV 22-6200-GW-AGRX, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022).

California law requiring certain data about firearm incidents be reported is constitutional post-*Bruen. Doe v. Bonta*, No. 22-CV-10-LAB-DEB, 2023 WL 187574 (S.D. Cal. Jan. 12, 2023).

California's good-cause requirement for a license to carry is unconstitutional, but the rest of the licensing scheme is constitutional. *People v. Velez*, 85 Cal. App. 5th 957, 302 Cal. Rptr. 3d 88, 104 (2022); *People v. Alvarado*, No. F081842, 2022 WL 17369327 (Cal. Ct. App. Dec. 2, 2022), as modified (Dec. 14, 2022); *Dykes v. Broomfield*, No. 11-CV-04454-SI, 2022 WL 4227241, at *4 (N.D. Cal. Sept. 13, 2022).

New York's proper-cause requirement for a license to carry is unconstitutional but the rest of the licensing scheme is constitutional. *People v. Brundige*, No. 71665-22/001, 2023 WL 1490146 (N.Y. Sup. Ct. Feb. 2, 2023).

Maryland's "good and substantial reason" requirement for a firearm permit is unconstitutional. *Matter of Rounds*, 255 Md. App. 205, 279 A.3d 1048 (2022).

New York crime of possession of unlicensed firearm survives *Bruen*, where defendant could not show that he requested a license but was denied. *People v. Williams*, 76 Misc. 3d 925, 931, 175 N.Y.S.3d 673, 677 (N.Y. Sup. Ct. 2022); *People v. Rodriguez*, 76 Misc. 3d 494, 499, 171 N.Y.S.3d 802, 806 (N.Y. Sup. Ct. 2022).

A court denied a preliminary injunction against California statute prohibiting open carry, but ordered the parties to brief *Bruen. Baird v. Bonta*, No. 2:19-CV-00617-KJM-AC, 2022 WL 17542432 (E.D. Cal. Dec. 8, 2022).

Restriction in lease of government-subsidized housing on possessing firearms was unconstitutional. *Columbia Hous. & Redevelopment Corp. v. Braden*, No. M202100329COAR3CV, 2022 WL 727567 (Tenn. Ct. App. Oct. 13, 2022)

Remand for briefing in light of *Bruen* regarding whether Illinois law regarding how firearms are stored in foster homes is constitutional. *Miller v. Smith*, No. 22-1482, 2023 WL 334788 (7th Cir. Jan. 20, 2023).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

AARON F. REITZ
Deputy Attorney General for Legal Strategy
State Bar No. 24105704

*/s/ Charles K. Eldred*
CHARLES K. ELDRED
Special Counsel for Legal Strategy
State Bar No. 00793681

JOHNATHAN STONE
Assistant Attorney General
General Litigation Division
State Bar No. 24071779

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P. O. Box 12548
Austin, Texas 78711-2548
(512) 936-1706 • fax (512) 320-0167
charles.eldred@oag.texas.gov

*/s/ Tony K. McDonald*
TONY K. MCDONALD
State Bar No. 24083477

GARRETT MCMILLAN
State Bar No. 24116747

THE LAW OFFICES OF TONY MCDONALD
1501 Leander Dr., Suite B2
Leander, Texas 78641
(512) 200-3608 • fax (815) 550-1292
tony@tonymcdonald.com

WARREN V. NORRED
State Bar No. 24045094

NORRED LAW, PLLC
515 E. Border Street
Arlington, Texas 76010
(817) 704-3984 • fax (817) 524-6686
warren@norredlaw.com

**Attorneys for Ken Paxton,**
**Attorney General of Texas**

**Attorneys for David Schnitz,**
**Tracy Martin, and Floice Allen**

## CERTIFICATE OF SERVICE

We certify that a true and accurate copy of the foregoing document was filed electronically

(via CM/ECF) on February 9, 2023.

*/s/ Charles K. Eldred*  */s/ Tony K. McDonald*
Charles K. Eldred     Tony K. McDonald

50