## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **KEN PAXTON, in his official capacity as** | ) |
| **Attorney General of Texas,** | ) |
| **DAVID SCHNITZ,** | ) |
| **TRACY MARTIN, and** | ) |
| **FLOICE ALLEN,** | ) |
|     *Plaintiffs,* | )   Civil Action No. 4:22-cv-00143-P |
| | ) |
| **vs.** | ) |
| | ) |
| **STEVEN M. DETTELBACH, in his** | ) |
| **official Capacity as Director, Bureau of** | ) |
| **Alcohol, Tobacco, Firearms and Explosives,** | ) |
| **and** | ) |
| **MERRICK B. GARLAND, in his official** | ) |
| **Capacity as Attorney General of the** | ) |
| **United States,** | ) |
|     *Defendants.* | ) |

### APPENDIX TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Contents

Declaration of Amy L. Stely……………………………………………App. 001

1

DATED: March 13, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

*/s/ Emily B. Nestler*
EMILY B. NESTLER (D.C. Bar # 973886)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-0167
Email: emily.b.nestler@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On March 13, 2023, I electronically submitted the foregoing with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Emily B. Nestler*

EMILY B. NESTLER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **KEN PAXTON, in his official capacity as** | ) | |
| **Attorney General of Texas**, *et al.* | ) | |
|     *Plaintiffs,* | ) | Civil Action No. 4:22-cv-00143-P |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STEVEN M. DETTELBACH, in his official** | ) | |
| **Capacity as Acting Director, Bureau of** | ) | |
| **Alcohol, Tobacco, Firearms and** | ) | |
| **Explosives**, *et al.* | ) | |
|     *Defendants.* | ) | |

<u>**DECLARATION OF AMY L. STELY**</u>

I, Amy L. Stely, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my official duties.

1.      I am employed by ATF in the National Firearms Act ("NFA") Division. I am the Chief of the Division. In this capacity, I am responsible for overseeing ATF's administration of the NFA and the regulations issued thereunder, including maintaining and amending the National Firearms Registration and Transfer Record ("NFRTR"), processing notices of NFA firearms manufactured or imported, and acting on all applications to make, export, transfer and register NFA firearms. In addition, I am responsible for planning and managing the full range of NFA Division operations and programs, which includes workload and resource projections, staffing levels, budget allocations, and monitoring compliance with Division policies, procedures and guidelines in order to most effectively and efficiently achieve Division goals.

App.001

2.      I have been employed by ATF since September 1998 and have worked within the NFA Division for 17 years.  In addition to being the Division Chief, I was the Deputy Chief of the Division and for a number of years prior to that I was a Firearms and Explosives Services Specialist, where my primary job duties included the planning, direction, coordination, evaluation and monitoring of the Bureau's Special Occupational Tax Program.

3.      As Chief of the NFA Division, I am knowledgeable about the requirements of the NFA, including 26 U.S.C. § 5822. And, based on my role at ATF, I am familiar with ATF's protocols and processes for implementing the NFA, including consideration of NFA applications for firearms silencers.

## I.      IMPLEMENTATION OF NFA REQUIREMENTS FOR MAKING SILENCERS

4.      The NFA imposes a $200 tax on any person who makes a "firearm," as that term is defined by the NFA. The NFA defines the term "firearm" to include "any silencer." 26 U.S.C. § 5845(a)(7). Accordingly, the tax, transfer, and registration requirements of the NFA apply to silencers.

5.      ATF implements this tax in accordance with the NFA's requirements, including that: "[n]o person shall make a firearm unless he has (a) filed with the [Attorney General] a written application, in duplicate, to make and register the firearm on the form prescribed . . .; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made . . .; (d) identified himself in the application . . . if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the [Attorney General] to make and register the firearm and the application for shows such approval." 26 U.S.C. § 5822.

App.002

6.      Individuals who are not qualified manufacturers[1] and who are not prohibited from possessing firearms may submit an application to ATF to make an NFA firearm.  The application process requires the submission of an ATF Form 1, *Application to Make and Register a Firearm*. The Form 1 is available on ATF's website and may be submitted by mail to the address on the form or through ATF's eForms.  See www.atf.gov/firearms/applications-eforms.

7.      The Form 1 must be submitted in duplicate and be accompanied by FBI FD-258, Fingerprint Card, also in duplicate, a 2-inch by 2-inch photograph, and payment of the $200 tax. 26 U.S.C. § 5822; 27 C.F.R. § 479.62-63.  The form requires the applicant's name and address, country of citizenship, date and place of birth, social security number, and other identifying information, a description of the firearm to be made, including a unique serial number created by the applicant, a list of questions to be answered and notification to the chief law enforcement officer of the applicant's city or county. The form must be signed and dated by the applicant.

