UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**KEN PAXTON, ET AL.,**

   Plaintiffs,

v.                                               No. 4:22-cv-0143-P

**GARY M. RESTAINO, ET AL.,**

   Defendants.

## OPINION & ORDER

The guidance from our high court on standing continues to be "a morass of imprecision."[1] *N.H. Rt. to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 12 (1st Cir. 1996). At best, standing is now "unsettled in nature [and] beset with difficulties." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 247 (2nd Cir. 1994). But luckily for this Court, though no one can pinpoint the height of the doctrine's "amorphous" bar, it is easy to determine that these Plaintiffs have fallen short of it.

---

[1] *See, e.g., Haaland v. Brackeen*, 143 S.Ct. 1609, 1630 (2023) (holding that a state lacks standing to challenge federal law preempting state laws on foster child placement, despite that "Congress's Article I powers rarely touch state family law."); *contra. Massachusetts, et al. v. EPA, et al.*, 549 U.S. 497, 519 (2007) (holding that a state had standing to challenge the EPA's decision not to regulate emissions of greenhouse gases because that power was preempted and greenhouse gases affected "the earth and air within [their] domain"); *contra. United States v. Texas*, 143 S.Ct. 1964, 1966 (2023) (holding that states near an international border lacked standing to challenge the federal government's immigration enforcement policies because the state's financial injury was not "legally cognizable"); *but see Biden, et al. v. Nebraska, et al.*, 143 S.Ct. 2355, 2358 (2023) (holding that Missouri established standing by showing that it "suffered . . . a concrete injury to a legally protected interest, like property or money"); *contra. Dept. of Ed. v. Brown*, 143 S.Ct. 2343 (2023) (holding that individual loan borrowers lacked standing to allege the federal government unlawfully excluded them from a one-time direct benefit program purportedly designed to address harm caused by an indiscriminate global pandemic).

## BACKGROUND

### I. The Regulatory Scheme

The National Firearms Act ("NFA")—passed by Congress in 1934—as amended by the Gun Control Act ("GCA")—passed by Congress in 1968—regulates the possession and manufacturing of firearm silencers (or "suppressors"). 26 U.S.C. § 5845. To make a silencer for personal use, the GCA requires individuals to file a written application to make and register the silencer, identify themselves and the silencer they wish to make, and pay a $200 tax. 26 U.S.C. § 5822. Applications to make silencers must be approved before the applicant may make the silencer. *Id.* And it is a crime to possess an unregistered silencer or make a silencer in violation of these procedures. 26 U.S.C. § 5872.

Applications to make and register silencers are denied if approving them would cause the applicant to violate another law—i.e., if approving an application would result in a convicted felon's possession of a firearm. *See* § 5822.

### II. The Parties

Floice Allen, Tracy Martin, and David Schintz ("Individual Plaintiffs") are citizens who wish to make silencers at home without filing an application or paying the tax. They allege that it violates their Second Amendment rights for the federal government to require them to seek permission and pay a tax to make silencers at home for personal, non-commercial use. Plaintiffs also allege that they do not intend to make their silencers from any major component part manufactured outside of Texas, that they intend to own these silencers in perpetuity, and that they seek to make them for the exclusive purpose of home defense. But Plaintiffs have neither alleged that they in fact possess an illegal, non-registered silencer nor that they have attempted to complete the application to make one or paid the tax.

The State of Texas joins as a plaintiff to vindicate what it sees as its "quasi-sovereign interests" in its residents' ability to make silencers at home—uninhibited by federal regulation. Texas alleges that its residents' physical and economic well-being are at stake because the

making and use of these silencers would protect an individual's ability to hear would-be home intruders and improve their ability for self-defense.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 55(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* at 248. When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 55(c)(1)–(3).