8.      The NFA Division's Industry Processing Branch receives by mail or via eForms all Form 1 Applications.  Once an application is received, it is assigned to an Examiner. The Examiner then reviews the form for completeness, identifies the supporting documentation, compares the form to the supporting documents to ensure the information matches, confirms payment, ensures the serial number is not duplicative of one already listed in the NFRTR, and verifies the chief law enforcement officer listed on the form is within the same city or county as the applicant. In addition, to conduct the background check, ATF is required by regulation to contact the National Instant Criminal Background Check System ("NICS"), 27 C.F.R. § 479.86, which is the FBI's

---

[1] A qualified manufacturer is a person who is licensed under the GCA as a manufacturer and also pays the special (occupational) tax (SOT) under the NFA, which authorizes the person to engage in the business of manufacturing NFA firearms.  However, certain categories of persons are prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g) and (n).

App.003

system that checks records on persons who may be disqualified from receiving firearms. After receipt of the response from NICS, ATF will confirm that state law does not otherwise forbid possession of the NFA weapon that the applicant seeks to make.

9.    ATF approves applications to make silencers when it determines that the application is complete, that the tax is paid, and that the making and possession of the silencer would not violate Federal or state law. However, as required by the NFA, ATF must deny an application to make a silencer "if the making or possession of the [silencer] would place the person making the firearm in violation of the law." 26 U.S.C. § 5822.

10.    For example, if the NICS check results in a response of "deny" because the applicant is within a category of people prohibited from possessing firearms pursuant to 18 U.S.C. § 922(g), the application will be disapproved.

11.    Further, an ATF Form 1 may not lawfully be approved if the applicant will make the silencer from a device or parts that already meet the definition of "silencer" under federal law and that were possessed or transferred with the intention of being assembled to make a silencer. This is because, under the NFA, the term "silencer" encompasses both fully-assembled suppressors *and* combinations of parts that are intended to be used in the assembly or fabrication of a silencer. Specifically, the statute defines "firearm silencer" and "firearm muffler" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24).

12.    The NFA does not define "silencer" to include each and every part that may be used to make a silencer (e.g., screws, bolts, pipes, washers, etc.), nor does ATF interpret it as such.

4

Rather, the NFA only includes *combinations of parts* that are designed and/or intended to be used together for making silencers, or a part that has the objective design features and characteristics to be identified as a part intended *only* for use in assembling or fabricating a silencer (e.g., a baffle, baffle stack, monolithic baffle core, threaded end cap, etc.). By contrast, materials commonly found at a hardware store (e.g., screws, bolts, pipes, washers, etc.), are not "intended only for use" in assembling or fabricating a silencer and, thus, they are not regulated by ATF as "silencers" because they have a legitimate use outside of that purpose.

13.     Under the NFA, "parts" or "parts kits" that are that are already silencers in and of themselves (whether assembled yet or not), must be independently registered before being manufactured, transferred, or sold. A person who then acquires a properly-registered silencer (including parts or parts kits that are themselves silencers) need not also separately apply to "make" that same silencer, but instead must apply to have that silencer transferred to him or her. Accordingly, Form 1 applications seeking to "make" a silencer using parts or parts kits that are already "silencers" must be denied.

14.     For example, ATF is aware that certain businesses have manufactured or transferred silencers without complying with federal law by marketing and selling unregistered silencers as "solvent traps," "flashlight suppressor kits," and/or "Form 1 silencer kits." These devices have the objective design features and characteristics of known silencer devices and are themselves properly classified as "silencers" under federal law. Further, these devices are often incorrectly marketed as items that a person may use to "make" a silencer upon receiving an approved ATF Form 1, generally by drilling out the center of an already manufactured baffle stack. Because these devices are already silencers in and of themselves, Form 1 applications seeking to "make" silencers with them cannot be approved.

15.     Sometimes the information set forth in a particular application leaves unclear whether the application can be approved and taxed in accordance with the NFA's requirements, resulting in neither a "proceed" or "deny," but rather an "open" status instead. For example, the description of the firearm may be lacking information or sufficient detail, or the NICS results were not determinative.  Because ATF can only approve applications that meet the NFA's requirements, under those circumstances, ATF may request additional information from the applicant in order to complete its decision-making process. The purpose of requesting this clarifying information is to give applicants an opportunity to demonstrate compliance so that their application can ultimately be approved, when appropriate, based on more complete information. If additional information is needed, ATF will send a letter to the applicant requesting such information as applicable. Once the necessary information is received, ATF then works expeditiously to resolve the application as soon as practicable, and typically within 90 days.

16.     When an application is approved, it will be marked "approved," and then a tax stamp will be affixed to the Form 1 and returned to the applicant. Approval by ATF will effect registration of the silencer in the NFRTR. Upon receipt of the approved Form 1 the applicant may make the firearm described on the form.

17.     If an application is ultimately disapproved, the applicant's original form and $200 payment are returned to them.