## ANALYSIS

### I. Standing

Under Article III of the Constitution, "cases" or "controversies" only exist when a plaintiff has standing to sue. *United States v. Texas*, 143 S.Ct. 1964, 1966 (2023). Standing has three basic requirements. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). *First*, there must be a concrete injury in fact that is not conjectural or hypothetical. *Whitmore v. Arkansas*, 495 U.S. 149, 149 (1990). *Second*, there must be causation—a fairly traceable connection between a plaintiff's injury and the complained-of conduct of the defendant. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). *Third*, there must be redressability—a likelihood that the requested relief will redress the alleged injury. *See Lujan*, 504 U.S. at 562.

Here, the Parties only contest whether Plaintiffs have suffered an injury in fact. The Court therefore sights its analysis on that element.

3

### A. Individual Plaintiffs' Injury In Fact

Individual Plaintiffs allege that they are susceptible to two injuries. *First*, Individual Plaintiffs allege that their intent to engage in criminalized conduct—which they argue is constitutionally protected—opens them to the future injury of prosecution. *Second*, Individual Plaintiffs allege they would be injured because the application process, registration requirements, and the tax violate their constitutional rights. In essence, Individual Plaintiffs argue that they should not have to comply with the regulatory and tax scheme at issue because making silencers is protected under the Second Amendment.

### 1. Future Criminal Enforcement

An allegation of future injury may suffice for Article III if the threatened injury is certainly impending, imminent, or there is a substantial risk that the harm will occur. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 415–16 n.5 (2013). Alleging that a future injury is merely "possible" is not enough, *Id.* at 409, because imminence "cannot be stretched beyond its purpose[, to ensure] that the alleged injury is not too speculative for Article III." *Lujan*, 504 U.S. at 560–61.

A plaintiff bringing a pre-enforcement challenge to a criminal statute must "demonstrate a realistic danger of sustaining a direct injury [from its] enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). And plaintiffs who allege an intent to engage in proscribed conduct affected by a constitutional interest do not need to "expose [themselves] to actual arrest or prosecution" before they may challenge the law. *Id.* (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). But a plaintiff fails to allege a case or controversy when they do not allege that they have ever been threatened with prosecution or that prosecution is likely. *Younger v. Harris*, 401 U.S. 37, 42 (1971); *see also Umphress v. Hall*, 500 F.Supp.3d 553, 559 (N.D. Tex. 2020) (Pittman, J.).

Individual Plaintiffs are correct that the government has a history of prosecuting the illegal possession of unregistered silencers. But *these* Plaintiffs have adduced no evidence that they, in fact, possess any illegal silencers—or otherwise attempted any prohibited conduct. Nor have

4

they shown that they have been threatened with prosecution or that it is likely. And our doctrines of criminal law forbid convicting persons for mere thoughts, desires, or motives. *See, e.g., United States v. Ferguson*, 65 F.4th 806, 812 (6th Cir. 2023). Individual Plaintiffs therefore fail to allege a substantial risk of prosecution based solely on the desire to do something the government has prosecuted in the past. So, Individual Plaintiffs' fear of prosecution is "imaginary or speculative" at best—and insufficient for Article III standing. *Umphress*, 500 F.Supp.3d at 559 (citing *Younger*, 401 U.S. at 42).

### 2. Constitutional Injury

Alleging that a law is unconstitutional does not remove a plaintiff's burden to establish standing to challenge it. *See, e.g., Henschen v. City of Hous., Tex.*, 959 F.2d 584 (5th Cir. 1992). To sue, a plaintiff must be concretely injured by the law they seek to challenge. *Whitmore*, 495 U.S. at 149.

Individual Plaintiffs have not attempted to apply to make and register a silencer. And assuming that they are correct about the unconstitutional nature of the requirements, it is immaterial whether an application is ultimately approved or denied. Either an application is wrongfully denied, and a plaintiff is injured because the government has deprived them of a silencer, or an application is approved, and a plaintiff is injured by being subjected to the process and tax. But Individual Plaintiffs' intent—by itself—to make a silencer in violation of these requirements fails to establish that they have been concretely injured by the process they seek to challenge.[2]

### B. Texas's Standing

The State of Texas "has no [Second Amendment] rights of its own." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023). Thus, Texas alleges that it has standing to defend its "quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." ECF No. 49-2 at 28. Texas claims a "quasi-sovereign interest" in protecting its residents' ability to make silencers free of federal

---

[2] Because Individual Plaintiffs lack standing to challenge the regulations and tax at issue, the Court need not address their Second Amendment claim.

regulation, specifically for Plaintiffs' ability to "diminish the need to obtain and use hearing protection in the event of a home invasion." *Id.*

The *parens patriae* action allows a state to sue on behalf of its citizens at large. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982). But it may not do so against the federal government. *Haaland*, 143 S.Ct. at 1640; *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966).