## II.     ATF RESPONSE TO DISCOVERY OF UNLAWFUL SILENCER PARTS KITS

18.     As detailed below, ATF recently concluded an investigation into the largescale, unlawful manufacture of silencers that were marketed as "solvent traps" or "solvent trap kits." Because ATF cannot approve an application to make silencers when the making or possession would place the applicant in violation of law, ATF was statutorily required to deny certain

App.006

applications involving those devices, because it was evident the applicant was already in possession of a silencer that did not comply with the tax, transfer, and registration provisions of the NFA. Further, these applicants were certifying on the ATF Form 1 that they were the maker of the silencer when in fact the silencer was already manufactured by another entity. When ATF could not determine whether the applicant sought to "make" a silencer using such "solvent traps" or "solvent trap kits"), and thus could not determine whether the application must be denied or could ultimately be approved based on the Form 1 submitted, ATF sought additional information that was necessary in order to make that determination.

19.     In late 2021, ATF's Seattle, Detroit and Atlanta Field Divisions were made aware of the websites of a few manufacturers selling "solvent traps" and "solvent trap kits" within their Divisions. After purchasing these devices, ATF's Firearms and Ammunition Technical Division ("FATD") examined and classified them as silencers. The NFA Division, like the rest of the Bureau, routinely relies on FATD for technical guidance. FATD provides expert technical support on firearms and ammunition to the Bureau, the firearms industry, the general public, and other law enforcement agencies, and is the federal technical authority relating to firearms and ammunition and their classification under federal laws and regulations.

20.     FATD determined that, although these kits were marketed as "solvent traps" (which purportedly can be attached to the barrel of a firearm during cleaning in order to catch excess cleaning fluid), they were actually devices that functioned as "silencers" as defined by federal law and had the design characteristics of silencers. For example, these devices contain "spacers" or "baffles" which in a silencer diverts, deflects, and slows the propellant gases to muffle the sound of the shot.  By contrast, such spacers serve no legitimate purpose in a "solvent trap," as they actually *prevent* the collection of cleaning fluids.  Notably, many of these "traps" had holes drilled

App.007

or indexed at the end cap, which prevent the cleaning fluid from being trapped, but do allow a bullet to pass through.

21.     After these "solvent traps" were properly classified as silencers, their manufacturers were told to cease and desist selling both solvent traps and solvent trap kits, unless and until they were manufactured and sold in compliance with the NFA. Two such manufacturers had their websites seized.   *See*   www.atf.gov/detroit-field-division/seized-website-diversified-machine; www.atf.gov/atlanta-field-division/seized-website-hawk-innovative-tech.

22.     In early January 2022, ATF began seeing Form 1 Applications submitted by persons seeking to "make" silencers using these "solvent traps" and "solvent trap kits," or potentially similar devices. Because these devices fell within the NFA's definition of "silencer," they could not be retroactively registered as newly-made silencers. In some cases it was clear the applicant had purchased the device from one of the manufacturers that ATF had taken enforcement action against and/or that the device was unlawful because it was an unregistered silencer. In other cases it was unclear from where the device originated or if it was even already a silencer, depending on the description of the firearm on the particular Form 1.

23.     As a result, on February 2, 2022, ATF paused action on all applicable Form 1 applications—meaning, applications that appeared to implicate unlawful "solvent traps," "solvent trap kits," or potentially similar devices—pending further review and analysis, which consisted of approximately 2,958 applications. On February 28, 2022, disapprovals were issued to approximately 847 of those applicants. Those applications were denied because the application clearly showed the applicant sought to "make" a silencer with an unlawful unregistered device.

24.     On March 3, 2022, ATF emailed a letter to the other approximately 2,111 Form 1 Applicants who utilized eForms, seeking additional information in the form of photos, schematics,

App.008

product, model or kit name, if any, and the source from which the parts were obtained, *i.e.*, the name of the store or website. On or about April 11, 2022, ATF mailed the same letter to approximately 175 paper applicants. Applicants who utilized eForms were given a deadline of March 25, 2022 to respond with the requested information, and paper applicants were given a deadline of May 3, 2022 to respond. The letters stated that failure to submit the requested information by the deadline "will result in your application being disapproved and your $200 making tax being refunded." ATF sought this additional information because it was unclear based on the applications whether they were invoking "solvent traps," "solvent trap kits," or potentially similar devices. Ultimately, approximately 1,485 applications were approved after ATF received the requested additional information and 1,649 were disapproved, either after ATF received the requested additional information or the applicant did not to respond.  This process took a little over three months; the final approval and denial letters were sent out June 22, 2022.

25.    ATF moved as expeditiously as practicable to render decisions on these applications. The large number of simultaneous requests for additional information and denials resulted from the particular circumstances of the culmination of ATF's investigation into the large-scale manufacture of unlawful silencer parts kits known as "solvent traps."


Executed on the 13th day of March, 2023.



_____
Amy L. Stely
Chief
National Firearms Act Division
Bureau of Alcohol, Tobacco, Firearms and
Explosives

App.009