Texas mainly relies on *Massachusetts v. E.P.A.* to refute this bright-line proposition. *Massachusetts, et al., v. E.P.A., et al.*, 549 U.S. 497 (2007). In that case, Massachusetts and several of its sister states sought to sue the Environmental Protection Agency for "abdicating its responsibility" when it declined a rulemaking petition to implement regulations on the greenhouse gas emissions of new motor vehicles. *Id.* at 505. The Court concluded that Massachusetts had standing because the emissions of greenhouse gasses stood to affect its "sovereign territory," and since Massachusetts's authority to regulate motor vehicle emissions was—in large part—preempted, it could challenge the federal government's failure to do so. *Massachusetts*, 549 U.S. at 519 (citing *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907) (holding that Georgia had standing to sue an out-of-state polluter to defend an independent quasi-sovereign interest "in all the earth and air within its domain.")).

Texas does not seek to protect any interest remotely akin to the "earth and air within its domain." Nor does Texas allege that it has any concrete or imminent injury specific to the state or its administration. *See Biden, et al. v. Nebraska, et al.*, 143 S.Ct. 2355, 2358 (2023) (holding that Missouri established standing by showing that it "suffered . . . a concrete injury to a legally protected interest, like property or money"). By its own words, Texas seeks to protect the ability of its individual residents to make firearm silencers at home. ECF No. 49 at 28. The only purported link between the State of Texas and the GCA regime is Texas's state statute "exempting" silencers from the operation of federal law. And the Supremacy Clause of the Constitution determines the winner of that duel. *See* U.S. Const. Art. VI.

6

Texas may not "merely litigat[e] as a volunteer the personal claims of its citizens." *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976). And it is hard to think of a more personal interest than one's ability to better hear a home intruder in the middle of the night and fend them off with the aid of a home-made silencer.

Texas is thus seeking to sue the federal government as *parens patriae* on behalf of its residents to vindicate their personal Second Amendment rights—regardless of whether it wants to admit it.[3] "That [makes] the issue open and shut." *Haaland*, 143 S.Ct. at 1640.

## CONCLUSION

Under Article III, "cases" or "controversies" only exist when a plaintiff has standing to sue. *United States v. Texas*, 143 S.Ct. at 1966. And a party's dislike of a federal law does not give them standing to challenge it. *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996).[4] Because neither the Individual Plaintiffs nor the State of Texas have standing, there is no case or controversy before the Court. Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 53) and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment. (ECF No. 49). The Court further **ORDERS** that this case is **DISMISSED without prejudice.**

**SO ORDERED** on this **18th day of July 2023.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

[3] Texas misreads and misapplies the law of *parens patriae* standing and attempts to argue that the assertion of a "quasi-sovereign interest in the . . . well-being of its residents" is a distinct basis for standing, when the assertion of a "quasi-sovereign interest" is clearly a requisite category of interests on which to establish standing as *parens patriae*. *See Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023); *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982); *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976); *Louisiana v. Texas*, 176 U.S. 1 (1900); *Louisiana State by & through Louisiana Dept. of Wildlife v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872 (5th Cir. 2023).

[4] As the only defensive weapon available to the judiciary, standing ensures that federal courts remain faithful to our tripartite Constitutional Republic and do not exceed their authority by usurping the power of the political branches. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). Indeed, the survival of our free society demands that complaints about policy preferences—rather than remedy for injury—be left to the people's elected representatives to address, rather than those few in black robes who think they know best.